IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| Kiebler Recreation, LLC ) | Case No. 10-15099 |
| ) | |
| Debtor. ) | Judge Baxter |
| ) | |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND
GRANT ADEQUATE PROTECTION**

Kiebler Recreation, LLC, debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby moves the Court, pursuant to sections 361 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order authorizing the Debtor to use cash collateral and grant adequate protection (the "Emergency Motion" or "Motion"). In support of this Motion, the Debtor incorporates the statements contained in the Declaration of Paul E. Kiebler IV (the "Kiebler Declaration"), which is attached to this Motion as Exhibit A, and respectfully states the following.

**JURISDICTION**

1. This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

**PRELIMINARY STATEMENT**

2. Pursuant to Rule 4001(B)(1)(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), by way of this Motion, the Debtor requests that the Court authorize it to use Cash Collateral (defined below), in which the Secured Creditors (defined below) may assert an interest, on an interim basis through such time as the Court approves the use of Cash

Collateral on a final basis after a final hearing on this Motion. The Debtor asserts that the Secured Creditors are adequately protected by a substantial equity cushion in the collateral, as well as by the grant of adequate protection set forth herein, given that the Debtor's operations are cash flow positive. For adequate protection, the Debtor proposes replacement liens and superpriority administrative expense claims, as described in additional detail below.

## BACKGROUND

3. On May 26, 2010 (the "Petition Date"), the Debtor commenced the above-captioned case under the Bankruptcy Code. The Debtor operates Peek'N Peak Resort and Spa, a popular recreational and tourist complex in Chautauqua County, New York (the "Peak"). The Debtor is authorized to continue to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## THE PREPETITION INDEBTEDNESS[1]

4. Pursuant to certain prepetition loan, security and other agreements, the following parties (collectively, the "Secured Creditors") may assert an interest in the Debtor's assets (the "Prepetition Collateral"): the Huntington National Bank ("Huntington"); PNC Bank, members of the Cross family, parties to capital leases and certain taxing authorities. Of the Secured Creditors, only Huntington may assert an interest in the Debtor's cash (the "Cash Collateral")

5. The obligations owed by the Debtor to the Secured Creditors consist of the following approximate principal amounts: (i) $15.6 million to Huntington; (ii) $7.6 million to the Crosses, the former owners of the Peak (the "Cross Family"); (iii) $2.8 million to PNC Bank; (iv) approximately $1 million to certain taxing authorities, which may be subject to a tax lien(s);

---

[1] Due to the emergent nature of the within chapter 11 filing, the facts set forth in this section are upon information and belief, as the Debtor and its proposed counsel have not had an adequate opportunity to investigate the existence, extent, priority or validity of the asserted prepetition indebtedness described herein. Upon further information and belief, Huntington is the only creditor among the Secured Creditors who may assert an interest in Cash Collateral.

and (v) approximately $1 million on account of various capital leases. To the extent the obligations to the Secured Creditors are secured, the aggregate principal amount of the secured indebtedness is a maximum of approximately $28 million.[2]

6.    The Debtor believes the current aggregate value of its assets is approximately $40 million. Given the value of the Debtor's property in relation to the totality of the secured debt, the Secured Creditors are protected by a generous equity cushion in the Prepetition Collateral.

7.    As set forth in the Kiebler Declaration, the Debtor is projected to be cash flow positive going forward and Cash Collateral is expected to increase during the coming months. As a result, there will be no diminution in the value of the Cash Collateral as a result of the granting of this Motion. Moreover, as set forth below, the Debtor proposes that Huntington be granted adequate protection to guard against any potential diminution in the value of the Cash Collateral.

8.    The Debtor requires the use of Cash Collateral in order to satisfy its immediate post-petition cash needs.

## RELIEF REQUESTED

9.    By this Motion, pursuant to sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b), the Debtor requests (i) entry of an interim order, authorizing the use of the Cash Collateral in the ordinary course of business and granting adequate protection to Huntington (the "Interim Order"), (ii) the scheduling of a final hearing pursuant to Bankruptcy Rule 4001(b) (the "Final Hearing") to consider the relief requested herein, and (iii) entry of a final order (the "Final Order") authorizing the relief requested herein, after the Final Hearing.

10.    The Debtor does not have available sources of working capital and financing to carry on the operation of its business without the use of the Cash Collateral. The Debtor's ability

---

[2] In addition, the Debtor estimates that there are about $3.7 million in unsecured claims.

to maintain business relationships with vendors, suppliers and customers and to meet payroll and immediate operating expenses is essential to its continued viability and the value of its business as a going concern. In the absence of the use of the Cash Collateral, the continued operation of the Debtor's business will be impossible, and serious and irreparable harm to the Debtor and its estate would occur. The use of the Cash Collateral on an immediate basis is therefore of the utmost significance and importance to the preservation and maintenance of the going concern value of the Debtor and will enhance the prospects for a successful reorganization under chapter 11 of the Bankruptcy Code.

11. In order to provide adequate protection to Huntington from the potential diminution in value of its interests in the Prepetition Collateral during the period Cash Collateral is used by the Debtor, the Debtor proposes that Huntington be granted the following as adequate protection:

> (a) Huntington will be granted post-petition security interests in, and liens upon, all of the categories and types of collateral in which it held a security interest as of the Petition Date, but such post-petition security interests shall only be to the same extent, and have the same priority, as its respective security interests as of the Petition Date. All security interests to be granted to the Huntington hereunder as adequate protection will, but only to the extent they are properly perfected as of the Petition Date, be deemed duly perfected under all applicable laws, and no further notice, filing, recordation, or Order will be required to perfect such interests post-petition. The security interests to be granted shall be subject to, and shall be without prejudice to, the right of any party with standing, including but not limited to the Debtor, to seek the equitable subordination of or assert any other claim against Huntington or its security interests; and

> (b) Subject to the limitations set forth above, in the event that the adequate protection proposed above fails to protect the interests of Huntington in the Cash Collateral, it will be granted superpriority administrative claims which will have priority of the kind specified in Bankruptcy Code § 507(b) over any and all administrative expenses specified in Bankruptcy Code § 507(a)(2), except that such superpriority administrative claims will be subject and subordinate to wages and benefits due employees of the Debtor and related taxes, the fees of

professionals as approved by the Bankruptcy Court, and the fees due the United States Trustee.

12. Interim approval of the relief requested by this Emergency Motion is warranted. While Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 may not be commenced earlier than 14 days after the service of such motion, upon request the Court is empowered to conduct a preliminary, expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

13. As set forth in the Kiebler Declaration, an immediate need exists for the Debtor's use of Cash Collateral. Without immediate and ongoing access to the Cash Collateral, the Debtor will be unable to pay critical and immediate post-petition obligations and will be similarly unable to pay the costs associated with continued business operations, which would, in turn, lead to a diminution in the value of its assets. Consequently, the Debtor's immediate ability to use Cash Collateral is necessary to preserve value for all creditors.

14. Accordingly, pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct an expedited preliminary hearing on the Motion and authorize the Debtor, from and after the entry of an Interim Order until the Final Hearing, to utilize the Cash Collateral as provided in the Interim Order. This will enable the Debtor to maintain ongoing operations and avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the Final Hearing.

## WAIVER OF MEMORANDUM OF LAW

15. The Debtor submits that this Motion does not present any novel issues of law requiring further briefing; moreover, appropriate authorities have already been cited herein. Therefore, the Debtor respectfully requests that the Court waive the requirement pursuant to Rule

- 5 -

10-15099-rb    Doc 6    FILED 05/27/10    ENTERED 05/27/10 15:36:21    Page 5 of 9

9013-1(a) of the Local Rules for the United States Bankruptcy Court for the Northern District of Ohio that a separate memorandum be filed in support of the Motion.

**NOTICE**

16. No trustee, examiner or creditors' committee has been appointed in this chapter 11 case. Notice of this Motion has been given by overnight mail, hand delivery, e-mail and/or facsimile to the following parties or, in lieu thereof, their counsel if known: (a) the United States Trustee, (b) counsel for the Secured Creditors, and (c) the Debtor's twenty largest unsecured creditors. In light of the nature of the relief requested, the Debtor submits, and it requests that the Court find, that no further notice is necessary.

**NO PRIOR REQUEST**

17. No prior request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter an Interim Order, substantially in the form of the proposed order to be submitted contemporaneously with this Emergency Motion, granting the relief requested herein; (ii) schedule a Final Hearing pursuant to Bankruptcy Rule 4001(b) to consider the relief requested herein; (iii) enter a Final Order granting the relief requested herein; and (iv) grant such other and further relief as the Court deems just and proper.

Dated: May 27, 2010                                  Respectfully Submitted,

                                              */s/ Robert C. Folland*
                                              Robert C. Folland (0065728)
                                              Andrew L. Turscak, Jr. (0073851)
                                              Mark A. Weintraub (0078789)
                                              THOMPSON HINE LLP
                                              3900 Key Center
                                              127 Public Square
                                              Cleveland, Ohio 44114
                                              (216) 566-5500 (phone)
                                              (216) 566-5800 (fax)
                                              Robert.Folland@thompsonhine.com
                                              Andrew.Turscak@Thompsonhine.com
                                              Mark.Weintraub@thompsonhine.com

                                              *Proposed Counsel for Debtor and Debtor in Possession*

# EXHIBIT A: DECLARATION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| Kiebler Recreation, LLC ) | Case No. 10-15099 |
| ) | |
| Debtor. ) | Judge Baxter |
| ) | |

**DECLARATION OF PAUL E. KIEBLER IV IN SUPPORT OF DEBTOR'S
EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
DEBTOR TO USE CASH COLLATERAL AND GRANT
<u>ADEQUATE PROTECTION</u>**

I, Paul E. Kiebler IV, hereby declare (the "Declaration") as follows:

1. I am the Sole Manager of Kiebler Recreation, LLC (the "Debtor"). I submit this Declaration in support of the Debtor's emergency motion for the entry of an order authorizing the Debtor to use cash collateral and grant adequate protection (the "Motion"). Any capitalized term not defined herein shall have the meaning given in the Motion. All facts set forth in this Declaration are based on my personal knowledge, upon information supplied to me by others, upon information supplied to me by proposed counsel to the Debtor, or upon my opinion based on my experience and knowledge with respect to the Debtor's operations, financial condition and related business issues. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2. The Debtor operates Peek'N Peak Resort and Spa, a popular recreational and tourist complex in Chautauqua County, New York (the "Peak"). On May 26, 2010, a receiver purported to assume custody and control of the Peak. That same day, the Debtor filed its chapter 11 petition.

3. The Peak complex is worth approximately $40 million. The aggregate secured and unsecured indebtedness of the Debtor is well below that figure. In addition, the Debtor's projections show that the Peak will operate with positive cash flow during the upcoming tourist season and beyond.

4. The Memorial Day weekend is the traditional start to the busy summer season, and it traditionally is a popular weekend at the Peak. In order for the Debtor to serve its guests this weekend and beyond, an immediate, critical need exists for the Debtor to be able to use Cash Collateral for, among other things, providing food, beverages and entertainment for its guests, most of which are supplied on a COD basis. Without immediate access to the Cash Collateral, the Debtor will be unable to pay its vendors and the estate will suffer immediate and irreparable harm, which would, in turn, lead to a diminution in the value of the Debtor's assets.

5. In the absence of the use of the Cash Collateral, the continued operation of the Debtor's business would be impossible, and serious and irreparable harm to the Debtor would occur.

6. For these reasons, I believe an immediate need exists for the use of Cash Collateral in order for the Debtor to preserve the value of its business as a going concern; I also believe the replacement liens described in the Motion will adequately protect Huntington.

7. An immediate hearing on the Motion to take place on or before the end of business on Friday, May 28, 2010, is critical to enable the Peak to continue to operate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed this 27th day of May 2010.

/s/ Paul Kiebler IV
Paul E. Kiebler IV
Sole Manager, Kiebler Recreation, LLC