UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

In re:

KIEBLER RECREATION, LLC,

Debtor.

Chapter 11

Case No. 10-15099

**OBJECTION OF THE HUNTINGTON NATIONAL BANK TO DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION**

The Huntington National Bank ("Huntington"), the largest secured creditor of Kiebler Recreation, LLC (the "Debtor") and a party in interest herein, by and through its attorneys, Bond, Schoeneck & King, PLLC, hereby submits this objection to the Debtor's Emergency Motion for Interim and Final Orders Authorizing Debtor to Use Cash Collateral and Grant Adequate Protection (the "Cash Collateral Motion") and respectfully represents as follows:

1. As set forth in more detail below, Huntington holds a first priority security interest in certain real property (the "Mortgaged Premises"), equipment, and personal property owned by the Debtor, together with cash, including accounts receivable and all rents and other proceeds emanating from the operation of the Mortgaged Premises. Huntington has filed a motion seeking an order transferring the venue of the Debtor's case to the United States Bankruptcy Court, Western District of New York where substantially all of the Debtor's assets are located.

2. On May 27, 2010, the Debtor filed its Cash Collateral Motion. On May 28, 2010, the Court entered an Agreed Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection (the "Interim Cash Collateral Order").

1711475.3

## Objection to Use of Cash Collateral

3.  Huntington has a first priority security interest in the Debtor's cash and receivables (the "Cash Collateral") and is unable to determine from the information provided by the Debtor thus far how the Debtor proposes to use the Cash Collateral after June 16, 2016. If the Debtor intends to produce a budget similar to the 2-week budget provided to Huntington in conjunction with the negotiations of the Interim Cash Collateral Order, Huntington opposes such use of the Cash Collateral without further information and clarification regarding the need for such use.

## Security Interest

4.  The Debtor is indebted to Huntington in the amount of $16,856,627.96 as of May 19, 2010 (the "Huntington Claim") arising from the following obligations: (a) Note, dated February 14, 2006, in favor of Peek'n Peak Recreation, Inc. ("PNP") in the amount of $11 million (the "$11 Million Note"), assigned to Huntington on April 6, 2006, and amended and restated in two promissory notes executed by the Debtor in favor of Huntington on April 6, 2006 in the amounts of $6.81 million (the "Restated $6.81 Million Note") and $4,190,000 (the "Restated $4.19 Million Note"); (b) Note, dated September 7, 2006, in favor of Huntington, in the amount of $1,000,000 (the "$1 Million Note"); (c) Note, dated September 7, 2006, in favor of Huntington, in the amount of $1,440,000 dollars (the "$1.44 Million Note"); and (d) Note, dated October 31, 2006, in favor of Sky Bank, the predecessor in interest to Huntington, in the amount of up to $5,040,000, and amended on March 13, 2008 (the "Ridgeview Note").

5.  The Huntington Claim is secured by the following, as indicated:

    (a) $11 Million Note. (i) Mortgage, Security Agreement, Assignment of Lease and Rents and Fixture Filing (the "$11 Million Mortgage"), in favor of PNP, dated February 14, 2006, assigned to Huntington on April 6, 2006, granting a lien on certain real property, together with all buildings,

improvements and fixtures located thereon, consisting of, *inter alia*, a ski resort, two golf courses, several restaurants and banquet facilities, a hotel, health spa, gas station and convenience store, condominiums and apartments ("Kiebler Mortgaged Premises"); (ii) assignment of Leases and Rents, in favor of PNP, dated February 14, 2006, assigned to Huntington on April 6, 2006; (iii) Assignment of Permits, Contracts and Warranties, in favor of PNP, dated February 14, 2006, assigned to Huntington on April 6, 2006; and (iv) the assignment of UCC financing statement filed in the New York Secretary of State's Office, PNP filing # 200604040296120, dated April 4, 2006, and assigned to Huntington by filing #200604140325706, dated April 14, 2006, covering all of the assets of the Debtor located on, and arising out of the operation of, the Kiebler Mortgaged Premises.

(b) <u>Restated $4.19 Million Note and the Restated $6.81 Million Note.</u>
(i) Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, in favor of Huntington, dated April 6, 2006 (the "Restated $11 Million Mortgage") granting a lien on the Kiebler Mortgaged Premises; and (ii) UCC financing statements filed in the New York Secretary of State's Office covering all of the assets of the Debtor located on, and arising out of the operation of, the Kiebler Mortgaged Premises, filing #s 200604140325629, dated April 14, 2006, and 200604140325580, dated April 14, 2006.

(c) <u>$1 Million Note.</u> (i) Mortgage, Security Agreement, Assignment of Lease and Rents and Fixture Filing, in favor of Huntington, dated September 7, 2006 (the "$1 Million Mortgage") granting a lien on the Kiebler Mortgaged Premises and certain real property, together with all buildings, improvements and fixtures located thereon and the "Ridgeview Mortgaged Premises" (defined below).

(d) <u>$1.44 Million Note.</u> Mortgage, Security Agreement, Assignment of Lease and Rents and Fixture Filing , in favor of Huntington, dated December 17, 2007 (the "$1.44 Million Mortgage"), granting a lien on the Kiebler Mortgaged Premises.

(e) <u>Ridgeview Note.</u> (i) Mortgage, in favor or Sky Bank, Huntington's predecessor, dated October 31, 2006 (the "Ridgeview Mortgage") granting a lien on the Ridgeview Mortgaged Premises; (ii) Assignment of Rents, Mortgages, Leases, and Profits, dated October 31, 2006; (iii) Commercial Security Agreement, dated October 31, 2006; and (iv) UCC financing statement filed in the New York Secretary of State's Office covering all of the assets of the Debtor located on, and arising out of the operation of, the Ridgeview Mortgaged Premises, filing # 200611020874759, dated October 31, 2006.

6. In summary, Huntington's security interests include the following:

(a) a first priority mortgage lien in and to the Kiebler Mortgaged Premises;

(b) a first priority security interest in all furniture, furnishings, fixtures, goods, equipment, inventory and personal property now or hereafter located on the Kiebler Mortgaged Premises, including but not limited to, all ski lifts, pylons, towers, ski lift machinery and equipment, snow cats, snow-making apparatus, service trucks, shuttle buses, golf carts, snowmobiles, vehicles, tractors, mowers, machines, engines, boilers, dynamos, elevators, stokers, tanks, cabinets, awnings, screen shades, blinds, carpets, draperies, lawnmowers, and all appliances, plumbing, heating, air conditioning, lighting, ventilating, refrigerating, disposal and incinerating equipment, sewer assets, water assets, and all fixtures and appurtenances thereto and such other goods and chattels and personal property as now or hereafter used or furnished in operating the Kiebler Mortgaged Premises;

(c) first security interest in all their right, title, and interest in and to all present and future leases, occupation fees, rents and income arising out of the operation of the Kiebler Mortgaged Premises;

(d) first security mortgage lien in and to the Ridgeview Mortgaged Premises;

(e) first security interest in and to all rents, leases, mortgages, profits and income generated from the Ridgeview Mortgaged Premises; and

(f) first security interest in all of the assets of the Debtor located on, and arising out of the operation of, the Ridgeview Mortgaged Premises, including, but not limited to, all goods, accounts, chattel paper, contract rights, deposit accounts, general intangibles, fixtures, equipment, and inventory, currently owned or hereafter acquired by Kiebler Recreation, together with the proceeds of all the foregoing.

7. The above recitation illustrates that Huntington maintains a first priority security interest in the Debtor's cash, accounts receivable and all proceeds from the operation of both the Kiebler Mortgaged Premises and the Ridgeview Mortgaged Premises. The Kiebler Mortgaged Premises and the Ridgeview Mortgaged Premises shall collectively be referred to as the "Mortgaged Premises."

### Budget

8. Huntington has not been provided with a budget illustrating the proposed use of Cash Collateral after June 16, 2010. The only budget provided by the Debtor is a 2-week budget

(the "Initial Budget") beginning on June 9, 2010 and ending on June 16, 2010, the date of the Final Hearing on Cash Collateral. A copy of the Initial Budget is attached hereto as Exhibit A. Without a budget going forward beyond June 16, 2010, Huntington is unable to ascertain the source of expected income or to which collateral such income is attributable. It is similarly impossible for Huntington or the Court to determine if the Debtor's asserted needs for cash are reasonable and designed for the preservation of the Debtor's assets. Furthermore, with the limited amount of information provided, Huntington is unable to assess the risks of permitting the use of Cash Collateral.

9. Huntington has been informed that the Debtor is in the process of preparing a budget for the time period beyond June 16, 2010 and will release such budget to Huntington prior to the June 16, 2010 hearing.

10. Even if the requested time period were covered by the Initial Budget, it would be inadequate and lacks the level of detail required to assess the Debtor's cash needs. Among other issues, due to a single line item for "Income," it is unclear where or from which assets income is derived. Further, general categories such as "Food", "Golf Supplies", "Prof. Licensing/ Dues & Fees" do not provide enough information to determine what payments are being made, or whether such payments are essential to the operation of the Debtor's facility.

11. The Initial Budget does not provide enough information for Huntington to determine whether essential payments are being made to preserve the facility, such as those for the constant and routine care and maintenance of the golf courses. The Initial Budget also fails to identify payments for essential obligations such as Worker's Compensation Insurance and New York State Sales Tax. Similarly, no information is provided which shows the treatment of

1711475.3

deposits, such as those required to secure the facility for a wedding or other events. Notably, the Initial Budget fails to make any provision for payment of real property taxes.

12. To the extent that the notation "Prof. Licensing/ Dues & Fees" in the Initial Budget indicates the payment of attorney's fees, Huntington objects to the use of Cash Collateral for this purpose. Without the ability to make necessary payments for taxes, workers compensation and other critical expenses, any provision for monthly payments of a post-petition retainer is inappropriate. Upon information and belief, the Court has not yet approved the retention of any professionals in this chapter 11 case. As a result, any compensation arrangement between the Debtor and its attorney has not been approved by the Court; therefore, any proposed payment to attorneys or other professionals is premature.

13. Even if retention of the Debtor's attorney had been approved by the Court, payment of interim fees in this manner would be inappropriate without further order of the Court regarding interim compensation. Although it is hard to determine from the information provided by the Debtor, it appears that the proposed payments may be "evergreen retainer" payments which have been heavily scrutinized by bankruptcy courts.

14. Without the benefit of a budget illustrating the Debtor's cash needs beyond June 16, 2010, Huntington is also unable to determine the Debtor's intentions with respect to the payment of debt service. Without waiving its right to object to specific payments once a budget is provided, Huntington objects to the repayment of any secured or unsecured prepetition loans which Huntington asserts would be subordinate to its first-priority security interest.

15. Huntington expects that any postpetition budget should, at very least, cover the time period for which the Debtor requests the use of the Cash Collateral and provide information sufficient for Huntington and the Court to determine the amount of income anticipated, which

assets such income is derived from, and what payments necessary to the operation of the facilities are being made by the Debtor.

## Adequate Protection and Carve-Out

16. As adequate protection to Huntington, in the text of the Cash Collateral Motion, the Debtor will grant "post-petition security interest in, and liens upon, all of the categories and types of collateral in which it held a security interest as of the Petition Date, but such post-petition security interests shall only be to the same extent, and have the same priority, as its respective security interests as of the Petition Date." *See* Cash Collateral Motion at ¶ 11(a).

17. Huntington does not object to a carve out for unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee; however, it objects at this point in the case to any carve out for attorney's fees. As identified above, the Debtor is unable to provide for payments to secured creditors, for ongoing tax obligations, or for delinquent real estate taxes.

18. Huntington objects to a carve out for the payment of certain wages and benefits due to employees. While Huntington does not object to wages paid to the majority of the Debtor's employees, it is unclear from the information provided by the Debtor if wages and benefits are being paid to management employees or other parties related to or affiliated with the Debtor. Specifically, Huntington objects to any wages or benefits which are or may be paid to Paul E. Kiebler IV, Jody Kiebler or Raymond Theiss.

19. Although it is not apparent that Raymond Theiss is a related party or affiliated with the Debtor, documents provided by the Debtor to Huntington provide some uncertainty about the appropriateness of his salary. On a list of employees as of April 1, 2010, provided to Huntington, Mr. Theiss is listed as the CFO with an annual salary of $75,000. However, in an document delivered by the Debtor's attorney to Huntington on June 2, 2010, allegedly prepared

by Mr. Theiss, which identified the duties performed by Mr. Theiss as Chief Financial Officer and General Counsel on behalf of the Debtor, Mr. Theiss' compensation is identified as $125,000. It appears that Mr. Thiess received a $50,000 raise in the less than two months preceding this chapter 11 filing. Huntington would need additional information to determine whether such compensation should be paid from Cash Collateral.

### Interim Period for Allowance of Use of Cash Collateral

20. The Cash Collateral Interim Order orders the Final Hearing be held on June 16, 2010. Huntington respectfully submits that a Final Hearing on Cash Collateral is premature. Since Huntington has not been provided a budget other than the Initial Budget as of the date hereof, it is not in a position to be able to appropriately assess the amount of income generated, the assets from which such income is generated, the amount of Cash Collateral necessary to operate the facilities or maintain the assets, or the risk of permitting the use of Cash Collateral.

21. Huntington respectfully requests that the Debtor's use of Cash Collateral should be approved on an interim basis for a term of thirty (30) days from entry of any additional interim order, and only on the condition that a budget for the same time period with required specificity of information be presented to and approved by the Court and Huntington.

22. Nothing contained in this Objection should be deemed to be a waiver of the Huntington's right to seek future relief to object to future use of Cash Collateral. Huntington also reserves its right to supplement its Objection to the Cash Collateral Motion.

**WHEREFORE**, Huntington respectfully requests that the Court (i) deny the Debtor's request for use of Cash Collateral without an agreed budget for the relevant time period, (ii) limit the interim time period in which the Debtor is permitted to use Cash Collateral to thirty (30) days from entry of any additional interim order, (iii) to the extent use of Cash Collateral is

8

1711475.3

10-15099-rb    Doc 67    FILED 06/10/10    ENTERED 06/10/10 17:28:42    Page 8 of 12

permitted, grant Huntington a replacement lien, (iv) deny the carve-out of attorney's fees and certain employee wages and benefits as administrative costs from the proposed adequate protection lien to be granted to Huntington, and (v) grant such other and further relief as the Court deems just and proper.

Dated: Syracuse, New York  
       June 10, 2010

BOND, SCHOENECK & KING, PLLC  
Attorneys for The Huntington National Bank

By: _____  
Joseph Zagraniczny, Esq.  
Ingrid Palermo, Esq.  
Office and P.O. Address  
One Lincoln Center  
Syracuse, NY 13202  
Telephone: (315) 218-8000

# EXHIBIT A

Kiebler Recreation, LLC
dba Peek'n Peak Resort
2-Week Budget

|  | Week Ending | | 2-Week Total |
|---|---|---|---|
|  | 6/9/2010 | 6/16/2010 |  |
| **Income** | 196,000 | 203,000 | 399,000 |
|  | 196,000 | 203,000 | 399,000 |
| **Expenses** | | | |
|   Personnel Expenses | | | |
|     Salaries & Wages | 90,000 | 90,000 | 180,000 |
|     Taxes & Benefits | 5,950 (2) | 3,000 | 8,948 |
|   Total - Personnel Expenses | 95,950 | 93,000 | 188,948 |
|   Property Taxes | | | |
|     Chautauqua County Taxes | | | 0 |
|     Clymer School Taxes | | | 0 |
|   Total - Property Taxes | 0 | 0 | 0 |
|   Utilities | | | |
|     Cable & Internet | 0 | 4,153 (1) | 4,153 |
|     Electric | 0 | 0 (1) | 0 |
|     Natural Gas | 0 | 6,870 (1) | 6,870 |
|     Telephone | 0 | 1,961 (1) | 1,961 |
|     Security System | 0 | 28 (1) | 28 |
|     Trash Disposal | 0 | 0 | 0 |
|   Total - Utilities | 0 | 13,012 | 13,012 |
|   Operations | | | |
|     Food | 40,000 | 30,000 | 70,000 |
|     Beverage - Beer / Liquor | 2,588 | 5,609 | 8,197 |
|     Purchases for Resale | 3,400 | 1,600 | 5,000 |
|     Golf Supplies | 2,000 | 2,000 | 4,000 |
|     Office Supplies | | 2,000 | 2,000 |
|     Operating Leases | | | 0 |
|     Spa Supplies | | | 0 |
|     Gas/Diesel | 5,200 | 5,400 | 10,600 |
|     Repairs & Maintenance | 15,000 | 10,000 | 25,000 |
|     Pro Shop | 8,000 | 2,000 | 10,000 |
|     Sales & Marketing | | | 0 |
|     Condo Rentals | 10,000 | 5,000 | 15,000 |
|     Sales & Use Tax | | | 0 |
|     Occupancy Tax | | | 0 |
|   Total - Operations | 86,188 | 63,609 | 149,797 |

## Kiebler Recreation, LLC
## dba Peek'n Peak Resort
## 2-Week Budget

|  | Week Ending 6/9/2010 | Week Ending 6/16/2010 | 2-Week Total |
|---|---:|---:|---:|
| **General & Administrative** | | | |
| Bank Charges | | | 0 |
| General Business Insurance | | | 0 |
| Worker's Comp Insurance | | | 0 |
| Postage | | | 0 |
| Office Equip. Lease & Maint. | | | 0 |
| Vehicle Leases | | | 0 |
| Office Supplies | | | 0 |
| Prof. Licensing / Dues & Fees | 16,000 | 16,000 | 32,000 |
| Information Technology | 3,000 | | 3,000 |
| Travel & Mileage | | | 0 |
| Real Estate Tax | | | 0 |
| Total - General & Administrative | 19,000 | 16,000 | 35,000 |
| **Total Expenses** | 201,138 | 185,621 | 386,757 |
| Net Operating Income | (5,138) | 17,379 | 12,243 |
| **Debt Service** | | | |
| On-Deck Capital | | | 0 |
| GMAC | | | 0 |
| HNB - (1.44 Mill.) | | | 0 |
| Leasenet | | | 0 |
| HNB (4.19 Mill.) | | | 0 |
| HNB (6.81 Mill.) | | | 0 |
| HNB Loan - Ridgeview | | | 0 |
| PNC (Fairways) | | | 0 |
| HNB (1 Mill.) Line of Credit | | | 0 |
| PNC Letter of Credit | | | 0 |
| CCIDA Loans | | | 0 |
| Cross Estates | | | 0 |
| Textron Leases | | | 0 |
| GE Capital (Shuttles) | | | 0 |
| Tygris Lease | | | 0 |
| **Total Debt Service** | 0 | 0 | 0 |
| **Net Cash Flow** | (5,138) | 17,379 | 12,243 |

### Cash Reconciliation

|  | | | |
|---|---:|---:|---:|
| Beginning Cash Balance | 60,000 | 54,862 | 60,000 |
| Net Cash Flow | (5,138) | 17,379 | 12,241 |
| Ending Cash Balance | 54,862 | 72,241 | 72,241 |

### Notes

(1) Adequate Assurance Utility Payments
(2) $2,080 Pre-Petition Expense - Dental and Life Insurance