IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| **Kiebler Recreation, LLC** ) | Case No. 10-15099 |
| dba Peek'N Peak Resort & Spa ) | |
| ) | Judge Baxter |
| **Debtor.** ) | |
| ) | |

## DEBTOR'S OBJECTION TO MOTION FOR RELIEF FROM STAY

Kiebler Recreation, LLC (the "Debtor") hereby submits this response in opposition (the "Objection") to the motion of The Huntington National Bank ("Huntington") for relief from the automatic stay [docket # 320] (the "Stay Relief Motion") to resume foreclosure and receivership proceedings commenced prior to the filing of the Debtor's voluntary chapter 11 petition. In support of its Objection, the Debtor also submits the affidavit of its financial advisor, John K. Lane (the "Lane Affidavit"). The Lane Affidavit is attached hereto as Exhibit A and incorporated in this Objection. For and as its Objection, the Debtor respectfully states the following.

## PRELIMINARY STATEMENT

The Debtor will demonstrate to the Court that it has cash flow sufficient to confirm a plan of reorganization, as well as to adequately protect Huntington's interests in the Debtor's cash, and that the value of the Debtor's resort property is sufficient to adequately protect Huntington's interest in any prepetition collateral by a very generous equity cushion of around 53%, at the upcoming evidentiary hearing regarding the Debtor's request to use cash collateral on a final basis, scheduled for December 2, 2010 (the "Final Hearing").

In anticipation of the Debtor making that showing at the Final Hearing, Huntington filed its Stay Relief Motion, setting an expedited response period and hearing schedule—without providing adequate notice or the opportunity to respond required by due process and applicable bankruptcy law[1]—in an apparent attempt to sabotage the Final Hearing and preempt any need for the Court to conduct the hearing. This unfortunate maneuver serves only one purpose—to further ratchet up unnecessary administrative costs in this bankruptcy case, which may be Huntington's best hope of derailing the Debtor's plan.

Notwithstanding that the Stay Relief Motion is susceptible to being stricken due to the movant's failure to adhere to the Federal and Local Rules of Bankruptcy Procedure, the Debtor has opted to address the motion on the merits. As discussed herein, and as will be demonstrated in detail at the Final Hearing, Huntington's interests in its collateral are abundantly protected. In addition, the Debtor has equity in the subject property, and the property is necessary for the Debtor's reorganization. For these reasons, stay relief is not appropriate.

---

[1] Without attempting to make any showing of a need for expedited or emergency consideration, Huntington set an eight day deadline to respond to the Stay Relief Motion, and it scheduled a hearing to occur within 15 days of filing the motion. *See* Huntington's notice of the Stay Relief Motion [docket # 321]. In doing so, Huntington ignored applicable bankruptcy rules and the due process considerations upon which they are based.

LBR 4001-1(c) makes LBR 9013-1 applicable to motions for relief from stay. LBR 9013-1 requires a movant to provide 14 days to respond to such a motion. *Id*. Moreover, pursuant to LBR 9013-1(b), Fed. R. Bankr. P. 9006(f), and Fed. R. Civ. P. 5(b)(2)(E), parties are to be given an additional three days to respond. *See* LBR 9013-1(b); Fed. R. Bankr. P. 9006(f); Fed. R. Civ. P. 5(b)(2)(E); and 11 U.S.C. § 102(1).

Applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy and Civil Procedure, and the Local Bankruptcy Rules are mandatory implementations of due process requirements pertaining to notice and the opportunity to be heard. Indeed, adequate notice lies at the heart of due process. *Chicago Cable Communications v. Chicago Cable Commission*, 879 F.2d 1540, 1546 (7th Cir. 1989). *See also Western Auto Supply Co. v. Savage Arms (In re Savage Industries, Inc.)*, 43 F.3d 714, 720-21 (1st Cir. 1994) (notice is the "cornerstone underpinning Bankruptcy Code procedure"). Huntington ignored these notice requirements by imposing an 8 day response deadline and a 15 day hearing period, where a minimum period of 17 days to respond was required.

## RELEVANT BACKGROUND

On May 26, 2010 (the "Petition Date"), the Debtor commenced the above-captioned case under the Bankruptcy Code. The Debtor operates Peek'N Peak Resort and Spa, a popular recreational and tourist complex in Chautauqua County, New York (the "Resort"). The Debtor is authorized to continue to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code"). The Office of the United States Trustee appointed a committee of unsecured creditors (the "Committee") on June 9, 2010. No trustee or examiner has been appointed.

The morning of the Petition Date, Huntington initiated an *ex parte* receivership action against the Debtor (the "Receivership Action"). The Receivership Action was stayed upon the filing of the chapter 11 petition herein. The Stay Relief Motion asks the Court to lift the automatic in order to allow Huntington to resume the Receivership Action.

Because, as explained below, there has been no demonstration of cause necessary to justify stay relief, and because the Debtor has equity in the Resort property and the property is necessary for an effective reorganization, the Stay Relief Motion should be denied. In any event, a determination of the relief sought in the Stay Relief Motion must await the Court's ruling at the Final Hearing, particularly given Huntington's disregard for the normal due process protections afforded by law to parties in this case.

## OBJECTION AND BASES THEREFOR: NO SHOWING EXISTS TO JUSTIFY STAY RELIEF UNDER BANKRUPTCY CODE SECTION 362(d)(1) OR (d)(2)

As explained below, Huntington has not demonstrated any justification sufficient to entitle it to relief from stay under section 362(d)(1) or under section 362(d)(2) of the Bankruptcy Code.

## I. NO CAUSE EXISTS TO JUSTIFY STAY RELIEF UNDER BANKRUPTCY CODE SECTION 362(d)(1)

Bankruptcy Code section 362(d)(1) allows a court to grant relief from stay for "cause," including the lack of adequate protection of a party's interest in property. 11 U.S.C. § 362(d)(1). In its Stay Relief Motion, Huntington asserts that "cause" exists to justify resumption of the Receivership Proceeding, due to a lack of adequate protection of its interest in the Resort. Stay Relief Motion at ¶ 18. Under the circumstances existing here, this cannot be so. As the Debtor is fully prepared to demonstrate at the Final Hearing, Huntington's interest in the Debtor's property is abundantly and adequately protected on several independent bases.

### *Adequate Protection Generally*

Adequate protection may consist of periodic cash payments, additional liens, replacement liens, or other forms of relief. 11 U.S.C. § 361. What constitutes adequate protection is determined on a case by case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); and *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (adequate protection may assume many forms).

The purpose of adequate protection is to guard a secured creditor against diminution in the value of its interest in collateral. *See In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992). Adequate protection is designed to give a secured creditor the value it bargained for; it is not designed to give the secured creditor a windfall. *In re Mellor*, 734 F.2d 1396, 1401 (9th Cir. 1984). The interest that is entitled to be adequately protected is the value of the collateral; in other words, the secured creditor is entitled to protection against any decline in the value of the collateral. *In re Marion Street P'Ship*, 108 B.R. 218, 224 (Bankr. D. Minn. 1989).

4

The "classic" form of adequate protection for a secured creditor is an equity cushion in the collateral. *In re Mellor*, 734 F.2d at 1400. A secured creditor is also adequately protected where the Debtor is able to fund necessary operations out of its ongoing cash flow. *See In re Carbone Companies, Inc.*, 395 B.R. 631, 636 (Bankr. N.D. Ohio 2008). Adequate protection need only be provided to the extent the secured creditor's interest in the property is *declining*. *In re American Consolidated Transportation Companies, Inc.*, 2010 Bankr. LEXIS 3144 at *9-10 (Bankr. N.D. Ill. Sep. 10, 2010) (if secured creditor's interest in debtor's property is not declining in value, creditor is not entitled to adequate protection).[2]

Huntington is adequately protected on three separate levels in this case: (1) it is adequately protected by replacement liens and superpriority administrative expense claims to the extent of any diminution in collateral; (2) its interest in cash collateral is adequately protected by positive net cash flow projections during the coming months of the case and beyond plan confirmation; and (3) its interest in the collateral as a whole is adequately protected by a substantial equity cushion in the Resort property.

---

[2] Pursuant to LBR 9013-2(d), copies of unreported opinions cited herein are collectively attached hereto as Exhibit B.

### 1. **Huntington is adequately protected by replacement liens and superpriority administrative expense claims.**

Pursuant to the Cash Collateral Order,[3] Huntington has been granted adequate protection in the form of replacement liens and superpriority administrative expense claims to the extent of any diminution in collateral. *See* Cash Collateral Order. Unless a secured creditor can demonstrate that its collateral is declining in value, it is not entitled to any additional adequate protection. *American Consolidated Transportation Companies*, 2010 Bankr. LEXIS 3144 at *9-10.[4] Nonetheless, Huntington is adequately protected on the two additional and independent bases described next.

---

[3] As defined herein, the "Cash Collateral Order" consists of the following Orders entered by the Court during this chapter 11 case: May 28, 2010 Agreed First Interim Order Authorizing the use of Cash Collateral and Granting Adequate Protection [docket # 11]; June 16, 2010 Agreed Second Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection [docket # 84]; July 2, 2010 Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection [docket # 126]; Stipulation and Agreed Order Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of July 22, 2010 [docket # 155]; Second Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of August 4, 2010 [docket # 180]; Third Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of September 2, 2010 [docket # 215]; Fourth Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of September 28, 2010 [docket # 258]; Fifth Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of October 18, 2010 [docket # 285]; Sixth Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of October 25, 2010 [docket # 296]; and Seventh Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of November 2, 2010 [docket # 304].

[4] Huntington has the burden of proving that the collateral's value will decline during the pendency of the bankruptcy; if the bank's interest in the debtor's property is not declining in value, the bank is not entitled to adequate protection. *American Consolidated Transportation*, 2010 Bankr. LEXIS 3144 at *9-10. In the Stay Relief Motion, Huntington complains that it has not received adequate protection payments during the bankruptcy. Yet, this Court ruled early on during the case that Huntington is not entitled to adequate protection payments. The Court has further stated that if Huntington wishes to be paid periodic adequate protection payments, it must make a duly noticed filing requesting such payments. To date, Huntington has not done so. As an oversecured creditor whose collateral is not declining in value, Huntington will be unable to meet its burden of demonstrating that it is entitled to adequate protection payments.

## 2. Huntington is adequately protected by positive cash flows going forward.

As the Debtor will demonstrate at the Final Hearing, sound and supportable positive cash flow projections adequately protect Huntington's interest in the cash collateral.[5] Lane Affidavit at ¶¶ 4, 8-9. As this Court has held, credible evidence of likely increases in net cash flow and receivables are *prima facie* adequate protection of a creditor's interest in cash collateral. *In re Carbone Companies, Inc.*, 395 B.R. 631, 636-37 (Bankr. N.D. Ohio 2008). *See also In re Marion Street P'Ship*, 108 B.R. at 224-25, 227 (cash flow sufficient to pay operating expenses is

---

[5] The extent of any interest of Huntington in the Debtor's cash collateral will be the subject of a separate proceeding for the Court's determination. However, it is well worth mentioning at this point that Huntington's interest in the Debtor's cash is not nearly as broad as the bank appears to believe. In fact, Huntington's cash collateral comprises a very small percentage of the Debtor's total annualized postpetition cash revenues of $16 million. Pursuant to the various prepetition loan agreements between the Debtor and Huntington, Huntington's interest in cash collateral primarily consists of the following two categories of cash: (i) cash on hand in a Huntington account as of the Petition Date in the amount of $162,179.14; and (ii) net hotel room revenues generated since the Petition Date, in the approximate aggregate post-petition amount of $6,715.00 as of the date of this filing.

(i) Cash on hand as of Petition Date: Pursuant to applicable state law (N.Y. U.C.C. Law §§ 9-312 and 9-314), in order for a creditor to have a perfected security interest in checking or deposit accounts, the creditor is required to have control or possession of such accounts. In this case, as of the Petition Date, only one account, containing $162,179.14, was held by the Debtor at Huntington. All remaining funds were held at other banking institutions, and Huntington was not a party to any control agreement with the other institutions. Accordingly, as of the Petition Date, pursuant to N.Y. U.C.C. Law § 9-104, Huntington did not have control or possession of any funds in the non-Huntington accounts, and the accounts contained few identifiable cash proceeds of Huntington's collateral. As a result, any security interest of Huntington in funds in non-Huntington accounts was not perfected as of the Petition Date, and any interest Huntington has in such funds is junior to that of the Debtor, a hypothetical judicial lien creditor with an interest in property of the estate pursuant to Bankruptcy Code section 544(a).

(ii) Net hotel rents since Petition Date: As a general rule, Bankruptcy Code section 552(a) provides that property acquired by a debtor after the commencement of the case is not subject to any lien resulting from a security agreement entered into before the commencement of the case. 11 U.S.C. § 552(a). Section 552(b) provides several exceptions to the general rule, only one of which applies here—namely, with respect to the net (after expenses) hotel rents described above. *See* 11 U.S.C. 552(b)(2) (providing that a prepetition security interest attaches to post-petition charges for use and occupancy of hotel rooms). As such, while Huntington may possess a security interest in post-petition net hotel revenues under section 552(b)(2), Huntington's security interest does not extend to the Debtor's remaining post-petition revenues by virtue of Bankruptcy Code section 552(a). Other than with respect to net hotel room rents, few if any of the Debtor's post-petition revenue sources fall within the limited exceptions set forth in Bankruptcy Code section 552(b) to the general rule of 552(a) that property acquired post-petition is not subject to a prepetition lien. 11 U.S.C. § 552(a).

Finally, under the "equities of the case" analysis of section 552(b), a court may order that a creditor's security interest in post-petition hotel rents only attaches to net rents, as opposed to gross rents. 11 U.S.C. § 552(b)(2). In this case, because gross hotel rent revenues are first utilized to pay for wages, maintenance, utilities, etc. (*i.e.*, the costs of preserving, maintaining and enhancing Huntington's collateral), the Court should order that Huntington's security interest in post-petition hotel rents extends only to the net rents remaining after costs of preserving the collateral. *See* Collier on Bankruptcy ¶ 552.03[2] (16th ed.).

adequate protection for undersecured creditor); *In re Buttermilk Towne Ctr. LLC*, 2010 Bankr. LEXIS 2126 at *8 (Bankr. E.D. Ky. June 29, 2010) (creditor has adequate protection so long as receivables being used by debtor are replaced by sufficient new receivables).[6]

In this case, like in *Carbone* and the others cited above, the Debtor has credible projections of substantially increased net revenues during the coming ski season and throughout the remainder of this case.[7] *See* Lane Affidavit at ¶¶ 4, 8-9; *see also Carbone*, 395 B.R. at 636-37. Indeed, as explained next, Huntington's interest in the Resort property overall is also protected by a very large equity cushion.

### 3. Huntington is adequately protected by a large equity cushion.

As acknowledged in the Stay Relief Motion, a recent appraisal (the "Appraisal") has the Debtor's Resort valued at $31.6 million. In its Stay Relief Motion, Huntington asserts a secured claim in the amount of $17.3 million. The Debtor expects Huntington to concede that its claim amount is wrongfully inflated, and that the actual amount of its claim is substantially less than 17.3 million.[8] Moreover, to the extent Huntington asserts that it is entitled to adequate protection

---

[6] *See also American Consolidated Transportation Companies*, 2010 Bankr. LEXIS 3144 at *9-13.; and *In re Dynaco Corp.*, 162 B.R. 389, 395-96, 398-99 (Bankr. D.N.H. 1993) (authorizing use of cash collateral upon demonstration that, despite conceded declines in cash flow, cash levels would be restored eventually; part of adequate protection is fact that proceeds of receivables are being used to generate new receivables and meet operating expenses).

[7] For these reasons, and for the reasons explained in the Lane Affidavit, Huntington's assertions regarding the Debtor's alleged administrative insolvency are ill-premised, misleading, and erroneous.

[8] In reality, the actual amount of Huntington's oversecured claim is, *on its face*, substantially less than $17.3 million—in fact, it is likely no greater than $14.8 million. The actual amount of Huntington's claim falls well short of the amount asserted by Huntington for, among others, the following reasons: (1) on its face, a substantial portion (nearly $900,000) of Huntington's asserted claim arises out of a lease arrangement with a *non-debtor* entity. *See* Stay Relief Motion at Exhibit 1, parts 6 and 7 (also numbered as Exhibits H and I to Exhibit 1); (2) a substantial portion (approximately $800,000) of Huntington's asserted claim is subject to reduction due to a diversion and misapplication of loan payments under the relevant prepetition loan documents executed by Huntington's predecessor in interest, SkyBank; and (3) a substantial portion (over $300,000) of Huntington's asserted claim relates to post-petition charges that are not entitled to adequate protection. As a result, the correct amount of the Huntington claim is—at most—the scheduled amount of $15,681,599.00, and it is more likely in the range of $14.8 million. As mentioned, the Debtor believes Huntington will acknowledge, at a minimum, that its asserted claim amount is improperly inflated by at least $900,000.

for any amount of the claim that includes post-petition interest or fees, it is <u>not</u> entitled to adequate protection for such additional claim amounts asserted. *See, e.g., Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.)*, 54 F.3d 722, 727, 729-30 (11th Cir. 1995) (secured creditors not entitled to adequate protection for interest and fees accruing post-petition); and *In re Wilson*, 378 B.R. 862 (Bankr. D. Mont. Nov. 7, 2007).

An "equity cushion" is defined as the value of the subject property, above the amount owed to a secured creditor, that will shield that creditor's interest from loss due to a later decrease in value. *In re Mellor*, 734 F.2d at 1400. In this case, a deduction of Huntington's actual secured claim amount from the $31.6 million market value of the Resort leaves Huntington with an equity cushion in the Prepetition Collateral of about $16.8 million, which is equal to an equity cushion of over 53%.

Equity cushions of 20% or more are nearly uniformly held to be sufficient for adequate protection. *See*, among others, *In re Mellor*, 734 F.2d at 1401; *Bank Rhode Island v. Pawtuxet Valley Prescription & Surgical Ctr.*, 386 B.R. 1, 10 (D.R.I. 2008); and *Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza)*, 111 F.3d 1264, 1272 (5th Cir. 1997) (cases nearly uniform that equity cushion of 20% or more constitutes adequate protection). Indeed, a number of courts have found that a secured creditor is adequately protected where the equity cushion is significantly less than 20%.[9] An equity cushion, particularly a cushion of the magnitude existing here, is the "classic" form of adequate protection for a secured creditor. *In re Mellor*, 734 F.2d at 1400. *See also Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200, 1203 (1st Cir. 1995).

---

[9] *See In re Mellor*, 734 F.2d at 1401 (discussing such cases); *Bank Rhode Island*, 386 B.R. at 10 (same); and *Pacific First Bank ex rel. RT Capital Corp. v. Boulders on the River, Inc. (In re Boulders on the River, Inc.)*, 164 B.R. 99, 104 (B.A.P. 9th Cir. 1994) (equity cushion of 11.45% is sufficient adequate protection).

Even if Huntington's claim was in excess of $17 million, as it has wrongly asserted, its interest in the Resort would still be protected by an equity cushion of 45%—which is more than enough, by a large margin, to establish that Huntington is adequately protected. Thus, in either event—whether Huntington's equity cushion is calculated based on its erroneously inflated claim amount, or whether it is calculated based upon the actual amount of the claim, Huntington is protected by a substantial equity cushion in the Resort property.

Because Huntington is more than adequately protected under these circumstances, it cannot demonstrate the requisite cause necessary to justify relief from stay under Bankruptcy Code section 362(d)(1).[10] Moreover, as explained below, its requested relief fails under section 362(d)(2) as well.

## II. NO BASIS EXISTS TO JUSTIFY STAY RELIEF UNDER BANKRUPTCY CODE SECTION 362(d)(2)

Bankruptcy Code section 362(d)(2) allows a court to grant relief from stay with respect to a stay of an act against property of the estate if: (1) the debtor does not have equity in the property; and (2) the property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2). By its plain terms, the statute requires that both conditions must be satisfied in order for stay relief to be granted. *See Id*. *See also Kane v. Town of Harpswell (In re Kane)*, 254 F.3d 325, 330 (1st Cir. 2001). Huntington is unable to meet either element here because the Debtor has equity in the Resort property, and the property is necessary for an effective reorganization.

### 1. The Debtor has equity in the Resort property.

As Huntington correctly points out in the Stay Relief Motion, equity is the value, above all secured claims against the property, that can be realized from a sale of the property. *In re*

---

[10] *See* 11 U.S.C. § 362(d)(1); s*ee also Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) (court should deny relief from stay if movant fails to make initial showing of cause).

10

10-15099-rb    Doc 329    FILED 11/16/10    ENTERED 11/16/10 15:51:50    Page 10 of 15

*Mellor*, 734 F.2d at 1400. As mentioned earlier, the Resort has a market value of $31.6 million. The total of all scheduled undisputed secured debts is approximately $30,691,828.32, which includes questionable amounts allegedly owed to Huntington. Because the value of the Resort property exceeds the total secured indebtedness, the Debtor has equity in the Resort.[11]

The fact that the Debtor has equity in the Resort concludes the analysis under section 362(d)(2) and defeats the Stay Relief Motion. Consequently, the Court need not even reach the issue of whether the property is necessary to an effective reorganization. *See In re Kane*, 254 F.3d at 330. Notwithstanding, the Debtor is completely prepared to show at the Final Hearing that the Resort property is necessary for an effective reorganization in this case.

### 2. The Resort property is necessary for an effective reorganization.

In order to establish that property is necessary to an effective reorganization, a debtor must make "some showing that a reorganization is possible." *In re 6200 Ridge, Inc.*, 69 B.R. 837, 843 (Bankr. E.D. Pa. 1987). Uncertainties should be resolved in the debtor's favor during the period in which the debtor is entitled to file a plan. *Id.*[12] Even a showing of only a "slim" prospect of reorganization may suffice. *See In re Terrace Gardens Park P'Ship*, 96 B.R. 707, 712 (Bankr. W.D. Tex. 1989).

In this case, the Debtor's reorganization prospects are far greater than slim—in fact, they are probable. For one thing, the Debtor has consensus on a confirmable plan with a number of non-Huntington creditor constituencies. For another thing, and as Huntington admits in the motion, the Debtor's business is seasonal. It generates the vast majority of its revenues during

---

[11] As will also be shown at the Final Hearing, the market value of the Resort is appreciating in value.

[12] The plan in prospect may be one of reorganization or liquidation; determinations that property is not necessary to an effective reorganization are not favored during the early stages of a bankruptcy. *In re 6200 Ridge, Inc.*, 69 B.R. at 843. *See also In re Terrace Gardens Park P'Ship*, 96 B.R. at 712 (determination of whether reasonable possibility of effective reorganization exists within reasonable time requires lower quantum of evidence than actual confirmation proceeding).

11

two busy seasons: the summer golf season and, especially, the winter ski season. The 2010-2011 ski season is about to begin. By the time the Debtor's plan is confirmed, current expectations are that it will have built up cash reserves that will be sufficient to fund its operations, as well as to fund all plan payments, well beyond the projected effective date of the Debtor's plan of reorganization, and through the time the 2011-2012 ski season commences. Lane Affidavit at ¶ 9.

As the Debtor is prepared to establish at the Final Hearing, substantial profitability and positive revenues after all costs, including all debt service, are projected over the coming years, based on sound and supportable projections. Lane Affidavit at ¶¶ 4, 8-9. As will also be shown to the Court, the Debtor has a viable business plan—one that demonstrates that the Debtor is likely to enjoy strong revenues and positive net cash flow well into the future, and one that supports a reasonable prospect of reorganization—and that business plan is supported by realistic and rational projections and assumptions.

At the Final Hearing, the Debtor's financial advisor will show the Court that the Debtor's business plan supports a possible—and indeed, highly probable—prospect of reorganization, and that these prospects are very bright. For this reason, the Resort property is necessary for an effective reorganization under section 362(d)(2).

## CONCLUSION

Assuming the Court does not choose to *sua sponte* strike the Stay Relief Motion for its failure to adhere to the applicable bankruptcy rules and instead decides to rule on the merits, no showing justifying relief from stay has been made under either Bankruptcy Code section 362(d)(1) or (2).

Stay relief is unavailable under section 362(d)(1) because Huntington's interests herein are abundantly protected on three separate and independent levels. Namely, Huntington enjoys replacement liens and superpriority claims to the extent of any diminution in the value of its collateral; positive future cash flow protects Huntington's interest in the cash; and the aggregate Resort value is well in excess of the secured indebtedness to Huntington. As a result, Huntington's interests are more than adequately protected through the effective date of a plan of reorganization. Stay relief is similarly unavailable under Bankruptcy Code section 362(d)(2) because the Debtor has equity in the Resort property and the property is necessary for an effective reorganization.

The Debtor is poised for a successful reorganization and a quick exit from bankruptcy. Huntington's interests will be protected and preserved—and indeed enhanced—by the uninterrupted continuance of the Debtor's business operations, particularly as it enters the most profitable period of the year and confirms its plan of reorganization. By stark contrast, Huntington's request for relief from stay would devastate the Debtor's reorganization efforts, decimating value for creditors other than Huntington. The Stay Relief Motion should be denied.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) deny the Stay Relief Motion; and (ii) grant such other and further relief as the Court deems just and appropriate.

Dated: November 16, 2010                    Respectfully submitted,

/s/ *Andrew Turscak*
Robert C. Folland (0065728)
John R. Mitchell (0066759)
Andrew L. Turscak, Jr. (0073851)
Curtis L. Tuggle  (0078263)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114-1291
216.566.5500 (phone)
216.566.5800 (facsimile)
Robert.Folland@thompsonhine.com
John.Mitchell@ThompsonHine.com
Andrew.Turscak@Thompsonhine.com
Curtis.Tuggle@ThompsonHine.com

*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically through the Court's ECF System or by regular United States mail upon the parties listed below on November 16, 2010.

Philip E. Langer, Esq.
Michael Shuster, Esq.
Porter Wright Morris & Arthur LLP
925 Euclid Avenue, Suite 1700
Cleveland, Ohio 44115-1483
*Counsel for Huntington National Bank*
planger@porterwright.com
mshuster@porterwright.com

Joseph Zagraniczny, Esq.
Ingrid S. Palermo, Esq.
Stephen A. Donato, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202
*Counsel for Huntington National Bank*
jzagraniczny@bsk.com
ipalermo@bsk.com
sdonato@bsk.com

Joseph D. Frank
Jeremy C. Kleinman
Frank/Gecker LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
*Counsel for Pepsi Beverages Company*
jfrank@fgllp.com
jkleinman@fgllp.com

Ronna G. Jackson, Esq.
Howard M. Metzenbaum U.S. Courthouse
201 Superior Ave
Cleveland, OH 44114
*United States Trustee*
ronna.g.jackson@usdoj.gov

Mark L. Hankin, Esq.
Hankin & Mazel, PLLC
7 Penn Plaza, Suite 904
New York, New York 10001
*Counsel for American Leisure Consulting Corporation*

Drew Parobek, Esq.
Carrie M. Brosius, Esq.
Vorys, Sater, Seymour and Pease LLP
2100 One Cleveland Center, 1374 E. 9th
Cleveland, OH 44114
*Counsel for PNC Bank*
dtparobek@vorys.com
cmbrosius@vorys.com

Lawrence Bolla, Esq.
Quinn, Buseck, Leemhuis, Toohey & Kroto
2222 West Grandview Boulevard
Erie, Pennsylvania 16506
*Counsel for Vincent Cross, Executor for the Estate of Norbert Cross and Raquel Cross, Executrix of the Estate of Eugene Cross*
lbolla@quinnfirm.com

Daniel A. DeMarco
Christopher B. Wick
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
*Counsel for the Official Committee of Unsecured Creditors*
dademarco@hahnlaw.com
cwick@hahnlaw.com

Kenneth C. Johnson, Esq.
Andria M. Beckham, Esq.
Robert T. Castor, Esq.
Bricker & Eckler, LLP
100 South Third St.
Columbus, Ohio 43215
*Counsel for Textron Financial Corporation*
kjohnson@bricker.com

*/s/ Andrew Turscak*
Andrew L. Turscak, Jr.