UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

In re:

KIEBLER RECREATION, LLC,

                         Debtor.

Chapter 11

Case No. 10-15099

Judge Randolph Baxter

---

### HUNTINGTON NATIONAL BANK'S REPLY
### TO THE DEBTOR'S OBJECTION TO MOTION
### FOR RELIEF FROM THE AUTOMATIC STAY

       The Huntington National Bank ("Huntington"), the largest secured creditor of Kiebler Recreation, LLC (the "Debtor") and a party in interest herein, by and through its attorneys, Bond, Schoeneck & King, PLLC, hereby submits this Reply (the "Reply") to the Debtor's Objection filed on November 16, 2010 (the "Objection") to Huntington's Motion for an order modifying the automatic stay imposed by section 362(a) of title 11 of the United States Code ("Bankruptcy Code") pursuant to section 362(d) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") filed on November 8, 2010 ("Motion"). In support of this Reply and further support of the Motion, Huntington respectfully states as follows:

### PRELIMINARY STATEMENT

       1.      The Debtor's Objection takes unsupportable positions or completely mischaracterizes fundamental facts in connection with the value of the Debtor's property, Huntington's security interest, and the Debtor's prospects for improving its financial condition and avoiding a continuation of its significant ongoing operating shortfalls. Huntington, a secured

1776724.1 11/24/2010

creditor with a lien on substantially all of the Debtor's property, seeks a modification of the automatic stay due to a lack of adequate protection of its collateral. Further, as set forth below and in the Motion, the Debtor has no equity in its property and its prospects for a reorganization based on known facts are slim. Huntington should not be forced to gamble on the Debtor's unsupportable projections for financial stability.

2.      On September 1, 2010, Huntington filed a secured proof of claim in the amount of $16,978,539.78 as of the Petition Date (the "Huntington Claim"), attached to the Motion as Exhibit 1, which with continued postpetition interest and expenses now exceeds $17,300,000.00. The Huntington Claim is secured by first priority mortgages and security interests in substantially all of the Debtor's real property and all personal property including equipment, cash, accounts receivable and all rents and other proceeds emanating from the operation of the Debtor's property. Collectively, all of Huntington's collateral is referred to as the "Property."

3.      As stated in the Motion, the Debtor has been unable to operate its business in a viable manner during this case or during the three years preceding the bankruptcy filing. In fact, based on the Debtor's own financial disclosures, the Debtor's chapter 11 case is administratively insolvent. To date, the Debtor has not proposed regular adequate protection payments for its use of Huntington's cash collateral.[1]

## BACKGROUND

4.      On May 26, 2010 ("Petition Date"), the Debtor filed a voluntary petition for relief under title 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has been operating its

---

[1] On November 22, 2010, the Debtor and Committee filed a joint request pursuant to section 361 to allow a single payment to Huntington in the amount of $40,000 (the "Payment Motion") in the interest of allowing the parties to continue settlement discussions. At a hearing on November 23, 2010, the Court approved the relief requested in the Payment Motion, but an order has not yet been entered.

1776724.1 11/24/2010

businesses and managing its assets as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. Prior to the Debtor's filing of its petition, Huntington commenced a foreclosure proceeding to foreclose certain mortgages and security agreements, which mortgages and security interests are first liens on all of the Debtor's real and personal property assets except for the Fairways Condominiums and three motor vehicles (the "Foreclosure Action").

6. An Official Committee of Unsecured Creditors (the "Committee") was appointed in this case on June 9, 2010 by the United States Trustee. Hahn Loeser & Parks, LLP has been appointed counsel for the Committee. The Committee filed a separate objection to the Motion joining in the Debtor's Objection. In this Reply, Huntington will respond to the objection of the Committee along with the Objection filed by the Debtor, and will hereinafter refer to both objections collectively as the "Objection."

## ARGUMENT

### The Hearing on the Motion Was Intended to Coincide With the Valuation Hearing

7. There is already a procedure in place and trial dates scheduled before the Court for a determination of the value of the Debtor's property. By the Order entered on November 12, 2010, this Court scheduled a hearing to determine the value of the Debtor's property for December 2-3, 2010, beginning at 1:00 p.m. on December 2, 2010 (the "Valuation Hearing"). The hearing to consider the Motion was originally scheduled to coincide with the Valuation Hearing. Thus, the Debtor's accusation that the Motion's timing was "an apparent attempt to

3

1776724.1 11/24/2010

sabotage the [Valuation Hearing] and preempt any need for the Court to conduct the hearing" is simply wrong.[2]

8.     In fact, although the parties were attempting to move the Valuation Hearing from its scheduled November 24, 2010 start, Huntington contacted the Court in early November specifically to determine how best to schedule the hearing for this Motion to coincide with the Valuation Hearing. The reason for linking these hearings is clear. The value of the Debtor's property is an important issue in the context of both adequate protection pursuant to section 361 and 363 of the Bankruptcy Code and relief from the automatic stay sought by Huntington in the Motion.

9.     Notwithstanding comments by the Debtor to the contrary, Huntington has requested adequate protection payments through its Motion. Further, in its outstanding objection to the Debtor's use of cash collateral, filed on June 22, 2010, Huntington acknowledged that the Debtor did not have funds to make adequate protection payments but objected strenuously to any payments of professional fees or payment of junior secured claims if no adequate protection payments were being made to Huntington. The Debtor has taken the position that it did not have sufficient funds to make adequate protection payments, thus the Debtor's assertion now that Huntington never requested adequate protection payments (*see* Objection at fn. 4) is disingenuous and misleading. As shown in greater detail below, Huntington is entitled to relief

---

[2]     The Debtor makes much of the timing of Huntington's Motion. *See* Objection at fn 2. In early November, Huntington requested a hearing date with the Court in an attempt to have a hearing on the Motion scheduled along with the Valuation Hearing, then scheduled for November 24, 2010 and was given the hearing date of November 23, 2010. When Huntington expressed concern regarding the required notice period, it was informed that only 10 days' notice was required for such a motion to modify the automatic stay. Nevertheless, Huntington gave fifteen days' notice for the hearing on the Motion to be sure the parties had enough time to respond to the various arguments that may be raised. Further, the Debtor's argument that parties should be given an extra three days for mailing and should be afforded seventeen days to respond is contradicted by the language of Fed. R. Bankr. P. 9006(f), which only requires an extra three days for mailing when service was made by mail. Therefore, since service in this case was made electronically (*see* Certificate of Service, attached hereto as Exhibit A), no additional three days were required.

1776724.1 11/24/2010

from stay and adequate protection payments at this time, as its security interest in the Property is not being adequately protected.

### Relief from Stay Should be Granted for Cause Because
### Huntington's Interests in Its Collateral Are Not Adequately Protected

10.    Huntington maintains that relief from stay should be granted for "cause" because Huntington's security interest in the Property is not adequately protected pursuant to section 362(d)(1) of the Bankruptcy Code. The Debtor asserts in the Objection that Huntington is adequately protected "on three separate levels" which include (1) replacement liens, (2) interest in cash protected by "positive net cash flow projections during the coming months of the case and beyond plan confirmation" and (3) a "substantial" equity cushion. *See* Objection at 5. Huntington will respond to each of these arguments in turn.

11.    First, replacement liens are not enough to provide Huntington with adequate protection of its interest in the Debtor's property. A replacement lien on an asset already encumbered by the secured lender cannot constitute adequate protection. *See In re Las Torres Development*, LLC, 413 B.R. 687, 696 (Bankr. S.D. Tex. 2009); *In re Goode*, 235 B.R. 584, 589 (Bankr. E.D. Tex. 1999).

12.    Second, although the Debtor's business is seasonal and coming upon the most significant period of its financial year, the cash flow during this period is not enough to sustain the Debtor financially and pay all of the outstanding administrative claims, taxes and payments on secured long-term debt that will be required prior to the start of ski season nor will the income generated during the winter months be enough to see the Debtor through the next "slow season" period. Simply put, the Debtor is administratively insolvent and too far underwater for this ski season's revenue to cover not only current expenses, but overdue postpetition expenses and future off-season expenses.

1776724.1 11/24/2010

13. The Debtor also argues in a footnote to its Objection that Huntington has an interest in only a "very small percentage of the Debtor's total annualized postpetition cash revenues of $16 million." *See* Objection at fn. 5. Although the Debtor indicates that this issue will be the subject of a separate proceeding for the Court's determination, Huntington asserts that the Debtor's reading of the relevant Bankruptcy Code and Uniform Commercial Code provisions is incorrect.

14. Revised Article 9 of the Uniform Commercial Code has been in effect since July 1, 2001. The "proceeds" provisions of revised Article 9, set forth in section 9-315(c) of the New York Uniform Commercial Code ("N.Y. U.C.C."), when combined with section 9-315(b) dealing with commingling of proceeds, create an effective protection of secured creditor interests in collateral.[3] Further, with revised Article 9, cumbersome hurdles to perfection of such liens in bankruptcy cases have been removed.[4] Such revisions were necessary to avoid an enormous deterrent to commercial lending. The Debtor's interpretation of this area of law would lead to an absurd result – commercial lenders without control of cash would forgo any security interest in cash, and a debtor could liquidate or use collateral as he wished, undermining the effectiveness of all security interests.

15. Despite the fact that Huntington clearly stated its position with regard to its interest in cash collateral in the Motion, the Debtor ignores the import of section 9-315 of the N.Y. U.C.C. and does not address it. While Huntington has no current control in the Debtor's

---

[3]     Section 9-315(c) provides as follows:

    (c) *Perfection of security interests in proceeds.* A security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected.

N.Y. U.C.C. § 9-315(c).

[4]     Comment 8 to revised UCC section 9-315 (1998) provides as follows: "Insolvency Proceedings; Returned and Repossessed Goods. This Article deletes former Section 9-306(4), which dealt with proceeds in insolvency proceedings. Except as otherwise provided by the Bankruptcy Code, the debtor's entering into bankruptcy does not

1776724.1 11/24/2010

accounts, Huntington does have a perfected security interest in accounts through its security

agreements and UCC filings. More importantly, Huntington has a secured claim in all of the

Debtor's property except the Fairways Condominiums and a few motor vehicles and has a

security interest in all proceeds of the Debtor's property except the Fairway condominiums.

Consequently, Huntington has a first security interest in all cash in the Debtor's accounts arising

from the operation of the Debtor's assets, except perhaps for cash generated from the Fairway

Condominiums.[5]

16.     Section 552(b)(1) provides exceptions to 552(a)'s requirement that security

interests do not extend to postpetition after-acquired property. The Debtor states that only the

exception for hotel rentals contained in section 552(b)(2) applies, but without considering the

concept of "proceeds" in section 552(b)(1) which mirrors N.Y. U.C.C. § 9-315(c) and

specifically applies state law:

> ... if the debtor and an entity entered into a security
> agreement before the commencement of the case and if the
> security interest created by such security agreement extends
> to property of the debtor acquired before the
> commencement of the case and to *proceeds, products,*

---

affect a secured party's right to proceeds."

[5]     To the extent that the Debtor wishes to argue that the proceeds of Huntington's collateral have not been
segregated from proceeds of the operation of the Fairway Condominiums, section 9-315(b) addresses security
interests extending to commingled proceeds and acceptable methods of tracing:

> (b) *When commingled proceeds identifiable.* Proceeds that are commingled with other property are
> identifiable proceeds:
>
> (1)     if the proceeds are goods, to the extent provided by Section 9-336; and
>
> (2)     if the proceeds are not goods, *to the extent that the secured party identifies the proceeds by a
> method of tracing, including application of equitable principles, that is permitted under law* other than this
> article with respect to commingled property of the type involved.

N.Y. U.C.C. § 9-315(b) (emphasis supplied).

> Huntington is entitled to use any appropriate method of tracing, including the "lowest intermediate
> balance" rule, which provides that the payments made from a commingled fund are made first from funds other than
> those in which a secured party has an interest. Because the collateral that Huntington does not have a security
> interest in is a simple set of condominiums, it should be extremely easy to trace the proceeds of the Debtor's
> collateral to determine "proceeds" under N.Y. U.C.C. § 9-315(c).

> *offspring, or profits of such property*, then such security
> interest extends to such proceeds, products, offspring, or
> profits acquired by the estate after the commencement of
> the case *to the extent provided by such security agreement
> and by applicable nonbankruptcy law*, except to any extent
> that the court, after notice and a hearing and based on the
> equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1) (emphasis added).

17.     Even without the concept of proceeds, the operation of Bankruptcy Code section 552(b)(2) gives Huntington a security interest on all hotel revenues, as conceded by the Debtor. *See* Objection at fn. 5. The Debtor tries to rely on the "equities of the case" provision in section 552(b)(2) to limit the security interest to net rent, but gives no real justification for this position, which is inapplicable to this case.

18.     Taking somewhat of a contradictory position, the Debtor seems to be arguing that Huntington is adequately protected by the Debtor's cash through projected revenues and projected increased values of collateral due to the upcoming ski season and potential future renovation and construction. Courts do not view future or potential profits from improvements to a debtor's property as a means of adequate protection. *See, e.g. In re Swedeland Development Group, Inc.*, 16 F.3d 552, 566 (3rd Cir. 1994) ("[w]e reject the notion that development property is increased in value simply because a debtor may continue with construction which might or might not prove profitable"); *Suntrust Bank v. DenMark Constr., Inc.*, 406 B.R. 683, 699-700 (E.D. N.C. 2009) (pre-petition secured creditor was not adequately protected by an anticipated increase in value to be realized from future improvements to the property).

19.     All parties, including the Debtor, agree that a substantial cash infusion is needed to improve the resort and make the Debtor profitable. In fact, the Debtor's appraiser assumes that $750,000 of capital improvements will be performed. The Debtor has failed to identify a

8

potential source of equity infusion to perform these necessary improvements. If the Debtor does not provide an equity infusion, the Debtor will likely try to use Huntington's cash collateral to make the improvements. If the Debtor were permitted to use cash collateral on speculative ventures in this way, Huntington would be put at substantial risk. Courts generally have not allowed debtors to put lenders' collateral at risk for potential increased profits. *See In re Sharon Steel Corp.*, 159 B.R. 165 (Bankr. W.D. Pa. 1993).

20.     The Debtor's third point, that Huntington has a substantial equity cushion, is overstated even at the inflated values the Debtor asserts. The Debtor states in several instances that its "Resort has a market value of $31.6 million." Objection at p. 8, 11. The Debtor represents that the value of the "scheduled undisputed secured debts" in the Debtor's property, including Huntington's secured claim,[6] is $30,691,828.32. *See* Objection at p. 11. The difference between these two values is less than $1 million. Since the Debtor is more than $800,000 in arrears on postpetition accounts payable,[7] not to mention the additional postpetition administrative claims against the Debtor's estate and over $200,000 in unpaid real property taxes which prime all mortgages, the Court would have to accept the Debtor's appraiser's value in full in order for there to be even a *slight* equity cushion.

21.     It is clear that one of the issues on which the Debtor and Huntington strongly disagree is whether Huntington's interest in the property is declining. The personal property on which Huntington has a lien is being used every day in the Debtor's operations and is certainly

---

[6]     The Debtor also seeks to assert that Huntington's secured claim is overstated, but fails to provide adequate support for these assertions. *See* Objection at fn 8. In particular, the Debtor asserts that the prepetition charges for interest and penalties should not be charged. If the Debtor believes that Huntington's secured claim is oversecured, section 506(b) provides that the Debtor shall pay all interest, fees, costs or charges provided under the loan documents. The Debtor cannot simultaneously take the position that Huntington is oversecured and that Huntington is not entitled to postpetition expenses. Huntington maintains that its claim is properly stated.

[7]     *See* Balance Sheet for the period ending September 30, 2010, Form 3 on page 3 of the September Monthly Operating Report.

1776724.1 11/24/2010

declining in value. Further, revenue the Debtor may generate from winter weather activities is unpredictable and dependent on many variables, including the weather, economic conditions, even the cost of car travel. However, the Debtor's unpaid expenses are absolute and significant. Although John Lane in his Affidavit in Support of Debtor's Objection to Motion for Relief From Stay (the "Lane Affidavit") states that "[v]iewed out of context and in isolation, the September Operating Report, a snapshot in time that is unrepresentative of a full year's results, can be very misleading in my view" (Lane Affidavit at p. 1), there are no actual numbers the Debtor can point to that show non-speculative data that the value of the Property is increasing.

22.     Furthermore, the seasonality of the Debtor's business does not absolve it from the requirement to pay its ongoing postpetition debts as they come due rather than incur administrative and tax liabilities it may or may not be able to repay at the end of ski season. Further, seasonality in a business notwithstanding, when taken as a whole, and considering a full year of the Debtor's income and expenses, it appears that the Debtor does not create enough of a cushion during the winter months to sustain it during remainder of the year. If this were not so, the Debtor surely would have had enough of a cushion in September 2010, three months before the start of ski season, to have paid its school taxes which became due at the end of September and would have paid its postpetition obligations, especially because it has not paid its secured lenders during this period.

23.     As stated in the Affidavit of Barry P. Lefkowitz (the "Lefkowitz Affidavit") Concerning the Administrative Insolvency of Kiebler Recreation, LLC filed in opposition to the retention of Inglewood Associates, LLC [Docket #311], "the Debtor has failed to account for possible contingencies based on, among other factors, (a) weather, including a lack of snow or inability to make snow, (b) a maintenance contingency, or (c) a replacement reserve that in this

industry is typically 4% of revenues for hotels and in this case would total at least $150,000 from the filing date through September 30, 2010." The Debtor has allowed its facilities and financial position to deteriorate to such a level that ski season profits will not be able to revive the Debtor to any position that could provide Huntington with adequate protection.

24. It is clear from the Debtor's own financial reporting and the statements of the Debtor's own appraiser regarding the condition of the facility[8] that the value of Huntington's collateral is declining. Even the Debtor concedes that "[t]he interest that is entitled to be adequately protected is the value of collateral; in other words, the secured creditor is entitled to protection against any decline in the value of the collateral. *See* Objection at p. 4 *citing In re Marion Street P'Ship,* 108 B.R. 218, 224 (Bankr. D. Minn. 1989). Thus, Huntington is certainly entitled to receive adequate protection for the declining value of the Property.

25. As stated in the Motion, Huntington's security interest is not adequately protected. Huntington's secured claim against the Debtor, with accrued postpetition interest and expenses, exceeds $17.3 million. In addition, real estate tax liens on the property subject to Huntington's liens total $1,458,680.00 (including unpaid postpetition school taxes). Huntington's appraisals place a fair market value in the amount of $17.7 million on all the real and personal property in which Huntington has a mortgage lien and/or security interest, which real and personal property constitutes all of the Debtor's assets except for the Fairways Condominiums[9] and three motor vehicles. Moreover, as will be explained in more detail below,

---

[8]     The Appraisal of Hotel and Leisure Associates provided by the Debtor in discovery for the upcoming Valuation Hearing stated that "many of the guest rooms appear tired." *See* Huntington's Trial Exhibits at H-2.

[9]     The Fairway Condominiums property is the only real property owned by the Debtor on which Huntington does not have a lien. PNC Bank has a first secured lien on the Fairways Condominiums in the amount of $3.1 million, as set fort in a proof of claim filed by PNC Bank.

1776724.1 11/24/2010

even the Debtor's own appraisal of all of its assets demonstrates that there is no equity in the Debtor's assets for the payment to unsecured creditors.

## The Automatic Stay Should Be Modified Due to Lack of Equity in Property Not Necessary for an Effective Reorganization

26.     Because the Debtor has not been able to provide Huntington with adequate protection, Huntington also seeks to modify the automatic stay pursuant to section 362(d)(2) due to the Debtor's lack of equity in its property and because the property is not necessary for an effective reorganization.

27.     The Debtor has provided Huntington with its appraisal which sets the property value at approximately $31.6 million but, as stated above, the Debtor's undisputed secured claims in the property exceed $30.6 million. The parties are presently engaged in discovery and Huntington respectfully represents that the evidence that will be presented at the Valuation Hearing will show that the value of the Debtor's property is significantly less than $31.6 million. Huntington respectfully submits that even if the Debtor's own appraisal is accepted in full, it establishes that there is no equity in the Debtor's property over the liens of the secured creditors and the taxing authorities. As set forth in the Lefkowitz Affidavit, the Debtor cannot operate profitably and thus the property is not necessary for an effective reorganization. It should also be noted in addition to the secured debt in the amount of $31.6 million, additional amounts of administrative expense claims for professional fees and trade debt continue to accrue.

28.     As stated above, based on the Debtor's own schedules and appraisal, the Debtor has minimal to no equity in its property. While Huntington believes that the value of all of the Debtor's assets is approximately $20 million (approximately $2.3 million for the Fairways Condominiums and the $17.7 million for all of the rest of the Debtor's property), even under the overly optimistic value of the Debtor's own appraisal, the Debtor has no equity in the Property.

1776724.1 11/24/2010

29.     Furthermore, the Debtor will not be able to confirm a chapter 11 plan under these circumstances. Consequently, the Property is not necessary for an effective reorganization. The Debtor makes no convincing argument of its viability except to attach the Lane Affidavit and the Expert Report of John Lane. The Expert Report actually supports Huntington's position that the Debtor cannot reorganize around the Property. In particular, although expenses at the Debtor's resort have been drastically cut, resulting in fewer staff and likely insufficient capital expenditures, 2010 has not brought increased cash flow sufficient to pay real estate taxes and postpetition administrative expenses in a timely manner. On page 16 of Lane's Expert Report, Mr. Lane notes that the Debtor has reduced housekeeping costs but on the same page refers to substantial complaints regarding the "aged condition of the guest rooms" and "complaints about overall cleanliness" which Mr. Lane claims have been addressed.

30.     As stated in the Motion, a creditor seeking relief from the automatic stay is entitled to rely upon financial data provided by a chapter 11 debtor, and if that information reveals that the value of assets is less than the debt, a creditor is entitled to relief from the automatic stay. *In re New American Food Concepts, Inc.*, 70 B.R. 254 (Bankr. N.D. Ohio 1987). The Debtor does not have equity in the Property according to its own assessment of its undisputed secured debt and its own appraisal.

31.     As set forth in the Motion and the Lefkowitz Affidavit, there is no reasonable possibility that the Debtor can reorganize. The Debtor is administratively insolvent as it is unable to provide for payments for post-petition trade debt, adequate protection payments to secured creditors, for ongoing tax obligations, or other administrative expenses. Furthermore, the Debtor will be unable to propose, let alone confirm a reasonable plan to cure the arrearages

1776724.1 11/24/2010

owed to the secured creditors and fund a payment to the pre-petition unsecured creditors in this case without the support of its secured creditors.

> **WHEREFORE**, Huntington respectfully requests that the Court grant Huntington Bank's request for relief from the automatic stay and grant such other and further relief as the Court deems just and proper.

Dated: Syracuse, New York
      November 24, 2010

BOND, SCHOENECK & KING, PLLC
Attorneys for The Huntington National Bank

By: _____
  Joseph Zagraniczny, Esq.
  Stephen A. Donato, Esq.
  Ingrid Palermo, Esq.
  Office and P.O. Address
  One Lincoln Center
  Syracuse, NY 13202
  Telephone: (315) 218-8000

1776724.1 11/24/2010