## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 10-15099 |
| | ) | |
| KIEBLER RECREATION, LLC | ) | Chapter 11 |
| d/b/a Peek'n Peak Resort, | ) | |
| | ) | Judge Randolph Baxter |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| KIEBLER RECREATION, LLC | ) | Adversary Proceeding No. |
| d/b/a Peek'n Peak Resort | ) | |
| 10823 Mayfield Road | ) | |
| Chardon, Ohio 44024, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE HUNTINGTON NATIONAL BANK | ) | |
| c/o Ingrid C. Palermo, Esq. | ) | |
| Bond, Schoeneck & King, PLLC | ) | |
| 350 Linden Oaks, Suite 310 | ) | |
| Rochester, New York 14625, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**VERIFIED COMPLAINT FOR (I) DETERMINATION OF VALIDITY AND EXTENT
OF LIENS AND INTERESTS IN DEBTOR'S REAL AND PERSONAL PROPERTY
AND AVOIDANCE OF CERTAIN LIENS AND INTERESTS, (II) DETERMINATION
OF VALIDITY AND EXTENT OF LIENS AND INTERESTS IN DEBTOR'S
POST-PETITION SALES REVENUE, (III) ALLOWANCE OF SURCHARGE
UNDER 11 U.S.C. § 506(C), (IV) AVOIDANCE OF FRAUDULENT TRANSFERS AND
(V) OBJECTION TO CLAIM OF THE HUNTINGTON NATIONAL BANK**

Debtor, Kiebler Recreation, LLC (the "Debtor"), debtor-in-possession in the above-stated

case, by and through its counsel, files this verified complaint (the "Complaint") against the The

Huntington National Bank ("Huntington" or "Defendant"). In support of the Complaint, Debtor

states as follows:

## JURISDICTION & VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 because this is an adversary proceeding arising under title 11 of the United States Code (the "Bankruptcy Code").

2.      The Defendant is subject to the jurisdiction of this Court.  Accordingly, the Defendant may be served with process in the manner prescribed by Rule 7004(b) and (f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.      This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. § 1409.

## THE PARTIES

4.      On May 26, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      Huntington is a national banking association, organized and existing under the laws of the United States.  Huntington is the successor by merger of Sky Bank ("SkyBank").

## NATURE OF CLAIMS

6.      This is an action pursuant to Bankruptcy Rules 3007 and 7001 for (i) determination of the validity and extent of the Defendant's liens and interests, if any, in the Debtor's real and personal property and avoidance of certain liens and interests, (ii) determination of the validity and extent of Defendant's security interests in and liens on, if any, the post-petition revenues generated by the Debtor; (iii) allowance of a surcharge against Huntington's collateral in an amount equal to the post-petition costs and expenses incurred by the Debtor in preserving such collateral, and (iv) avoidance of fraudulent transfer in connection with Debtor's grant of lien under SkyBank Security Instruments (as defined herein) with respect

to SkyBank Directed Diversions (as defined herein); and (v) objection to the Huntington Proof of Claim (as defined herein).

## FACTUAL BACKGROUND

### Investigation Period Established Under Cash Collateral Order

7.      On July 2, 2010, the Court entered an *Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection* (the "Cash Collateral Order")[1] [Doc. 126] which provides, in relevant part:

> The Debtor's prepetition obligations to Huntington (the "Prepetition Obligations") secured by liens on the Prepetition Collateral (the "Prepetition Liens") pursuant to the Prepetition Loan Documents shall constitute legal, valid, binding obligations of the Debtor, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code) and the Prepetition Liens and Replacement Liens shall be valid, binding, perfected, enforceable first priority liens on and security interests in the Prepetition Collateral for the benefit of Huntington unless:
>
> > (1) a party in interest has timely filed an adversary proceeding… challenging the validity, enforceability, priority or extent of the Prepetition Obligations or the liens of Huntington in the Prepetition Collateral, or the propriety of the repayment of the Prepetition Obligations….

Cash Collateral Order, ¶ 2.

---

[1] As the term is defined in this Complaint, the "Cash Collateral Order" consists of the following Orders entered by the Court during this chapter 11 case:  May 28, 2010 Agreed First Interim Order Authorizing the use of Cash Collateral and Granting Adequate Protection [docket # 11]; June 16, 2010 Agreed Second Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection [docket # 84]; July 2, 2010 Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection [docket # 126]; Stipulation and Agreed Order Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of July 22, 2010 [docket # 155]; Second Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of August 4, 2010 [docket # 180]; Third Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of September 2, 2010 [docket # 215]; Fourth Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of September 28, 2010 [docket # 258]; Fifth Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of October 18, 2010 [docket # 285]; Sixth Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of October 25, 2010 [docket # 296]; and Seventh Stipulation and Agreed Order Further Extending: Agreed Third Interim Order Authorizing the Use of Cash Collateral and Granting Adequate Protection, dated as of November 2, 2010 [docket # 304].

8.      The Cash Collateral Order further provides that an adversary proceeding asserting such a challenge is timely filed if it is filed on a date that Huntington has agreed to in writing.

9.      Huntington provided Debtor written authorization to investigate the extent of its security interests and file an adversary proceeding to challenge the Prepetition Liens and Prepetition Obligations on or before December 3, 2010 (the "Challenge Period").

## Defendants' Asserted Claims and Security Interests

10.      Huntington is a secured creditor of Debtor, that filed a proof claim in the above-captioned bankruptcy proceeding asserting a secured claim as of the Petition Date in the amount of $16,978,539.78 (the "Huntington Proof of Claim"). *See* Claim No. 169-1. As set forth in the Huntington Proof of Claim, Huntington asserts the Debtor is liable for the following outstanding obligations (collectively, the "Huntington Indebtedness"):

> A.  $7,049,276.73 on account of that certain Promissory Note dated as of April 6, 2006 by the Debtor in favor of Huntington in the principal amount of $6.81 million (the "Restated $6.81 Million Note");
>
> B.  $2,738,073.93 on account of that certain Promissory Note dated as of April 6, 2006 by the Debtor in favor of Huntington in the principal amount of $4.19 million (the "Restated $4.19 Million Note");
>
> C.  $1,020,098.87 on account of that certain Promissory Note dated as of September 7, 2006 by the Debtor in favor of Huntington in the principal amount of $1.0 million (the "$1 Million Note");
>
> D.  $1,465,872.75 on account of that certain Promissory Note dated as of December 17, 2007 by the Debtor in favor of Huntington in the principal amount of $1.44 million (the "$1.44 Million Note")
>
> E.  $3,636,305.14 on account of that certain Promissory Note dated as of October 31, 2006, and amended March 13, 2008, by the Debtor in favor of SkyBank, predecessor in interest of Huntington, in the principal amount of $5.04 million (the "SkyBank Note"), which was executed and delivered in connection with a Construction Loan Agreement also dated October 31, 2006, between SkyBank and the Debtor (the "SkyBank Construction Loan Agreement");

F. $165,426.54 on account of that certain Master Equipment Lease dated as of July 12, 2006 between the Debtor and LeaseNet, Inc. (the "LeaseNet Lease");

G. $882,589.85 on account of that certain Acceptance Certificate and Tax Lease Schedule No. 02, dated as of September 30, 2006, to Huntington National Bank Master Lease Agreement No. 4801 (a true and accurate copy of the Master Lease Agreement No. 4801 is attached hereto as Exhibit A), also dated as of September 30, 2006, between **Kiebler Properties, LLC** and Huntington (the "Kiebler Properties Snowmaking Equipment Lease No. 2"), a true and accurate copy of which is attached hereto as Exhibit B; and

H. $20,895.97 on account of that certain Acceptance Certificate and Tax Lease Schedule No. 03, dated as of October 20, 2006, to Huntington National Bank Master Lease Agreement No. 4801 between **Kiebler Properties, LLC** and Huntington (the "Kiebler Properties Snowmaking Equipment Lease No. 3", and together with the Kiebler Properties Snowmaking Equipment Lease No. 2, collectively, the "Kiebler Properties Snowmaking Equipment Leases", and together with the LeaseNet Lease, collectively, the "Equipment Leases"), a true and accurate copy of which is attached hereto as Exhibit C.

11.     In the Huntington Proof of Claim, Huntington asserts that the Huntington

Indebtedness is secured as follows:

A.     Indebtedness under the Restated $6.81 Million Note and Restated $4.19 Million Note is secured by a mortgage lien on certain real property (including improvements and fixtures) of the Debtor located in the County of Chautauqua, State of New York described on Exhibit K to the Huntington Proof of Claim and attached hereto as Exhibit D (the "Kiebler Mortgaged Premises"), as well as security interests in various personal property of the Debtor located on, and arising out of the operation of, the Kiebler Mortgaged Premises as documented by a series of mortgages, security agreements, and assignments originally executed in favor of Peek 'n Peek Recreation, Inc. ("PNP") and assigned by PNP to Huntington, which include (i) the Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated February 14, 2006, and assigned April 6, 2006; (ii) the Assignment of Leases and Rents, also dated February 14, 2006, and assigned April 6, 2006; (iii) the Assignment of Permits, Contracts and Warranties, also dated February 14, 2006, and assigned April 6, 2006; and (iv) the UCC financing statements filed with the New York Secretary of State's Office on April 4, 2006 (No. 200604040296120), and the UCC financing statement amendment assigning the security interests to Huntington filed on April 14, 2006 (No. 200604140325706); as well as other mortgages, security agreements, and assignments executed directly in favor of Huntington, including (v) the Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated April 6, 2006; and (vi) the UCC financing statements filed with the New York Secretary of State's Office on April 14, 2006 (Nos.

- 5 -

200604140325629 and 200604140325580), which are attached to the Huntington Proof of Claim in Exhibits K and L;

B. Indebtedness under the $1 Million Note is secured by a mortgage lien on the Kiebler Mortgaged Premises, as well as security interests in various personal property of the Debtor located on, and arising out of the operation of, the Kiebler Mortgaged Premises as documented by the Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing in favor of Huntington dated September 7, 2006, as attached to the Huntington Proof of Claim in Exhibit M;

C. Indebtedness under the $1.44 Million Note is secured by a mortgage lien on the Kiebler Mortgaged Premises, as well as security interests in various personal property of the Debtor located on, and arising out of the operation of, the Kiebler Mortgaged Premises as documented by the Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing in favor of Huntington dated December 17, 2007, as attached to the Huntington Proof of Claim in Exhibit N;

D. Indebtedness under the SkyBank Note is secured by a mortgage lien on certain real property (including improvements and fixtures) of the Debtor located in the County of Chautauqua, State of New York described on Exhibit O to the Huntington Proof of Claim and attached hereto as <u>Exhibit E</u> (the "Ridgeview Mortgaged Premises"), as well as security interests in various personal property of the Debtor located on, and arising out of the operation of, the Ridgeview Mortgaged Premises, as documented by (i) the Construction Loan Mortgage, (ii) the Assignment of Rents, Mortgages, Leases, and Profits, and (iii) the Commercial Security Agreement, each in favor of SkyBank, dated as of October 31, 2006, and executed by the Debtor, as well as (iv) the UCC financing statements filed with the New York Secretary of State's Office on November 2, 2006 (No. 200611020874759) (collectively, the "SkyBank Security Instruments"); and

E. Indebtedness under the Equipment Leases is secured by certain equipment.

All of the foregoing security documents and instruments, including the SkyBank Security

Instruments, are hereinafter collectively referred to as the "Huntington Security Instruments."

### Misapplication and Diversion of Loan Proceeds Evidenced by SkyBank Note

12.     At various times beginning shortly after execution of the SkyBank Note and the

SkyBank Construction Loan Agreement on October 31, 2006, SkyBank disbursed loan proceeds

to the Debtor pursuant to the SkyBank Construction Loan Agreement upon the condition that a

portion of the loan proceeds be used by the Debtor to remit funds to certain third-party entities so

that such entities could satisfy certain obligations they owed to SkyBank in connection with independent and wholly-unrelated lending relationships not involving or concerning the Debtor (the "SkyBank Directed Diversions"). As required by SkyBank, the SkyBank Directed Diversions were in fact carried out.

13. By requiring and causing the SkyBank Directed Diversions, SkyBank deprived the Debtor from receiving any value or consideration for the obligations purportedly incurred as result of those portions of the construction loan proceeds advanced by SkyBank pursuant to the SkyBank Construction Loan Agreement and evidenced by the SkyBank Note.

14. Huntington, as successor by merger to SkyBank, is liable for the conduct and actions of SkyBank.

**Property Not Subject to Valid, Enforceable and**
**Properly Perfected Liens in Favor of Huntington**

15. Debtor is the holder of certain deposit accounts (the "Bank Accounts") at First Niagra, First National Bank of Pennsylvania, and BanCorp (collectively, the "Financial Institutions"), which, upon information and belief, are not subject to control agreements in favor of Huntington. As of the Petition Date, the Debtor held funds in approximate amount of $56,308.01 in the Bank Accounts (the "Deposits").

16. As of the Petition Date, the Debtor also held cash funds in the approximate amount of $43,586.90 (the "Cash on Hand"), which were not subject to the control of Huntington.

17. The Debtor is, and was as of the Petition Date, the owner of the following vehicles, among others: (a) a 1996 Chevrolet S14 (VIN 1GCDT14X2T8166838); (b) a 1997 Chevrolet C25 – (VIN 1GCGK24R2VZ126506); (c) a 2003 Dodge V15 (VIN 2D7HB11XX3K524635); and (d) seven (7) 4-wheel drive vans, including two (2) Chevrolet

- 7 -

Astro vans and five (5) 15-passenger vans (collectively, the "Vehicles"). The titles to the Vehicles, all issued by the State of New York, do not reflect a lien in favor of Huntington.

18.     Debtor is the owner of certain equity interests in (a) Kiebler Water Services, Inc. and (b) Kiebler Sewage Services, Inc. (the "Related Entities") by virtue of Debtor's ownership of stock in the Related Entities (the "Investment Property"). The Huntington Security Instruments do not grant Huntington a lien on any investment property of the Debtor.

19.     Debtor is the fee simple owner of the certain real property located in the State of Pennsylvania and more particularly described on <u>Exhibit F</u> (the "Pennsylvania Real Property"). The Huntington Security Instruments do not grant Huntington a mortgage lien on the Pennsylvania Real Property and Huntington was never granted a mortgage lien on that property.

20.     Debtor is the fee simple owner of the certain real property located in the State of New York and more particularly described on <u>Exhibit G</u> (the "Fairways Development Mortgaged Premises"), which is subject to mortgage liens of PNC Bank (which refinanced a prior secured loan from Huntington at which time Huntington released its mortgage interest in this property). The Huntington Security Instruments do not grant Huntington a mortgage lien on the Fairways Development Mortgaged Premises and Huntington was never granted a mortgage lien on that property.

<u>Post-Petition Income and Revenues Generated and Projected By Debtor</u>

21.     From the Petition Date through October 31, 2010, the Debtor has generated approximately $4.8 million in total revenues on account of business operations at the Peek'n Peak Resort (the "Actual Revenues"). Of the Actual Revenues, only approximately $1.16 million constitute net hotel room rents (the "Net Hotel Room Rents") in which Huntington may seek to assert a security interest under Section 552 of the Bankruptcy Code.

22.     The vast majority of the Debtor's annual revenues are derived from sources other than Net Hotel Room Rents. For example, for the fiscal year ending April 30, 2010, approximately one month before the Petition Date, the Debtor's sources of revenue can be summarized approximately (and without accounting for rounding errors) as follows: 20% from Net Hotel Room Rents; 39% from sales of ski lift passes and other services related to ski activities; 9% from greens fees for use of its golf courses; 26% from food and beverage sales and service; and 7% from other miscellaneous sources, such as property management services provided by the Debtor.

23.     The Debtor's financial advisors have projected, in connection with a feasibility analysis prepared in support of the Debtor's proposed Plan of Reorganization (the "Plan"), that the Debtor will generate additional revenue of approximately $12 million (the "Projected Revenues") from November 1, 2010, to May 31, 2011, the anticipated effective date of the Plan (the "Effective Date"). Of such Projected Revenues, the Debtor and its financial advisors estimate that only approximately 17.5% or $2.1 million will constitute Net Hotel Room Rents. Of this cash revenue from the operation of the Debtor's business, pursuant to Section 552 of the Bankruptcy Code, Huntington would, at most, be entitled to a security interest in the Net Hotel Room Rents.

24.     Despite the Debtor's good faith efforts to resolve the amount of the Huntington Proof of Claim and the validity and extent of Huntington's asserted liens and interests in the Debtor's real and personal property, as well as post-petition income and revenues, the Debtor and Huntington have been unable to reach an agreement. Because the Challenge Period is set to expire and valuable rights and interests of the estate will be lost unless an adversary proceeding is commenced against Huntington, the Debtor has filed this Complaint.

## COUNT I: DECLARATORY RELIEF AND AVOIDANCE
## OF SECURITY INTERESTS (BANK ACCOUNTS)

25.     Debtor incorporates by reference all preceding paragraphs as if fully restated herein.

26.     Although certain of the Huntington Security Instruments purport to provide Huntington with security interests in the Deposits held in the Bank Accounts, Huntington did not enter into control agreements with any of the Financial Institutions.

27.     Pursuant to NY UCC Law §§ 9-312 and 9-314, to perfect any alleged security interest in the Bank Accounts, Huntington was required to have control or possession of such Bank Accounts.

28.     As of the Petition Date, pursuant to NY UCC Law § 9-104, upon information and belief, Huntington did not have control or possession of any of the Bank Accounts.

29.     As of the Petition Date, the Bank Accounts did not contain identifiable cash proceeds of collateral upon which Huntington held a properly perfected security interest.

30.     As a result, any security interest of Huntington in the Bank Accounts was not perfected as of the Petition Date.

31.     Any security interest or other rights of Huntington in the Bank Accounts is junior to that of the Debtor, or may be avoided by the Debtor, which has the status of a hypothetical judicial lien creditor with an interest in property of the estate in accordance with Section 544(a) of the Bankruptcy Code.

32.     In order that the controversy between the Debtor and Huntington be resolved, the Debtor requests that the Court declare the rights and duties of all parties with respect to the Bank Accounts, including a declaration that (1) Huntington does not have a properly perfected security interest in or lien on the Bank Accounts, and (2) any security interest or lien of Huntington in the

Bank Accounts may be and is determined to be junior to the rights of the Debtor and its estate and/or avoided for the benefit of the Debtor's estate pursuant to Section 550 of the Bankruptcy Code.

## COUNT II: DECLARATORY RELIEF AND AVOIDANCE OF SECURITY INTERESTS (CASH ON HAND)

33.     Debtor incorporates by reference all preceding paragraphs as if fully restated herein.

34.     Although certain of the Huntington Security Instruments purport to provide Huntington with security interests in the Cash on Hand, Huntington did not have control or possession of such cash.

35.     Pursuant to NY UCC Law §§ 9-312 and 9-313, to perfect any alleged security interest in the Cash on Hand, Huntington was required to have control or possession of such cash.

36.     As of the Petition Date, pursuant to NY UCC Law § 9-104, upon information and belief, Huntington did not have control or possession of any of the Cash on Hand.

37.     As of the Petition Date, the Cash on Hand did not constitute identifiable cash proceeds of collateral upon which Huntington held a properly perfected security interest.

38.     As a result, any security interest of Huntington in the Cash on Hand was not perfected as of the Petition Date.

39.     Any security interests or other rights of Huntington in the Cash on Hand is junior to that of the Debtor, or may be avoided by the Debtor, which has the status of a hypothetical judicial lien creditor with an interest in property of the estate in accordance with Section 544(a) of the Bankruptcy Code.

40.     In order that the controversy between the Debtor and Huntington be resolved, the Debtor requests that the Court declare the rights and duties of all parties with respect to the Cash on Hand, including a declaration that (1) Huntington does not have a properly perfected security interest in or lien on the Cash on Hand, and (2) any security interest or lien of Huntington in the Cash on Hand may be and hereby is determined to be junior to the right of the Debtor and its estate and/or avoided for the benefit of the Debtor's estate pursuant to Section 550 of the Bankruptcy Code.

## COUNT III: DECLARATORY RELIEF AND AVOIDANCE
## OF SECURITY INTERESTS (VEHICLES)

41.     Debtor incorporates by reference all preceding paragraphs as if fully restated herein.

42.     Although certain of the Huntington Security Instruments purport to grant Huntington liens or security interests in the Vehicles, as of the Petition Date Huntington's liens or security interests were not noted on the titles of the Vehicles.

43.     Pursuant to N.Y. VAT Law § 46-2118, to perfect any liens or security interests in the Vehicles, Huntington was required to obtain a notation of lien upon the titles of the Vehicles.

44.     As a result, any lien or security interest of Huntington in the Vehicles was not perfected as of the Petition Date.

45.     Any liens, security interests, or other rights of Huntington in the Vehicles is junior to that of Debtor, or may be avoided by the Debtor, which has the status of a hypothetical judicial lien creditor with an interest in property of the estate in accordance with Section 544(a) of the Bankruptcy Code.

46.     In order that the controversy between the Debtor and Huntington be resolved, the Debtor requests that the Court declare the rights and duties of all parties with respect to the

- 12 -

Vehicles, including a declaration that (1) Huntington does not have a properly perfected security interest in or lien on the Vehicles, and (2) any security interest or lien of Huntington in the Vehicles may be and hereby is determined to be junior to the rights of the Debtor and its estate and/or avoided for the benefit of the Debtor's estate pursuant to Section 550 of the Bankruptcy Code.

### COUNT IV: DECLARATORY RELIEF (INTERESTS IN RELATED ENTITIES)

47.     Debtor incorporates by reference all preceding paragraphs as if fully restated herein.

48.     None of the Huntington Security Instruments purport to provide Huntington with a security interest in Investment Property.

49.     Pursuant to NY UCC Law § 9-203, the grant of a security interest in personal property must be effected through a written security agreement that specifically identifies the personal property subject to such security interest.

50.     As a result, Huntington does not have a security interest in the Investment Property.

51.     In order that the controversy between the Debtor and Huntington be resolved, the Debtor requests that the Court declare the rights and duties of all parties with respect to the Investment Property, including a declaration that Huntington does not have a security interest in, or lien on, the Investment Property.

### COUNT V: DECLARATORY RELIEF (DEBTOR'S REAL ESTATE)

52.     Debtor incorporates by reference all preceding paragraphs as if fully restated herein.

53. Huntington has asserted mortgage liens and interests in certain of the Debtor's real property.

54. As set forth in the Huntington Proof of Claim and to the extent provided in the applicable Huntington Security Instruments, Huntington's interest in the Debtor's real property does not include an interest in or lien on the Fairways Development Mortgaged Premises or the Pennsylvania Real Property. In addition, Huntington's mortgage interests in the Kiebler Mortgaged Premises and Ridgeview Mortgaged Premises are limited as follows:

    a. <u>Kiebler Mortgaged Premises</u> to the extent of the allowed outstanding obligations under the Restated $6.81 Million Note, Restated $4.19 Million Note, $1 Million Note, and the $1.44 Million Note; and

    b. <u>Ridgeview Mortgaged Premises</u> to the extent of the allowed outstanding obligations under the SkyBank Note.

55. On information and belief, Huntington contends, or may contend, that it holds mortgage liens or interests in the Pennsylvania Real Property or the Fairways Development Mortgaged Premises, as well as mortgage liens and interests on the Kiebler Mortgaged Premises and Ridgeview Mortgaged Premises in excess of the interests described in paragraph 54 of this Complaint. Such alleged mortgage liens and interests were either not granted by the Debtor or were not perfected by recordation pursuant to applicable New York law (with respect to the Fairways Development Mortgaged Premises, the Kiebler Mortgaged Premises, or the Ridgeview Mortgaged Premises), or applicable Pennsylvania law (with respect to the Pennsylvania Real Property) as of the Petition Date.

56. In order that the controversy between the Debtor and Huntington with respect to the extent and validity of the mortgage liens and interests asserted by Huntington in the Debtor's real property be resolved, the Debtor requests that the Court declare the rights and duties of the parties with respect to the Debtor's real property, including a declaration that Huntington does

- 14 -

not have a mortgage lien or interest in the Pennsylvania Real Property or the Fairways Development Real Property, and that Huntington's mortgage interests in the Kiebler Mortgaged Premises and the Ridgeview Mortgaged Premises are limited to the allowed outstanding obligations described in Paragraph 54 of this Complaint.

### COUNT VI: DECLARATORY RELIEF (POST-PETITION REVENUES OF DEBTOR)

57.     Debtor incorporates by reference all preceding paragraphs as if fully restated herein.

58.     Pursuant to Section 552 of the Bankruptcy Code:

> (a) Except as provided in subsection (b) of this section, <u>property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case</u>.

> […]

> (b) (2) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and <u>if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties,</u> <u>then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.</u>

11 U.S.C. § 552 [emphasis added].

59.     Of the Debtor's Actual Revenues, only Net Hotel Room Rents fall within the exception set forth in Bankruptcy Code Section 552(b) to the general rule of Section 552(a) that property acquired post-petition is not subject to a prepetition lien or security interest.

60.     In order that the controversy between the Debtor and Huntington with respect to the extent of Huntington's security interest in Actual Revenues and Projected Revenues be resolved, the Debtor requests that the Court declare the rights and interests of the Debtor and Huntington with respect to the Actual Revenues and Projected Revenues, including a declaration that Huntington does not have a security interest in or lien on the Actual Revenues or Projected Revenues except to the extent of the Net Hotel Room Rents.

### COUNT VII: ALLOWANCE OF SURCHARGE UNDER 11 U.S.C. § 506(c)

61.     Debtor incorporates by reference all preceding paragraphs as if fully restated herein.

62.     Pursuant to Section 506(c) of the Bankruptcy Code, a "trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving…such property to the extent of any benefit of the holder of the claim…".  11 U.S.C. § 506(c).

63.     From the Petition Date until October 31, 2010, the Debtor has expended Actual Revenues in the approximate amount in excess of $400,000 as direct expenses to maintain and preserve the Kiebler Mortgaged Premises and Ridgeview Mortgaged Premises.

64.     In accordance with Section 506(c) of the Bankruptcy Code, to the extent Huntington is found to have a security interest in Actual Revenues or Projected Revenues in excess of Net Hotel Room Rents, the Debtor seeks a declaration that the amount of the Debtor's postpetition revenue (including Actual Revenues and Projected Revenues) in which Huntington

is determined to have a security interest shall be surcharged in an amount equal to the amount expended by the Debtor to preserve Huntington's collateral.[2]

## COUNT VIII: (AVOIDANCE OF FRAUDULENT CONVEYANCE)

65.     Debtor incorporates by reference all preceding paragraphs as if fully restated herein.

66.     For a period of time beginning in 2006 until early-to-mid 2008, the Debtor became unable to satisfy its debts as such debts became due and, therefore, believed that it would incur debts beyond its ability to pay as they matured.

67.     The Debtor did not receive fair consideration in exchange for the incurrence of the obligations to SkyBank under the SkyBank Note as a result of, and to the extent of, the SkyBank Directed Diversions because the net proceeds of the loan evidenced by the SkyBank Note, after deducting the SkyBank Directed Diversions, was not a fair equivalent for the obligations due to SkyBank by the Debtor under the SkyBank Note.

68.     The Debtor did not receive fair consideration in exchange for the grant of mortgage liens and security interests to SkyBank to secure the Debtor's obligations to SkyBank under the SkyBank Note as a result of, and to the extent of, the SkyBank Directed Diversions because the net proceeds of the loan evidenced by the SkyBank Note, after deducting the SkyBank Directed Diversions, was disproportionally small compared to mortgage liens and security interests granted to SkyBank to secure the obligations due to SkyBank by the Debtor under the SkyBank Note.

---

[2] In asserting this specific claim for a Section 506(c) surcharge, the Debtor expressly reserves other Section 506(c) claims that it may have against Huntington based on other existing facts or as a result of other future events in this Bankruptcy case.

69.     All obligations under the SkyBank Note with respect to the SkyBank Directed Diversions including, without limitation, accrued interest and other fees and expenses, constitute fraudulent conveyances under NY Debt. & Cred. Law § 275.

70.     The mortgage liens on the Ridgeview Mortgaged Premises and security interests in the Debtor's personal property in favor of SkyBank granted pursuant to the SkyBank Security Instruments to secure the Debtor's obligations under the SkyBank Note constitute fraudulent conveyances under NY Debt. & Cred. Law § 275 to the extent they purport to secure the obligations with respect to the SkyBank Directed Diversions.

71.     Pursuant to Sections 544(b) and 550 of the Bankruptcy Code and NY Debt. & Cred. Law § 275, all obligations incurred by the Debtor under the SkyBank Note with respect to the SkyBank Directed Diversions, including, without limitation, accrued interest and other fees and expenses, as well as any mortgage liens or security interests granted to SkyBank to secure such obligations, may be avoided by the Debtor for the benefit of estate.

**COUNT IX: OBJECTION TO HUNTINGTON PROOF OF CLAIM**

72.     Debtor incorporates by reference all preceding paragraphs as if fully restated herein.

73.     Pursuant to Section 502 of the Bankruptcy Code, a filed claim is deemed allowed unless an objection is made and, upon the filing of an objection of a party in interest, the court shall determine the allowable amount of such claim, if any, as provided therein and other applicable provisions of the Bankruptcy Code.

74.     The Huntington Proof of Claim is overstated and should be reduced in amount by not less than $1.7 million for the following reasons:  (1) a substantial portion (nearly $900,000) of Huntington's asserted claim arises out of the Kiebler Properties Snowmaking Equipment

Leases to which the Debtor is not party (See Exhibits B and C); and (2) a substantial portion (approximately $800,000) of Huntington's asserted claim is subject to avoidance due to a diversion and misapplication of loan payments by SkyBank, Huntington's predecessor in interest, through the SkyBank Directed Diversions.

75.     In addition, pursuant to Section 502(d) of the Bankruptcy Code, Huntington's entire claim may be disallowed because Huntington is an entity from which property is recoverable under Section 550 of the Bankruptcy Code and is a transferee of property that is avoidable under Section 544 of the Bankruptcy Code.

**WHEREFORE**, Plaintiff and debtor-in-possession, Kiebler Recreation, LLC, prays for judgment against Defendants as follows:

(1)     On its Count I, for a declaration that Huntington does not have a properly perfected security interest in or lien on the Deposits in the Bank Accounts and any interest or right of Huntington in the Deposits is avoided for the benefit of the Debtor's estate;

(2)     On its Count II, for a declaration that Huntington does not have a properly perfected security interest in or lien on the Cash on Hand and any interest or right of Huntington in the Cash on Hand is avoided for the benefit of the Debtor's estate;

(3)     On its Count III, for a declaration that Huntington does not have a properly perfected security interest in or lien on the Vehicles and any interest or right of Huntington in the Vehicles is avoided for the benefit of the Debtor's estate;

(4)     On its Count IV, for a declaration that Huntington does not have a properly perfected security interest in or lien on the Investment Property and any interest or right of Huntington in the Investment Property are avoided for the benefit of the Debtor's estate;

(5)     On its Count V, for a declaration that Huntington does not have an interest in or lien on that certain real property known as the Fairways Development or the Debtor's real property located in the State of Pennsylvania;

(6)     On its Count VI, for a declaration that Huntington does not have a security interest in or lien on the Actual Revenues or Projected Revenues except to the extent of the Net Hotel Room Rents;

(7)     On its Count VII, for a declaration that to the extent Huntington is found to have a security interest in Actual Revenues or Projected Revenues in excess of Net Hotel Room Rents, the amount of the Debtor's postpetition revenue (including Actual Revenues and Projected Revenues) in which Huntington is determined to have a security interest shall be surcharged in an amount equal to the amount expended by the Debtor to preserve Huntington's collateral.

(8)     On its Count VIII, for avoidance of (1) all obligations with respect to the SkyBank Directed Diversions, including, without limitation, accrued interest and other fees and expenses, comprising the Huntington Proof of Claim and (2) the mortgage liens on the Kiebler Mortgaged Premises and Ridgeview Mortgaged Premises and other liens on the Debtor's personal property in favor of Huntington Bank to the extent of all obligations with respect to the SkyBank Directed Diversions including, without limitation, accrued interest and other fees and expenses;

(9)     On its Count IX, the Huntington Proof of Claim shall be either reduced by an amount of no less than $1.7 million or disallowed in its entirety;

(10)     An award of the costs of bringing this action, including without limitation attorneys' fees; and

(11)     Such other and further relief as the Court deems just and proper.

- 20 -

DATED:     November 24, 2010          Respectfully submitted,

/s/ *Marc B. Merklin*
Marc B. Merklin (0018195)
Alan M. Koschik (0065891)
Bridget A. Franklin (0083987)
BROUSE McDOWELL, LPA
600 Superior Avenue, E., Suite 1600
Cleveland, Ohio  44114
Telephone: (216) 830-6830
Facsimile: (216) 830-6807
mmerklin@brouse.com
akoschik@brouse.com
bfranklin@brouse.com

*Special Counsel for Plaintiff Kiebler Recreation,*
*LLC, Debtor and Debtor-in-Possession*

# VERIFICATION

STATE OF OHIO            )
                         )  SS:
COUNTY OF CUYAHOGA )

    I, Paul E. Kiebler, IV, am the Managing Member of Kiebler Recreation, LLC, and I certify on personal knowledge that the allegations made in the foregoing Verified Complaint are true to the best of my knowledge, information, and belief.

_____
Name

    Sworn to before me and subscribed in my presence by Paul E. Kiebler IV, this 24th day of November 2010.

_____
Notary Public

Joyce A. Nelson
Notary Public, State of ohio
Recorded in Geauga County
My Commission Expires April 21, 2013

793875.5