## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **In re** | ) | **Chapter 11** |
| | ) | |
| **Kiebler Recreation, LLC** | ) | **Case No. 10-15099** |
| | ) | |
| **Debtor.** | ) | **Judge Baxter** |
| | ) | |

### JOINT EX PARTE MOTION FOR ENTRY OF STIPULATION AND AGREED ORDER SETTING TERMS OF SALE PROCESS, APPOINTMENT OF CHIEF RESTRUCTURING OFFICER AND MARKETING CONSULTANT, DEBTOR IN POSSESSION FINANCING, AND SETTLEMENT OF CLAIMS

Debtor Kiebler Recreation, LLC (the "Debtor"), the Official Committee of Unsecured Creditors (the "Committee") and The Huntington National Bank ("Huntington" and collectively, the "Parties") have agreed to the attached Stipulation and Agreed Order (the "Term Sheet Order") Setting Terms of Sale Process, Appointment of Chief Restructuring Officer and Marketing Consultant, Debtor in Possession Financing and Settlement of Claims. The proposed Term Sheet Order will allow the Debtor to engage in a marketing and sale strategy with the support of all parties in interest.

   A.  Based upon the provisions of this Term Sheet Order, motions will be made requesting Orders from the Court regarding the bid procedures, the sale of the Debtor's assets, the appointment of professionals, debtor in possession financing, and approval of the Dismissal and Release Order (as defined in paragraph 8 below) (collectively the "Transaction Motions"). The terms of the agreement negotiated between the Parties (the "Agreement"), which shall also be set forth in the Term Sheet Order presented to the Court, are as set forth below:

1.  At the discretion of Huntington after analyzing the Debtor's financial condition, Huntington may provide the Debtor with debtor-in-possession financing (the "DIP Loan"). The DIP Loan would be secured by all of the Debtor's assets (except for the Fairways Condominiums and any chapter 5 causes of action which the Debtor may decide to commence) including all cash collateral of the Debtor. The DIP Loan will be repaid as a superpriority administrative expense from the sale proceeds of the Debtor's assets and cash in the Debtor's operating account. The DIP Loan shall only be used for expenses contained in a budget prepared by the CRO (as that term is defined in paragraph 2 below) and approved by Huntington (the "Budget"). The Budget will be strictly adhered to as to line item expenses, with variations only through the consent of Huntington. The DIP Loan is expressly subject to compliance by all parties with all of the conditions set forth below, and the Bank's approval of the Budget. No portion of the DIP Loan shall be used for the payment of any professional fees or expenses. Huntington's intent is to act in good faith toward providing sufficient DIP financing to provide the Debtor with funds to operate through the conclusion of the sale process.

2.  Subject to further Order of this Court, the Debtor shall retain Jones Lang Lasalle Hotels on a contingency, success fee basis, to market the Debtor's assets for sale; and Barry Lefkowitz shall assume the position of Chief Restructuring Officer ("CRO") to manage the Debtor's operations for the duration of the sale process through the closing of a transaction. The CRO will take over day-to-day management of the resort and perform all cash management functions and will be part of the sale process. The CRO shall not be responsible for any aspects of the Debtor's bankruptcy not directly related to the business operations of the Resort or its Sale (for example the CRO shall not be involved in the case strategy, counsel selection or prosecution of litigation by the Debtor). Moreover, the CRO will not hold the Debtor's attorney client privilege.

3.  All parties agree that Huntington holds an allowed secured claim in the amount of $16.0 million, together with collection costs which are in excess of $1 million, which claim is secured by first priority liens on the Debtor's assets including, but not limited to, the hotel, ski areas, golf courses and related amenities (the "Resort") and certain condominiums (the "Ridgeview Condominiums") but explicitly excluding the Fairways Condiminiums, as set forth in Huntington's secured proof of claim filed in the Debtor's chapter 11 case, including a first priority perfected security interest in all cash proceeds and cash held by the Debtor except proceeds related to the Fairways Condominiums (the "Allowed Claim"). Huntington acknowledges that its Allowed Claim will not be a lien on any chapter 5 causes of action which the Debtor may decide to commence. Huntington shall be paid its Allowed Claim at the closing of any sale of the Debtor's assets. However, pursuant to the terms of this Agreement, Huntington shall provide a carve out (the "Carve Out") as set forth below from the Net Purchase Price[1] paid to

---

[1] The "Net Purchase Price" is defined as the net sale proceeds payable to Huntington as the first secured creditor after deducting the following expenses from the amount received from the sale of the Debtor's assets (other than the Fairways Condominiums): (i) the outstanding real estate taxes, (ii) the success fee paid or other compensation or expenses to the broker or marketing company, (iii) the unpaid amount of the DIP Loan, (iv) any credit given to purchaser such as deposits which have not been escrowed (the "Deposits"), (v) any fee paid to the stalking horse,

2

Huntington provided that the remainder of the Net Purchase Price is paid directly to Huntington until the Allowed Claim is satisfied as set forth in paragraph 6 below.

| Net Purchase Price | Carve out for Prepetition, Non-priority Unsecured Creditors | Carve out for Chapter 11 Administrative Expenses |
|---|---|---|
| $0 - $9.99 million | $ 0 | $ 1,150,000 |
| $10-11.99 million | $ 0 | $ 1,175,000 |
| $12-13.99 million | $ 125,000 | $ 1,175,000 |
| $14-17 million | $ 275,000 | $ 1,175,000 |

Provided that Huntington has received a full and complete release from the Releasors (as that term is defined in paragraph 8 below) and such release has been approved by the Court, the carve out for administrative expenses shall be allocated by the Court for payment of Chapter 11 administrative expense claims, including professional fees, upon a sale of the Debtor's assets, including pursuant to section 363 of the Bankruptcy Code. For the avoidance of doubt, payments to the CRO will be made out of operating funds and will not reduce the amount of the Carve Out. Payment to Jones Lang Lasalle Hotels will be made out of the sale proceeds and will not reduce the amount of the Carve Out.

4. To the extent that there is a stalking horse bidder, any such stalking horse bidder and any asset purchase agreement ("APA") shall be approved in writing by Huntington and the Committee before the Debtor agrees to sign the APA. If the stalking horse bidder is not the selected bidder because of a higher and better offer which actually is consummated, the stalking horse bidder may be entitled to reasonable expense reimbursement approved by the Bankruptcy Court which shall be no greater than $50,000.

5. Huntington shall prepare a bid procedures order which shall permit Huntington to credit bid as set forth below up to an amount which represents (a) the Allowed Claim plus (b) the unpaid amount of the DIP Loan. If Huntington is the successful bidder through a credit bid, any applicable Carve Out payments will not be due and owing until the earlier of (i) the date on which the Debtor's property is ultimately sold by Huntington, or (ii) 12 months from the bankruptcy sale to Huntington.

6. Under the bid procedures, all of the Debtor's assets shall be sold in three separate, contemporaneous sales: (i) the Resort, (ii) the Ridgeview Condominiums, and (iii) the Fairways Condominiums. The parties agree that, as part of its Allowed Claim, Huntington holds a first priority lien on the Resort in the amount of $13,364,000, inclusive of collection costs, and a first priority lien on the Ridgeview Condominiums in the amount of $3,636,000 and that sale proceeds on these properties will be allocated accordingly for purposes of distribution under this Agreement. The parties shall agree that no portion of the purchase price shall be allocated to the one-acre vacant real property located in Pennsylvania, the titled motor vehicles, or the shares in Kiebler

---

(vi) New York State transfer taxes, and (vii) other customary expenses incurred by a seller. For the avoidance of doubt, if Huntington credits bids at the Sale and purchases the assets, the Carve Out in the amount set forth in the above chart (depending on the credit bid amount) will be paid on the date set forth in paragraph 5 of this Agreement.

3

Sewage Services, Inc. and Kiebler Water Services, Inc. The purchaser will also be required to assume the equipment leases or purchase the equipment subject to such leases.

7. The hearing on the sale of the Debtor's assets shall take place on August 9, 2011 and the bankruptcy sale of the Debtor's assets must be completed no later than September 1, 2011. As a condition to this Agreement, the parties will sign a stipulated order for modification of the automatic stay which will provide that Huntington is allowed to continue its foreclosure action without further order of the court (the "Stipulated Order"), which shall be held in escrow by Huntington pending the completion of the sale. In the event that the sale is not completed by September 1, 2011 for any reason, Huntington is entitled to present the Stipulated Order to the Court for its consideration and approval and the parties to this Agreement agree not to oppose the modification of the automatic stay or any foreclosure action commenced by Huntington in state court.

8. Huntington's obligations under this Agreement are subject to this Court's entry of an Order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure which provides for (a) the Debtor's immediate dismissal, with prejudice, of the adversary complaint filed against Huntington and (b) the Debtor and the Committee (the "Releasors") delivering a full release to Huntington of all direct, indirect or derivative claims which the Releasors have or may have against Huntington (the "Dismissal and Release Order"). The Dismissal and Release Order, and the Releasors compliance with the terms thereof, shall obligate Huntington to pay the Carve Out as set forth in paragraph 3 above. For the avoidance of doubt, notwithstanding anything to the contrary contained in this Agreement, Huntington's agreement to provide the DIP Loan and the Carve Out are expressly conditioned on, and does not arise until after the entry of, the Dismissal and Release Order

9. Huntington shall agree that the payment of professional fees which have been paid to the professionals shall not be subject to disgorgement.

10. All parties hereto acknowledge and agree that this Agreement represents the full and complete agreement of the parties and that this Agreement supersedes and replaces any prior agreements, whether oral or written, and any amendments or modifications of this Agreement must be in writing and executed by all parties to be effective.

11. This Agreement is intended to represent the entire agreement of the Parties and each of the terms set forth herein are necessary to the Agreement reached by the parties. If any term herein is found to be unenforceable or is not satisfied by the Parties, the Agreement shall be null and void and shall not be binding on the Parties. For the avoidance of doubt, any obligation of Huntington to grant a Carve-Out from sale proceeds shall not arise unless its Allowed Claim is approved in full and it is granted a full release from the Releasors as set forth in paragraph 8 above.

12. This Agreement shall remain subject to the Bankruptcy Court's jurisdiction.

4

13. The CRO will agree to pay all future sale, withholding and occupancy taxes after his appointment.

14. All appropriate insurance policies relating to the Resort and any and all real and personal property of the Debtor will include Paul Kiebler as an additional insured.

15. An Order was entered on June 30, 2010 Granting the Debtor's Expedited Motion for Order Authorizing Debtor to Pay Prepetition Sales, Use, Occupancy and Other Taxes (the "Sales Tax Order"). The priority status of any remaining claim for prepetition sales taxes will be determined by the Sales Tax Order.

B.      Vincent Cross, Executor of the Estate of Norbert Cross and Raquel Cross, Executrix of the Estate of Eugene Cross (the "Cross Estates") have not executed this Motion or the Term Sheet Order because of certain disagreements with the terms of the Agreement. The Cross Estates and other parties in interest will have the opportunity to raise objections at the hearings on the Transaction Motions referred to in paragraph A, above.

C.      The Parties accordingly request that the Court enter the Term Sheet Order in substantially the form attached hereto as Exhibit A. The Term Sheet Order will be separately submitted in accordance with the Court's protocols for submission of proposed orders.

WHEREFORE, the Parties respectfully request that the Court (i) enter the Term Sheet Order; (ii) authorize and direct the Debtor to make the Payments set forth in the Term Sheet Order, and (iii) grant such other and further relief as the Court deems just and proper.

Dated: May 27, 2011

Respectfully submitted by:

_____/s/ Robert C. Folland_____
Robert C. Folland (0065728)
Andrew L. Turscak, Jr. (0073851)
Mark A. Weintraub (0078789)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
(216) 566-5500 (phone)
(216) 566-5800 (fax)
Robert.Folland@thompsonhine.com
Andrew.Turscak@Thompsonhine.com
Mark.Weintraub@thompsonhine.com

*Counsel for Debtor*

_____/s/ Daniel A. DeMarco_____
Daniel A. DeMarco
Hahn Loeser & Parks
200 Public Square, Suite 2800
Cleveland, OH 44114
(216) 274-2432 (phone)
(216) 274-2532 (fax)
dademarco@hahnlaw.com

*Counsel for Unsecured Creditors Committee*

_____/s/ Joseph Zagraniczny_____
Stephen A. Donato
Joseph Zagraniczny
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY
(315) 218- 8000(phone)
(315) 218- 8100(fax)
sdonato@bsk.com
jzagraniczny@bsk.com

*Counsel for The Huntington National Bank*

6

No Objection:

     Ronna G. Jackson
Ronna G. Jackson (#0080432)
Trial Attorney
U.S. Department of Justice Office of the U.S. Trustee
H.M. Metzenbaum U.S. Courthouse
201 E. Superior Ave., Ste. 441
Cleveland, Ohio 44114-1240
(216) 522-7800, ext. 253
(216) 522-7193 facsimile
Ronna.G.Jackson@usdoj.gov

*Office of the United States Trustee*

7

## SERVICE LIST

Philip E. Langer, Esq.
Michael Shuster, Esq.
Porter Wright Morris & Arthur LLP
925 Euclid Avenue, Suite 1700
Cleveland, Ohio 44115-1483
*Counsel for Huntington National Bank*

Joseph Zagraniczny, Esq.
Ingrid S. Palermo, Esq.
Stephen A. Donato, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202
*Counsel for Huntington National Bank*

Joseph D. Frank
Jeremy C. Kleinman
Frank/Gecker LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
*Counsel for Pepsi Beverages Company*

Ronna G. Jackson, Esq.
Howard M. Metzenbaum U.S. Courthouse
201 Superior Ave
Cleveland, OH  44114
*United States Trustee*

Mark L. Hankin, Esq.
Hankin & Mazel, PLLC
7 Penn Plaza, Suite 904
New York, New York 10001
*Counsel for American Leisure Consulting
Corporation*

Drew Parobek, Esq.
Carrie M. Brosius, Esq.
Vorys, Sater, Seymour and Pease LLP
2100 One Cleveland Center, 1374 E. 9th
Cleveland, OH 44114
*Counsel for PNC Bank*

Lawrence Bolla, Esq.
Quinn, Buseck, Leemhuis, Toohey & Kroto
2222 West Grandview Boulevard
Erie, Pennsylvania 16506
*Counsel for Vincent Cross, Executor for the
Estate of Norbert Cross and Raquel Cross,
Executrix of the Estate of Eugene Cross*

Daniel A. DeMarco
Christopher B. Wick
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
*Counsel for the Official Committee of
Unsecured Creditors*

Kenneth C. Johnson, Esq.
Andria M. Beckham, Esq.
Robert T. Castor, Esq.
Bricker & Eckler, LLP
100 South Third St.
Columbus, Ohio 43215
*Counsel for Textron Financial Corporation*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | **Chapter 11** |
| | ) | |
| **Kiebler Recreation, LLC** | ) | **Case No. 10-15099** |
| | ) | |
| **Debtor.** | ) | **Judge Baxter** |
| | ) | |

## STIPULATION AND AGREED ORDER SETTING TERMS OF
## SALE PROCESS, APPOINTMENT OF CHIEF RESTRUCTURING
## OFFICER AND MARKETING CONSULTANT,
## <u>DEBTOR IN POSSESSION FINANCING, AND SETTLEMENT OF CLAIMS</u>

This matter having come before the Court upon the stipulation of Debtor Kiebler

Recreation, LLC, the Official Committee of Unsecured Creditors, and The Huntington National

Bank (collectively, the "Parties") for the entry of an order (the "Term Sheet Order") Setting

Terms of Sale Process, Appointment of Chief Restructuring Officer and Marketing Consultant,

Debtor in Possession Financing and Settlement of Claims; and the Court finding that good cause

exists for the entry of this Term Sheet Order, it is hereby ADJUDGED, DECREED AND

ORDERED that the terms of the agreement negotiated between the Parties (the

"Agreement") are as set forth below:

1. At the discretion of Huntington after analyzing the Debtor's financial condition, Huntington may provide the Debtor with debtor-in-possession financing (the "DIP Loan"). The DIP Loan would be secured by all of the Debtor's assets (except for the Fairways Condominiums and any chapter 5 causes of action which the Debtor may decide to commence) including all cash collateral of the Debtor. The DIP Loan will be repaid as a superpriority administrative expense from the sale proceeds of the Debtor's assets and cash in the Debtor's operating account. The DIP Loan shall only be used for expenses contained in a budget prepared by the CRO (as that term is defined in paragraph 2 below) and approved by Huntington (the "Budget"). The Budget will be strictly adhered to as to line item expenses, with variations only through the consent of Huntington. The DIP Loan is expressly subject to compliance by all parties with all of the conditions set forth below, and the Bank's approval of the Budget. No portion of the DIP Loan shall be used for the payment of any professional fees or expenses. Huntington's intent is to act in good faith toward providing sufficient DIP financing to provide the Debtor with funds to operate through the conclusion of the sale process.

2. Subject to further Order of this Court, the Debtor shall retain Jones Lang Lasalle Hotels on a contingency, success fee basis, to market the Debtor's assets for sale; and Barry Lefkowitz shall assume the position of Chief Restructuring Officer ("CRO") to manage the Debtor's operations for the duration of the sale process through the closing of a transaction. The CRO will take over day-to-day management of the resort and perform all cash management functions and will be part of the sale process. The CRO shall not be responsible for any aspects of the Debtor's bankruptcy not directly related to the business operations of the Resort or its Sale (for example the CRO shall not be involved in the case strategy, counsel selection or prosecution of litigation by the Debtor). Moreover, the CRO will not hold the Debtor's attorney client privilege.

3. All parties agree that Huntington holds an allowed secured claim in the amount of $16.0 million, together with collection costs which are in excess of $1 million, which claim is secured by first priority liens on the Debtor's assets including, but not limited to, the hotel, ski areas, golf courses and related amenities (the "Resort") and certain condominiums (the "Ridgeview Condominiums") but explicitly excluding the Fairways Condiminiums, as set forth in Huntington's secured proof of claim filed in the Debtor's chapter 11 case, including a first priority perfected security interest in all cash proceeds and cash held by the Debtor except proceeds related to the Fairways Condominiums (the "Allowed Claim"). Huntington acknowledges that its Allowed Claim will not be a lien on any chapter 5 causes of action which the Debtor may decide to commence.

2

Huntington shall be paid its Allowed Claim at the closing of any sale of the Debtor's assets. However, pursuant to the terms of this Agreement, Huntington shall provide a carve out (the "Carve Out") as set forth below from the Net Purchase Price[2] paid to Huntington provided that the remainder of the Net Purchase Price is paid directly to Huntington until the Allowed Claim is satisfied as set forth in paragraph 6 below.

| Net Purchase Price | Carve out for Prepetition, Non-priority Unsecured Creditors | Carve out for Chapter 11 Administrative Expenses |
|---|---|---|
| $0 - $9.99 million | $ 0 | $ 1,150,000 |
| $10-11.99 million | $ 0 | $ 1,175,000 |
| $12-13.99 million | $ 125,000 | $ 1,175,000 |
| $14-17 million | $ 275,000 | $ 1,175,000 |

Provided that Huntington has received a full and complete release from the Releasors (as that term is defined in paragraph 8 below) and such release has been approved by the Court, the carve out for administrative expenses shall be allocated by the Court for payment of Chapter 11 administrative expense claims, including professional fees, upon a sale of the Debtor's assets, including pursuant to section 363 of the Bankruptcy Code. For the avoidance of doubt, payments to the CRO will be made out of operating funds and will not reduce the amount of the Carve Out. Payment to Jones Lang Lasalle Hotels will be made out of the sale proceeds and will not reduce the amount of the Carve Out.

4. To the extent that there is a stalking horse bidder, any such stalking horse bidder and any asset purchase agreement ("APA") shall be approved in writing by Huntington and the Committee before the Debtor agrees to sign the APA. If the stalking horse bidder is not the selected bidder because of a higher and better offer which actually is consummated, the stalking horse bidder may be entitled to reasonable expense reimbursement approved by the Bankruptcy Court which shall be no greater than $50,000.

5. Huntington shall prepare a bid procedures order which shall permit Huntington to credit bid as set forth below up to an amount which represents (a) the Allowed Claim plus (b) the unpaid amount of the DIP Loan. If Huntington is the successful bidder through a credit bid, any applicable Carve Out payments will not be due and owing until the earlier of (i) the date on which the Debtor's property is ultimately sold by Huntington, or (ii) 12 months from the bankruptcy sale to Huntington.

6. Under the bid procedures, all of the Debtor's assets shall be sold in three separate, contemporaneous sales: (i) the Resort, (ii) the Ridgeview Condominiums, and (iii) the

---

[2] The "Net Purchase Price" is defined as the net sale proceeds payable to Huntington as the first secured creditor after deducting the following expenses from the amount received from the sale of the Debtor's assets (other than the Fairways Condominiums): (i) the outstanding real estate taxes, (ii) the success fee paid or other compensation or expenses to the broker or marketing company, (iii) the unpaid amount of the DIP Loan, (iv) any credit given to purchaser such as deposits which have not been escrowed (the "Deposits"), (v) any fee paid to the stalking horse, (vi) New York State transfer taxes, and (vii) other customary expenses incurred by a seller. For the avoidance of doubt, if Huntington credits bids at the Sale and purchases the assets, the Carve Out in the amount set forth in the above chart (depending on the credit bid amount) will be paid on the date set forth in paragraph 5 of this Agreement.

3

Fairways Condominiums. The parties agree that, as part of its Allowed Claim, Huntington holds a first priority lien on the Resort in the amount of $13,364,000, inclusive of collection costs, and a first priority lien on the Ridgeview Condominiums in the amount of $3,636,000 and that sale proceeds on these properties will be allocated accordingly for purposes of distribution under this Agreement. The parties shall agree that no portion of the purchase price shall be allocated to the one-acre vacant real property located in Pennsylvania, the titled motor vehicles, or the shares in Kiebler Sewage Services, Inc. and Kiebler Water Services, Inc. The purchaser will also be required to assume the equipment leases or purchase the equipment subject to such leases.

7. The hearing on the sale of the Debtor's assets shall take place on August 9, 2011 and the bankruptcy sale of the Debtor's assets must be completed no later than September 1, 2011. As a condition to this Agreement, the parties will sign a stipulated order for modification of the automatic stay which will provide that Huntington is allowed to continue its foreclosure action without further order of the court (the "Stipulated Order"), which shall be held in escrow by Huntington pending the completion of the sale. In the event that the sale is not completed by September 1, 2011 for any reason, Huntington is entitled to present the Stipulated Order to the Court for its consideration and approval and the parties to this Agreement agree not to oppose the modification of the automatic stay or any foreclosure action commenced by Huntington in state court.

8. Huntington's obligations under this Agreement are subject to this Court's entry of an Order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure which provides for (a) the Debtor's immediate dismissal, with prejudice, of the adversary complaint filed against Huntington and (b) the Debtor and the Committee (the "Releasors") delivering a full release to Huntington of all direct, indirect or derivative claims which the Releasors have or may have against Huntington (the "Dismissal and Release Order"). The Dismissal and Release Order, and the Releasors compliance with the terms thereof, shall obligate Huntington to pay the Carve Out as set forth in paragraph 3 above. For the avoidance of doubt, notwithstanding anything to the contrary contained in this Agreement, Huntington's agreement to provide the DIP Loan and the Carve Out are expressly conditioned on, and does not arise until after the entry of, the Dismissal and Release Order.

9. Huntington shall agree that the payment of professional fees which have been paid to the professionals shall not be subject to disgorgement.

10. All parties hereto acknowledge and agree that this Agreement represents the full and complete agreement of the parties and that this Agreement supersedes and replaces any prior agreements, whether oral or written, and any amendments or modifications of this Agreement must be in writing and executed by all parties to be effective.

11. This Agreement is intended to represent the entire agreement of the Parties and each of the terms set forth herein are necessary to the Agreement reached by the parties. If any term herein is found to be unenforceable or is not satisfied by the Parties, the Agreement shall be null and void and shall not be binding on the Parties. For the avoidance of doubt,

4

any obligation of Huntington to grant a Carve-Out from sale proceeds shall not arise unless its Allowed Claim is approved in full and it is granted a full release from the Releasors as set forth in paragraph 8 above.

12. This Agreement shall remain subject to the Bankruptcy Court's jurisdiction.

13. The CRO will agree to pay all future sale, withholding and occupancy taxes after his appointment.

14. All appropriate insurance policies relating to the Resort and any and all real and personal property of the Debtor will include Paul Kiebler as an additional insured.

15. An Order was entered on June 30, 2010 Granting the Debtor's Expedited Motion for Order Authorizing Debtor to Pay Prepetition Sales, Use, Occupancy and Other Taxes (the "Sales Tax Order"). The priority status of any remaining claim for prepetition sales taxes will be determined by the Sales Tax Order.

and it is further

ORDERED that, based upon the provisions of this Term Sheet Order, motions will be made requesting Orders from the Court regarding the bid procedures, the sale of the Debtor's assets, the appointment of professionals, debtor in possession financing, and approval of the Dismissal and Release Order, as set forth above.

**IT IS SO ORDERED.**

### 

5

Respectfully submitted by:

　　　/s/　Robert C. Folland
Robert C. Folland (0065728)
Andrew L. Turscak, Jr. (0073851)
Mark A. Weintraub (0078789)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
(216) 566-5500 (phone)
(216) 566-5800 (fax)
Robert.Folland@thompsonhine.com
Andrew.Turscak@Thompsonhine.com
Mark.Weintraub@thompsonhine.com

*Counsel for Debtor*




　　　/s/　Daniel A. DeMarco
Daniel A. DeMarco
Hahn Loeser & Parks
200 Public Square, Suite 2800
Cleveland, OH 44114
(216) 274-2432 (phone)
(216) 274-2532 (fax)
dademarco@hahnlaw.com

*Counsel for Unsecured Creditors Committee*




　　　/s/　Joseph Zagraniczny
Stephen A. Donato
Joseph Zagraniczny
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY
(315) 218- 8000(phone)
(315) 218- 8100(fax)
sdonato@bsk.com
jzagraniczny@bsk.com


*Counsel for The Huntington National Bank*

6

No Objection:

      Ronna G. Jackson
Ronna G. Jackson (#0080432)
Trial Attorney
U.S. Department of Justice Office of the U.S. Trustee
H.M. Metzenbaum U.S. Courthouse
201 E. Superior Ave., Ste. 441
Cleveland, Ohio 44114-1240
(216) 522-7800, ext. 253
(216) 522-7193 facsimile
Ronna.G.Jackson@usdoj.gov

*Office of the United States Trustee*

7

# SERVICE LIST

Philip E. Langer, Esq.
Michael Shuster, Esq.
Porter Wright Morris & Arthur LLP
925 Euclid Avenue, Suite 1700
Cleveland, Ohio 44115-1483
*Counsel for Huntington National Bank*

Joseph Zagraniczny, Esq.
Ingrid S. Palermo, Esq.
Stephen A. Donato, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202
*Counsel for Huntington National Bank*

Joseph D. Frank
Jeremy C. Kleinman
Frank/Gecker LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
*Counsel for Pepsi Beverages Company*

Ronna G. Jackson, Esq.
Howard M. Metzenbaum U.S. Courthouse
201 Superior Ave
Cleveland, OH  44114
*United States Trustee*

Mark L. Hankin, Esq.
Hankin & Mazel, PLLC
7 Penn Plaza, Suite 904
New York, New York 10001
*Counsel for American Leisure Consulting Corporation*

Drew Parobek, Esq.
Carrie M. Brosius, Esq.
Vorys, Sater, Seymour and Pease LLP
2100 One Cleveland Center, 1374 E. 9th
Cleveland, OH 44114
*Counsel for PNC Bank*

Lawrence Bolla, Esq.
Quinn, Buseck, Leemhuis, Toohey & Kroto
2222 West Grandview Boulevard
Erie, Pennsylvania 16506
*Counsel for Vincent Cross, Executor for the Estate of Norbert Cross and Raquel Cross, Executrix of the Estate of Eugene Cross*

Daniel A. DeMarco
Christopher B. Wick
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
*Counsel for the Official Committee of Unsecured Creditors*

Kenneth C. Johnson, Esq.
Andria M. Beckham, Esq.
Robert T. Castor, Esq.
Bricker & Eckler, LLP
100 South Third St.
Columbus, Ohio 43215
*Counsel for Textron Financial Corporation*

1851574.2 5/27/2011