# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| Kiebler Recreation, LLC | ) | Case No. 10-15099 |
|  | ) |  |
| Debtor. | ) | Judge Randolph Baxter |
|  | ) |  |

## TRUSTEE'S MOTION FOR ORDER APPROVING (i) BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF ITS ASSETS, (ii) FORM AND MANNER OF NOTICE AND TERMS OF BID PROCESS, AND (iii) SCHEDULING HEARING TO CONSIDER APPROVAL OF SALE

David Simon, Esq., as trustee (the "Trustee") pursuant to section 1104 of title 11 of the United States Code (the "Bankruptcy Code") for debtor Kiebler Recreation, LLC (the "Debtor"), hereby respectfully requests that the Court enter an Order approving bidding procedures in connection with the sale of substantially all of the assets of the Debtor; approving the proposed form and manner of notice; approving the proposed terms of a competitive bid process; and scheduling a hearing to consider approval of the proposed sale to the successful bidder free and clear of all liens, claims, liabilities, encumbrances or other interests (the "Motion").

### JURISDICTION

1.     This Court has jurisdiction over the parties and subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

2.     The statutory predicates for the relief sought in the Motion include Bankruptcy Code sections 105, 363 and 365 and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      The Debtor commenced this case by the filing of a voluntary petition for relief

under chapter 11 of the Bankruptcy Code on May 26, 2010 (the "Petition Date"). Pursuant to

Bankruptcy Code sections 1107(a) and 1108, prior to the appointment of the Trustee, the Debtor

operated its business and managed its affairs as a debtor in possession.  On June 9, 2010, the

Office of the United States Trustee (the "US Trustee") appointed an official committee of

unsecured creditors (the "Committee").  Hahn Loeser & Parks, LLP has been appointed counsel

for the Committee.

4.      On June 8, 2011, the US Trustee appointed David O. Simon as acting Trustee (the

"Trustee") pursuant to section 1104 of the Bankruptcy Code.  On June 20, 2011, the Court

entered an order approving the selection of the Trustee.

5.      Prior to the Petition Date, Huntington commenced a foreclosure proceeding in the

State of New York County Court, County of Chautauqua ("State Court") to foreclose certain

mortgages and security agreements, which mortgages and security interests are first liens on all

of the Debtor's real and personal property except for the Fairways Condominiums, a vacant one-

acre parcel of real property located in Pennsylvania, and titled motor vehicles ("Foreclosure

Action").

6.      On September 1, 2010, Huntington filed a secured proof of claim in the amount of

$16,978,539.78 as of the Petition Date ("Huntington Claim"), which with continued postpetition

interest and expenses now exceeds $18 million.

7.      On June 1, 2011, this Court entered an Order approving a Stipulation and Agreed

Order Setting Terms of Sale Process, Appointment of Chief Restructuring Officer and Marketing

{K0269420.1}

Consultant, Debtor in Possession Financing, and Settlement of Claims (the "June 1 Sale Process

Order"). Pursuant to the June 1 Sale Process Order:

> Huntington holds an allowed secured claim in the amount of $16.0
> million, together with collection costs which are in excess of $1 million,
> which claim is secured by first priority liens on the Debtor's assets
> including, but not limited to, the hotel, ski areas, golf courses and related
> amenities (the "Resort") and certain condominiums (the "Ridgeview
> Condominiums") but explicitly excluding the Fairways Condominiums,
> including a first priority perfected security interest in all cash proceeds and
> cash held by the Debtor except proceeds related to the Fairways
> Condominiums (the "Allowed Claim"). Huntington acknowledges that its
> Allowed Claim will not be a lien on any chapter 5 causes of action which
> the Debtor may decide to commence.

June 1 Sale Process Order at ¶ 2. Huntington's collateral as set forth in the Huntington Claim

shall hereinafter be referred to as the "Property".

8.      The June 1 Sale Process Order was agreed to by the Debtor, the Committee, and

Huntington. However, within two days of the entry of the June 1 Sale Process Order, the parties

were informed that the Debtor refused to comply with the requirements of that Order.

9.      As a result of the Debtor's refusal to carry out its obligations under the June 1

Sale Process Order, including its inability to confirm a plan of reorganization, the Committee and

the U.S. Trustee each filed motions seeking the appointment of a chapter 11 trustee pursuant to

section 1104 of the Bankruptcy Code. After an expedited hearing on June 7, 2011, the Court, on

June 8, 2011, entered an Agreed Order Granting an Emergency Motion of the United States

Trustee for an Order Directing Appointment of a Chapter 11 Trustee (the "Trustee Order"). The

U.S. Trustee selected the Trustee as the Chapter 11 Trustee for this case. This Court entered its

order of June 20, 2011 approving the selection of the Trustee.

10.     On June 8, 2011, the Court also entered an order approving the expedited motion

of Thompson Hine LLP to withdraw as counsel for the Debtor ("Withdrawal Order").

3

11. In light of the appointment of the Trustee, the June 1 Sale Process Order has been supplemented and affirmed by the Trustee, the Committee, Huntington, Thompson Hine (former counsel of the Debtor), Brouse McDowell (special counsel of the Debtor), Inglewood Associates, (financial advisor to the Debtor), Hahn Loeser & Parks, LLP (counsel to the Committee), and RSM McGladrey, Inc. (advisor to the Committee), by their execution of the Stipulation and Agreed Order Affirming "Stipulation and Agreed Order Setting Terms of Sale Process, Appointment of Restructuring Officer and Marketing Consultant, Debtor-in-Possession Financing and Settlement of Claims" [Docket No. 627] with Certain Modifications, and Further Agreement As To The Payment Of The Trustee And His Professionals (the "Sale Process Order").

12. On June 24, 2011, the Trustee filed an application with this Court to approve the Sale Process Order.

13. The Sale Process Order also contemplates the filing of motions for approval of the appointment of an investment banker and real estate broker, possibly debtor in possession financing (a "DIP Loan"), and the terms and conditions of a sale of substantially all of the Debtor's assets along with approval of the Dismissal and Release Order[1] (collectively the "Transaction Motions").

14. The Trustee's authorization to use cash collateral pursuant to various agreed cash collateral orders expires on June 30, 2011. For the benefit of all parties in interest in this chapter 11 case, the Trustee must move forward as quickly as possible with the Transaction Motions to maximize the value of the Debtor's assets.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Process Order.

{K0269420.1}

15. Because the Estate is administratively insolvent and the Debtor has been unable to confirm a plan of reorganization, the only way that the chapter 11 estate will receive any money is through a sale of substantially all of the Debtor's assets in accordance with the Sale Process Order and the $1.15 million Carve Out which is set forth in the Sale Process Order.

## SALE PROCESS AGREEMENT

16. On June 24, 2011, the Trustee filed an application requesting that the Court enter an order authorizing retention and employment of Jones Lang Lasalle America, Inc. ("Jones Lang") and Alpine Realty Capital, LLC ("Alpine Realty") as investment banker and commercial real estate broker respectively for the purpose of marketing and selling the Property *nunc pro tunc* to June 1, 2001.

17. Several interested parties have already contacted the Debtor, the Trustee and Huntington expressing an interest in possibly purchasing the Property.

18. In consultation with all parties in interest, and in light of the Debtor's financial condition, the Trustee has determined that an expeditious sale of the Property in accordance with the Sale Process Order is in the best interests of the chapter 11 estate.

## RELIEF REQUESTED

19. The Trustee has concluded that the best mechanism to employ to generate the highest and best price for the Property is to continue marketing efforts after the approval of this Motion and solicit offers from potential bidders who would then participate in a competitive bid process related to the Property on similar terms and conditions. To be qualified, a bidder (a "Qualified Bidder") must be able to demonstrate to the satisfaction of the Trustee and Huntington that it has access to, or possession of, available cash sufficient to close the purchase. Additionally, each Qualified Bidder must execute a purchase agreement for the Property

5

{K0269420.1}

acceptable to the Trustee and Huntington in substantially the form attached hereto as ***Exhibit A***

(the "Purchase Agreement") and deliver such Purchase Agreement, together with a refundable

deposit of $100,000.00 on or before August 5, 2011 (the "Initial Bid Date"). The Trustee and

Huntington will review and negotiate with the Qualified Bidders submitting the three top offers

and all bidders within 10% of the highest purchase price (the "Top Offers") on the Resort and the

Ridgeview Condominiums. Each Qualified Bidder (the "Top Qualified Bidders") would have

until August 24, 2011 (the "Final Bid Deadline") to submit its final best offer, which offer cannot

have any contingency other than approval of the Court. The Top Qualified Bidders will be able

to submit sealed bids. Subject to the provision contained under the heading "Back-Up Bid"

below, upon acceptance of the highest and best bid, the deposits of the unsuccessful bidders will

be returned and the deposit of the successful bidder shall be increased to that amount that is 10%

of the purchase price and shall become non-refundable for any reason.

20.     Accordingly, the Trustee requests a hearing (the "Bidding Procedures Hearing")

for the Court to consider entry of an order, in the proposed form attached hereto as ***Exhibit B***

(the "Bidding Procedures Order") (i) approving the bidding procedures set forth therein for the

submission of competitive bidding on the Property (the "Bidding Procedures"), (ii) approving the

form and manner of notice of the Bidding Procedures and the proposed sale of the Property, (iii)

approving the requirements for a bidder to become a Qualified Bidder, (iv) scheduling deadlines

for submission of bids, and (v) approving the sale of the Property to the successful bidder (the

"Successful Bidder") free and clear of all liens, claims and encumbrances.

21.     The Trustee also seeks authority to sell the Property consistent with the due

process requirements of section 363 of the Bankruptcy Code and the sale process set forth under

{K0269420.1}

the Bidding Procedures. The sale of the Property shall be on the following material terms and timetable:

- <u>Bid Deadlines</u>. Bids and deposits shall be submitted by Qualified Bidders prior to the Initial Bid Deadline of August 5, 2011. Each Top Qualified Bidder submitting a Top Offer, after negotiations with the Trustee and Huntington, will file its final and best offer as a sealed bid, containing no contingencies other than Bankruptcy Court approval, prior to the Final Bid Deadline, of August 24, 2011. The Trustee and Huntington will select the Successful Bidder from the Top Qualified Bidders submitting sealed bids on August 26, 2011;

- At the sole discretion of the Trustee and Huntington, the Trustee may conduct an auction among the Top Qualified Bidders, which auction would occur on August 29, 2011;

- <u>Closing</u>. The Successful Bidder will close on the date set forth in the purchase agreement but in no event later than September 27, 2011, time being of the essence. The Successful Bidder will pay the purchase price in cash (the "Purchase Price") at the closing;

- <u>Huntington Allowed Claim</u>. Huntington shall be paid its Allowed Claim at the closing of any sale of the Property;

- <u>Carve Out</u>. Pursuant to the terms of the Sale Process Order, Huntington agrees to provide a carve out (the "Carve Out") as set forth below from the Net Purchase Price[2] paid to Huntington provided that the remainder of the Net Purchase Price is paid directly to Huntington at Closing until the Allowed Claim is satisfied.

| Net Purchase Price | Carve out for Prepetition, Non-priority Unsecured Creditors | Carve out for Chapter 11 Administrative Expenses |
|---|---|---|
| $0 - $9.99 million | $ 0 | $ 1,150,000 |
| $10-11.99 million | $ 0 | $ 1,175,000 |
| $12-13.99 million | $ 125,000 | $ 1,175,000 |
| $14-17 million | $ 275,000 | $ 1,175,000 |

---

[2] The "Net Purchase Price" is defined as the net sale proceeds payable to Huntington as the first secured creditor after deducting the following expenses from the amount received from the sale of the Debtor's assets (other than the Fairways Condominiums): (i) the outstanding real estate taxes, (ii) the success fee paid or other compensation or expenses to the broker or marketing company, (iii) the unpaid amount of the DIP Loan, if any, (iv) any credit given to purchaser such as deposits which have not been escrowed (the "Deposits"), (v) any fee paid to the stalking horse, if any, (vi) New York State transfer taxes, and (vii) other customary expenses incurred by a seller. For the avoidance of doubt, if Huntington credits bids at the Sale and purchases the assets, the Carve Out in the amount set forth in the chart set forth in this paragraph (depending on the credit bid amount) will be paid on the date set forth in this paragraph.

{K0269420.1}

- Conditions for Carve Out. The Carve Out will not be provided unless Huntington has received a full and complete release from the Committee and the Trustee as representative of the Debtor's chapter 11 estate, and such release has been approved by a final, nonappealable order of the Court and the 363 sale is concluded. Huntington has no obligation to grant the Carve Out from sale proceeds until the Dismissal and Release Order has been entered and has become a final nonappealable order and the Debtor's assets have been sold pursuant to Section 363 of the Bankruptcy Code;

- Allocation of Sale Proceeds. All of the Debtor's assets, except for the Fairways Condominiums, shall be sold and each offer shall allocate the purchase price to the Resort and the Ridgeview Condominiums. The sale proceeds will ultimately be allocated based on Huntington's Allowed Claim, under which Huntington holds a first priority lien on the Resort in the amount of $13,364,000, inclusive of collection costs, and a first priority lien on the Ridgeview Condominiums in the amount of $3,636,000. No portion of the purchase price shall be allocated to the one-acre vacant real property located in Pennsylvania, the titled motor vehicles, or the shares in Kiebler Sewage Services, Inc. and Kiebler Water Services, Inc.;

- Huntington Bank does not hold a security interest in the Fairways Condominiums. PNC Bank holds a first secured mortgage on the Fairways Condominiums property and PNC Bank will assist the Trustee in obtaining a separate order approving procedures for the sale of the Fairways Condominiums.

- Equipment Lease Assumption. Any purchaser of the Property will also be required to assume the equipment leases or purchase the equipment (the "Equipment Leases");

- Conveyance Free and Clear. The Property shall be conveyed to the Successful Bidder free and clear of all liens, claims, liabilities, encumbrances or other interests, which shall attach to the net proceeds of sale, after Huntington has been paid its Allowed Claim;

- Failure to Close by September 27, 2011 Ends Sale Process. Closing of the sale shall occur on the date set forth in the purchase agreement but in no event after September 30, 2011, unless extended by agreement of the Trustee and Huntington, and if closing does not occur by September 27, 2011, Huntington is entitled to present to the Court a stipulated order for modification of the automatic stay which will provide that Huntington is allowed to continue its foreclosure action without further order of the Court; and

- Credit Bid. Huntington shall be permitted the right to credit bid on the Property up to an amount which represents (a) the Allowed Claim plus (b) the unpaid amount of the DIP Loan, if any. Notwithstanding anything to the contrary contained in this Motion, if Huntington is the successful bidder

{K0269420.1}

through a credit bid, any applicable Carve Out payments will not be due and owing until the earlier of (i) the date on which the Debtor's property is ultimately sold by Huntington or (ii) 12 months from the bankruptcy sale to Huntington.

22.     By this Motion, the Trustee seeks approval and implementation of a three-step sale process, consisting of the following stages: (a) a Bidding Procedures Hearing, at which time the Trustee will seek approval of the Bidding Procedures; (b) in the event that competitive bids are received, a competitive bid process which would be conducted in accordance with the Bidding Procedures; and (c) a hearing approving the sale to the Successful Bidder (the "Sale Hearing").

23.     Since June 1, 2011, although not yet approved by the Court, Jones Lang and Alpine Realty, as the Trustee's investment banking and real estate consultant and broker, have solicited the marketplace for prospective purchasers of the Real Property.

24.     The Trustee shall demonstrate at the Sale Hearing that extensive and thorough sale efforts have been appropriately conducted for marketing of the Property.  These efforts, combined with the Bidding Procedures, are intended to provide for a competitive process that is designed to achieve the highest and best offer for the Property. Thus, the Trustee submits that the sale of the Property pursuant to the Bidding Procedures is in the best interests of the estate.

***The Bidding Procedures***

25.     To ensure that the Trustee is able to achieve the highest and best offer for the Property, the Trustee has the right to solicit competing offers for the Property, as provided in the Bidding Procedures. The Trustee intends to provide notice of the proposed sale and bid deadlines (the "Sale Notice") to all parties on the service list and all parties who have expressed an interest in purchasing the Property or otherwise expressed an interest in the Property.

9

26.     Attached hereto as ***Exhibit C*** is the proposed Sale Notice.  The Trustee seeks to implement procedures that will foster competitive bidding among potential buyers, without eliminating or discouraging any qualified bids.

27.     This Motion contemplates that the Trustee will solicit higher and better bids for the Property.  Toward that end, the Trustee seeks the entry of an order defining a Qualified Bidder, approving the Bidding Procedures, and authorizing the solicitation and submission of Qualified Bids.

28.     The Trustee believes that the bidding procedures set forth herein will assist in determining the highest and best offer available to the Trustee for the sale of the Debtor's assets. The Trustee further believes that these procedures are favorable to the Debtor, its estate and its creditors, and that they create a fair and level playing field for all interested bidders. The Trustee submits that these proposed procedures will satisfy the interests of all creditors by enabling the Trustee to achieve the maximum value for the Debtor's assets. Notwithstanding the foregoing, Huntington is deemed to be a Qualified Bidder and nothing herein shall preclude Huntington from submitting a credit bid in excess of the highest bid obtained herein, which credit bid shall be deemed the highest and best bid for purposes of these procedures.

29.     Subject to the Court's approval, the following Bidding Procedures for the submission and consideration of any competing bid or bids (a "Competing Bid") by any Qualified Bidder will be followed by the Trustee.

(a)     Each Qualified Bidder must deliver a Competing Bid for the Real Property, together with a deposit of $100,000.00, **by no later than 12:00 noon prevailing Eastern Time on August 5, 2011, the Initial Bid Deadline**, to the following parties: (i) Jones Lang LaSalle Hotels, a division of Jones Lang LaSalle Americas,

Inc., 100 First Stamford Place, Suite 201, Stamford, Connecticut (Attn: Mark von Dwingelo); (ii) Alpine Realty Capital, LLC, 200 East Huron Street, Suite 230, Ann Arbor, Michigan 48104 (Attn: Edward Walsh); (iii) counsel to the Trustee (Attn: Mary K. Whitmer, Esq., Kohrman, Jackson & Krantz, PLLC, One Cleveland Center, 20th Floor, Cleveland, Ohio 44114; email: mkw@kjk.com); (iv) counsel to Huntington (Attn: Joseph Zagraniczny, Esq. and Stephen A. Donato, Esq., Bond, Schoeneck & King PLLC, One Lincoln Center, Syracuse, New York 13202; e-mail – jzagraniczny@bsk.com and sdonato@bsk.com; fax – 315-218-8100); (v) Counsel to the Committee (Attn: Daniel A. DeMarco, Esq., Hahn, Loeser & Parks, LLP 200 Public Square, Suite 2800, Cleveland, Ohio 44114; email: dademarco@hahnlaw.com; fax: 216-274-2532); and (vi) the Office of the United States Trustee (Attn: Ronna G. Jackson, Esq., U.S. Department of Justice Office of the U.S. Trustee, H.M. Metzenbaum U.S. Courthouse, 201 E. Superior Ave., Suite 441, Cleveland, Ohio 44114; e-mail - Ronna.G.Jackson@usdoj.gov; fax (216) 522-7193) (collectively, the "Notice Parties").

(b)     Each Competing Bid shall include the following:

(I) A copy of the initial written purchase offer in substantially the form attached as Exhibit A and executed by such Qualified Bidder, subject to acceptance by the Trustee solely by its execution thereof and necessary Court approval.

(II) Each Qualified Bidder shall demonstrate to the satisfaction of the Trustee and Huntington that it has access to, or possession of, available cash sufficient to close the purchase.

(III) The Competing Bid must identify the allocation of Purchase Price to both the Resort and Ridgeview Condominiums.

(IV) A statement that each such Qualified Bidder's offer is irrevocable until the earlier to occur of: (i) 30 days after the Sale Hearing and (ii) two business

{K0269420.1}

days after the closing of a purchase of the Property, unless such bid is cancelled upon the agreement of the Qualified Bidder and the Trustee.

(V) A statement that specifically sets forth the total value of the Competing Bid to the Debtor's estate, and confirmation that the Qualified Bidder shall accept and abide by the terms, conditions and procedures set forth in the Bidding Procedures Order.

(IV) Relevant background and financial information reasonably satisfactory to the Trustee, after consultation with counsel to Huntington, demonstrating the Qualified Bidder's financial ability to close and to consummate an acquisition of the Property.

(V) A description of the nature of any insider relationship between any Qualified Bidder and the Trustee, the Debtor, Paul Kiebler, or any member of the Committee.

(VI) A good faith deposit in immediately available funds in the amount of $100,000.00 (the "Bid Deposit"), which shall be made payable to and/or delivered to Mary K. Whitmer, Esq. as counsel for the Trustee, **by no later than 12:00 noon prevailing Eastern Time on the Initial Bid Deadline**. Such Bid Deposit shall be deposited into a trust account maintained by counsel for the Trustee. Subject to subparagraph (h) below, within 15 days following the entry of an order approving the sale of the Property, the Bid Deposit (exclusive of any earned interest) will be returned to any Qualified Bidder that is not selected as the highest and best offer at the Sale Hearing.

(c) The Property will be sold on an "as is, where is" basis and without representations or warranties any kind, nature or description by the Trustee, its agents or its estate, except to the extent set forth in the applicable agreement of the Successful Bidder, including Huntington pursuant to a credit bid as approved by the Court. Except as otherwise provided in the applicable agreement, all of the Debtor's right, title and interest in and to the Property subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, equitable servitudes, and interests thereon and there against (collectively, the "Interests") in accordance with sections 363 and 365 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Property after

12

the proceeds are paid to Huntington. The Trustee shall afford each Qualified Bidder due diligence access to the Property. Due diligence access may include management presentations as may be scheduled by the Trustee and Jones Lang, as well as on site inspections and such other matters which a Qualified Bidder may request and which the Trustee, in its sole discretion, may agree to. Neither the Trustee, the Debtor nor any of its affiliates (nor any of their respective representatives) are obligated to furnish any information relating to the Property to any person other than a Qualified Bidder. Bidders are advised to exercise their own discretion before relying on any information regarding the Property provided by anyone other than the Trustee or its representatives.

(d)     The Trustee and Huntington will select the Top Offers on the Resort and Ridgeview Condominiums and will meet with the Top Qualified Bidders to negotiate the final price for the purchase of the Resort and the Ridgeview Condominiums.

(e)     Each of the Top Bidders will submit its final, highest, and best offer no later than August 24, 2011, the Final Bid Deadline, which offer shall contain no contingencies other than Court approval.

(f)     Once the highest and best bid has been selected, the Successful Bidder shall increase the Bid Deposit to that amount that is 10% of the Purchase Price, which will be non-refundable to the Successful Bidder in the event such Successful Bidder's bid is approved by the Court at the Sale Hearing as the highest and/or best offer and the Successful Bidder fails to close on the purchase of the Property.

13

{K0269420.1}

(g)     If any Competing Bid does not conform to all of the requirements set forth above, such Competing Bid will not be considered by the Court or be admissible at the Sale Hearing, unless otherwise agreed by the Trustee and Huntington.

(h)     Notwithstanding anything else to the contrary contained in the Bidding Procedures Order, the Court shall register the second highest Competing Bid and Bidder (the "Back-Up Bid"), which Back-Up Bid shall be approved by the Court in the event the Successful Bidder fails to consummate the acquisition of the Property in accordance with the provisions described above in which event the Deposit of the party making the Back-Up Bid shall be retained by the Trustee until two days after the Successful Bidder purchases the property.

(i)     ALL OBJECTIONS TO THE TRANSACTION SHALL BE FILED WITH THE COURT AND SERVED ON THE PARTIES SET FORTH IN SUBPARAGRAPH (a) ABOVE ON OR BEFORE 5:00 P.M. PREVAILING EASTERN TIME ON THE DATE WHICH IS FIVE BUSINESS DAYS PRIOR TO THE SALE HEARING (the "Sale Objection Deadline").

(j)     The Sale Hearing shall be conducted on _____, 2011, five days after the Final Bid Deadline, at 2:00 p.m.  The Sale Hearing will be held at the United States Court for the Northern District of New York of Ohio, Eastern Division, Cleveland, Ohio, in the Courtroom of the Honorable Randolph Baxter.

30.     The Trustee believes that the Bidding Procedures proposed herein allow it to market the Property for higher and better offers and establish sound parameters under which the value of the Property may be tested by a competitive bidding process.  These procedures will increase the likelihood that the estate will receive the greatest possible consideration for the

14

Property because they will ensure a competitive and fair bidding process, thus enabling the Trustee to maximize value for all creditors.

### *Form and Manner of Notice of Sale*

31.     Pursuant to Bankruptcy Rule 6004(a), notice of the proposed sale of property outside the ordinary course of business is to be provided in accordance with Bankruptcy Rule 2002(a)(1), (c)(1), and (k).  These provisions of Bankruptcy Rule 2002 provide that all creditors are to receive at least 21 days' notice of a sale of estate assets outside the ordinary course of business, unless the court for cause shortens the time or directs another method of giving notice. Fed. R. Bankr. P. 2002(a)(2).  Bankruptcy Rule 2002(c)(1) provides that the notice of the proposed sale of assets is to include a general description of the assets, the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. The proposed Sale Notice describes the bid procedures set forth herein and contains notice of the Sale Objection Timeline.

32.     The Trustee proposes to serve the Sale Notice to all creditors listed on the service list to this Motion, all entities that have requested notice in this chapter 11 case, the Internal Revenue Service, all entities of which the Trustee or Jones Lang is aware that assert or have asserted an interest in the Property, and all parties which the Trustee or Jones Lang believe in their reasonable discretion may have an interest in the Property. The Trustee submits, based upon the significant efforts which have been, and will continue to be, expended by Jones Lang, Alpine Realty and the Trustee with respect to the Property prior to filing the Motion, that the form and manner of notices proposed herein will result in the highest and best offers for the Property.

15

## *The Sale Hearing*

33.     At the Sale Hearing scheduled by the Court, the Trustee will seek entry of an order, among other things, authorizing and approving the sale of the Property to the Successful Bidder(s), as determined by the Trustee in accordance with the Bidding Procedures. The Property is to be sold to the Successful Bidder free and clear of all Interests pursuant to Bankruptcy Code section 363, with all Interests to attach to the net proceeds of the sale after the payment to Huntington with the same validity and in the same order of priority as they attached to the Property prior to the sale.

34.     The sale of the Debtor's Property will be subject to competing bids, thereby enhancing the Trustee's ability to receive the highest and best value for the Property. Consequently, the fairness and reasonableness of the consideration to be received by the Trustee will ultimately be demonstrated by a "market check" through a sealed bidding process to determine whether a fair and reasonable price is being paid.  Accordingly the Trustee requests that it be authorized sell the Property to the Successful Bidder(s) free and clear of all Interests, with such Interests attaching to the proceeds of sale.

## LEGAL AUTHORITY

## *Approval of Sale*

35.     This Court has the statutory authority to authorize the sale free and clear of all interests. Bankruptcy Code section 363(b)(1) provides that the Trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Moreover, Bankruptcy Code section 105(a) provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id*. § 105(a).

{K0269420.1}

36.     Pursuant to section 363(f) of the Bankruptcy Code, a trustee may sell all or any part of property of the estate, free and clear of any and all liens, if any of the following conditions is met:

> a) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> b) each entity holding a lien, claim or interest consents;
> c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> d) such interest is in bona fide dispute, or
> e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

U.S.C. § 363(f); *Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988). Section 363(f) is written in the disjunctive; the Court may approve a sale "free and clear" provided that a least one of the subsections is met. *Id*. The Trustee submits—and it will demonstrate to the Court at the Sale Hearing—that one or more of the conditions set forth in section 363(f) is met here.

37.     Courts have held that transactions should be approved under section 363 when: (a) they are supported by the sound business judgment of the Trustee; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith. *See In re Delaware & Hudson Railway Co.,* 124 B.R. 169 (D. Del. 1991); and *In re Phoenix Steel Corp.,* 82 B.R. 334, 335-36 (Bankr. D. Del. 1987). Each of these factors is satisfied here.

38.     The Trustee has concluded that the sale of the Property to the Successful Bidder(s) presents the best option for maximizing the value of the Debtor's estate.

{K0269420.1}

## *Approval of Bidding Procedures*

39.     A debtor's or trustee's business judgment is entitled to substantial deference with respect to the bid procedures to be used in selling assets of the estate. The proposed Bidding Procedures are reasonable, appropriate, and within the Trustee's sound business judgment because they will serve to maximize the value of the estate.

40.     The paramount goal of any proposed sale of property of a debtor is to maximize the proceeds received by the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656-57, 659 (Bankr. S.D.N.Y. 1992); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989); *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stares, Inc)*, 107 F.3d 558, 564-65 (8th Cir. 1997).  To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See, e.g., Integrated Resources*, 147 B.R. at 659; *In re Financial News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y 1991).

41.     Pursuant to section 363(f) of the Bankruptcy Code, the Trustee proposes to sell the Property free and clear of all liens.  Unless Huntington's credit bid is the highest and best bid, all such liens will attach to the net proceeds from the sale of the Property after Huntington's claim has been paid.  The proceeds received by the Trustee from the sale of the Property will be paid to Huntington Bank, distributed as a Carve-Out pursuant to the Sale Process Order and otherwise applied in accordance with the provisions of Huntington's loan documents.

## *Good Faith Purchaser*

42.     Bankruptcy Code section 363(m) states:

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section or lease of property does not affect the validity of a sale

{K0269420.1}

or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

43.     As will be demonstrated at the Sale Hearing, the purchase agreement with the Successful Bidder(s) and the transactions contemplated thereby shall be entered into at arms' length and in good faith.  The agreement with the Successful Bidder(s) will be the result of open and competitive sales and bidding procedures.  For this reason, the Trustee requests that any order approving the sale of the Property find that the Successful Bidder(s) shall have acted in good faith and is a good-faith purchaser entitled to the protections of Bankruptcy Code section 363(m).

## *Waivers*

44.     Due to the necessity of facilitating the orderly and timely sale of the Property, the Trustee requests that the Court lift the stay provided by Bankruptcy Rule 6004(h) (which provides that an order authorizing the sale of property is stayed for fourteen days after the entry of such order, unless the Court orders otherwise). Given the circumstances, and given the sufficiency of notice to all parties in interest, the Trustee submits that cause exists for the Court to relieve it of the stays provided by the rules.

## NOTICE

45.     Notice of this Motion has been given to all parties on the service list, including all creditors and parties in interest, the Internal Revenue Service, all parties who have filed notices of appearance in this case, and all parties that have made offers regarding or expressed an interest in the Property (collectively, the "Notice Parties"). Within three business days after entry of the Bidding Procedures Order, the Trustee will serve a copy of the Bidding Procedures Order

{K0269420.1}

with exhibits on the Notice Parties. In light of the nature of the relief requested herein, the Trustee submits—and it requests that the Court find—that such notice is sufficient and appropriate under the circumstances and no other or further notice is necessary.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order granting the Motion and (i) authorizing the Trustee to sell the Property pursuant to the procedures outline herein; (ii) approving the Bidding Procedures; (iii) scheduling bid deadlines; (iv) granting the requested waivers; (v) scheduling the Sale Hearing, approving the form and manner of notice of the Bidding Procedures and the sale as set forth herein, and finding that such notice is sufficient and appropriate under the circumstances and that no further notice need be given; and (vi) granting such other and further relief as the Court deems just and proper.

Dated: June 29, 2011
   Cleveland, Ohio

             Respectfully submitted,

              */s/ James W. Ehrman*
             Mary K. Whitmer  (018213)
             James W. Ehrman  (0011006)
             Kohrman Jackson & Krantz PLL
             1375 East Ninth Street, 20th Floor
             One Cleveland Center
             Cleveland, Ohio 44114-1793

             *Counsel for the Chapter 11 Trustee*
             *of Kiebler Recreation, LLC*

20

{K0269420.1}

Certificate of Service

I hereby certify that a true copy of the foregoing *Trustee's Motion for Order Approving Bidding Procedures, etc.* was served via the Court's electronic filing system, this 29th day of June 2011. Parties may access this filing through the Court's system.

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case.

- Jeffrey Baddeley    jbaddeley@ulmer.com
- Kathleen M. Bennett    kbennett@bsk.com, khourihan@bsk.com;kdoner@bsk.com
- Lawrence C Bolla    lbolla@quinnfirm.com, tsapper@quinnfirm.com;dcornelius@quinnfirm.com;mmiller@quinnfirm.com;npagliari @quinnfirm.com;mkruszewski@quinnfirm.com
- Carrie M Brosius    cmbrosius@vorys.com, mborr@vorys.com
- Brian J. Butler    bbutler@bsk.com, jheisler@bsk.com;kdoner@bsk.com
- Daniel A DeMarco    dademarco@hahnlaw.com, hlpcr@hahnlaw.com
- Stephen A. Donato    sdonato@bsk.com, kdoner@bsk.com;tayers@bsk.com;tvanetti@bsk.com
- Robert C Folland    rob.folland@thompsonhine.com
- Joseph D. Frank    jfrank@fgllp.com, ccarpenter@fgllp.com
- Bridget Aileen Franklin    bfranklin@brouse.com
- Garry M Graber    ggraber@hodgsonruss.com, rleek@hodgsonruss.com;mmuskopf@hodgsonruss.com
- Joseph F. Gula    jgula@kmgslaw.com, jgula@roadrunner.com;mwernicki@kmgslaw.com
- Mark L. Hankin    mhankin@hankinmazel.com
- Kenneth C Johnson    kjohnson@bricker.com, rdelsignore@bricker.com;jearley@bricker.com
- Alan M Koschik    akoschik@brouse.com, tpalcic@brouse.com
- Philip E Langer    planger@porterwright.com, nrepka@porterwright.com
- John P. Lennon    jplennon@trialadvocates.com
- Marc Merklin    mmerklin@brouse.com, tpalcic@brouse.com
- Ingrid S. Palermo    ipalermo@bsk.com, kdoner@bsk.com;sheffner@bsk.com;tvanetti@bsk.com
- Matthew E. Parkins    mparkins@smdklaw.com, bmccullough@smdklaw.com
- Drew T Parobek    dtparobek@vorys.com
- United States Trustee    (Registered address)@usdoj.gov
- Curtis L. Tuggle    curtis.tuggle@thompsonhine.com
- Andrew L. Turscak    andrew.turscak@thompsonhine.com
- Susan C. Von Reusner    susan.vonreusner@ag.ny.gov, lisa.burianek@ag.ny.gov
- Mark A. Weintraub    Mark.Weintraub@ThompsonHine.com
- Linda E White    linda.white@ag.ny.gov
- Christopher B. Wick    cwick@hahnlaw.com, hlpcr@hahnlaw.com

- Joseph Zagraniczny    jzagraniczny@bsk.com,
  kdoner@bsk.com;amasica@bsk.com;stemes@bsk.com;tvanetti@bsk.com
- Ronna Jackson ust34    Ronna.G.Jackson@usdoj.gov

**Manual Notice List**

Assessment Evaluation, Inc.
800 State Street, Suite 400
Erie, PA 16501-1322

Ciuni&Panichi Inc
25201 Chagrin Blvd, #200
Beachwood, OH 44122

Hahn Loeser & Parks LLP
200 Public Square, #2800
Cleveland, OH 44114

Internal Revenue Service Insolvency Grp 6
1240 E. 9th St. Rm 493
Cleveland, OH 44199

RSM McGladrey, Inc.
One S. Wacker Drive, Suite 800
Chicago, IL 60606

Deborah D. Strojny
8273 Canterbury Drive
Clymer, NY 14724-9656

Brouse McDowell
388 South Main Street, Suite 500
Akron, OH 44311-4407

Guy C Fustine
120 W 10th St
Erie, PA 16501

Inglewood Associates, LLC.
John K. Lane, Managing Director
22239 Parnell Rd.
Shaker Heights, OH 44122

Precision Golf Construction, Inc.
Attn: Michael O'Donnell
PO Box 751
Chardon, OH 44024

David O. Simon, Chapter 11 Trustee
1370 Ontario Street, Suite 450
Cleveland, OH 44113-1744

_s/ James W. Ehrman_____
James W. Ehrman (0011006)

22