| | |
|---|---|
| In re: | Chapter 11 Case |
| KIEBLER RECREATION, LLC, | Case No. 10-15099 |
| Debtor. | Judge Randolph Baxter |

**MOTION PURSUANT TO BANKRUPTCY RULE 9019(a) FOR ORDER
APPROVING SETTLEMENT BY AND AMONG THE TRUSTEE,
THE DEBTOR, THE HUNTINGTON NATIONAL BANK AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

David Simon, the chapter 11 trustee appointed in accordance with 11 U.S.C. § 1104(a) (the "Trustee"), by and through his undersigned counsel, respectfully moves this Court, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Motion"), for an order approving the terms of a settlement entered into by and among the Trustee, the debtor Kiebler Recreation, LLC (the "Debtor"), The Huntington National Bank ("Huntington"), and the Official Committee of Unsecured Creditors (the "Committee") in this case.

In support of the Motion, the Trustee respectfully sets forth as follows:

**JURISDICTION**

1. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A). This Court has jurisdiction over the parties and subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

**BACKGROUND**

2. The Debtor commenced this case by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 26, 2010 (the "Petition Date"). Pursuant to Bankruptcy Code sections 1107(a) and 1108, prior to the appointment of the Trustee, the

Debtor operated its business and managed its affairs as a debtor in possession. On June 9, 2010, the Office of the United States Trustee (the "US Trustee") appointed an official committee of unsecured creditors (the "Committee"). Hahn Loeser & Parks, LLP has been appointed counsel for the Committee.

3. On June 8, 2011, the US Trustee appointed David O. Simon as acting Trustee (the "Trustee") pursuant to section 1104 of the Bankruptcy Code. On June 20, 2011, the Court entered an order approving the selection of the Trustee.

4. Prior to the Petition Date, Huntington commenced a foreclosure proceeding in the State of New York County Court, County of Chautauqua ("State Court") to foreclose certain mortgages and security agreements, which mortgages and security interests are first liens on all of the Debtor's real and personal property except for the fairways condominiums, a vacant one-acre parcel of real property located in Pennsylvania, and titled motor vehicles ("Foreclosure Action").

5. On September 1, 2010, Huntington filed a secured proof of claim in the amount of $16,978,539.78 as of the Petition Date ("Huntington Claim"), which with continued postpetition interest and expenses now exceeds $18,000,000.00.

### A. The Pending Adversary Proceeding

6. On November 24, 2010, and shortly before an evidentiary hearing was scheduled on the Debtor's continued use of Huntington cash collateral, the Debtor filed a Complaint and commenced Adversary Proceeding No. 10-01385 against Huntington seeking (i) a determination of the validity and extent of Huntington's liens in the Debtor's personal and real property, (ii) a determination of the validity and extent of Huntington's liens and interests in the Debtor's post-petition sales revenue, (iii) the allowance of a surcharge under 11 U.S.C. § 506(c), (iv) the avoidance of certain alleged fraudulent transfers and (v) general objection to the

Huntington Claim. The Debtor filed a Verified First Amended Complaint on November 29, 2010 (the "Adversary Complaint"). On January 28, 2011, Huntington filed its Answer to the Adversary Complaint.

### B. The Sale Process Orders

7. Following significant negotiations between the parties, on June 1, 2011, this Court entered an Order approving a Stipulation and Agreed Order Setting Terms of Sale Process, Appointment of Chief Restructuring Officer and Marketing Consultant, Debtor in Possession Financing, and Settlement of Claims (the "June 1 Sale Process Order"). Pursuant to the June 1 Sale Process Order:

> Huntington holds an allowed secured claim in the amount of $16.0 million, together with collection costs which are in excess of $1 million, which claim is secured by first priority liens on the Debtor's assets including, but not limited to, the hotel, ski areas, golf courses and related amenities (the "Resort") and certain condominiums (the "Ridgeview Condominiums") but explicitly excluding the Fairways Condominiums, including a first priority perfected security interest in all cash proceeds and cash held by the Debtor except proceeds related to the Fairways Condominiums (the "Allowed Claim"). Huntington acknowledges that its Allowed Claim will not be a lien on any chapter 5 causes of action which the Debtor may decide to commence.

June 1 Sale Process Order at ¶ 2. Huntington's collateral as set forth in the Huntington Claim shall hereinafter be referred to as the "Property".

8. The June 1 Sale Process Order was agreed to by the Debtor, the Committee and Huntington. However, within two days of the entry of the June 1 Sale Process Order, the parties were informed that the Debtor refused to comply with the requirements of that Order.

9. As a result of the Debtor's refusal to carry out its obligations under the June 1 Sale Process Order, including its inability to confirm a plan of reorganization, the Committee and the U.S. Trustee each filed motions seeking the appointment of a chapter 11

3

trustee pursuant to section 1104 of the Bankruptcy Code. After an expedited hearing on June 7, 2011, the Court, on June 8, 2011, entered an Agreed Order Granting an Emergency Motion of the United States Trustee for an Order Directing Appointment of a Chapter 11 Trustee (the "Trustee Order"). The Trustee was thereafter appointed by the Court.

10. In light of the Trustee's appointment, the June 1 Sale Process Order has been supplemented and affirmed by the Trustee, the Committee, Thompson Hine, LLP (the former counsel to the Debtor), Brouse McDowell (special counsel of the Debtor), Inglewood Associates (financial advisor to the Debtor), Hahn Loeser & Parks, LLP (counsel to the Committee) and RSM McGladrey, Inc., (financial advisor to the Committee) by the execution of the Stipulation and Agreed Order Affirming Stipulation and Agreed Order Setting Terms of the Sale Process, Appointment of Restructuring Officer and Marketing Consultant, Debtor in Possession Financing, and Settlement of Claims [Docket #627] with Certain Modifications, and Further Agreement as to the Payment of the Trustee and his Professionals dated June 23, 2011 (the "Sale Process Order").

11. On June 24, 2011, the Trustee filed an application with this Court to approve the Sale Process Order.

12. The Sale Process Order also contemplates the filing of motions for approval of the appointment of an investment banker and real estate broker, possibly debtor in possession financing (a "DIP Loan"), and the terms and conditions of a sale of substantially all of the Debtor's assets, along with this Motion for a Dismissal and Release Order[1] (collectively the "Transaction Motions").

13. The Trustee's authorization to use cash collateral pursuant to various agreed cash collateral orders expires on June 30, 2011. For the benefit of all parties in interest in

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Process Order.

this chapter 11 case, the Trustee must move forward as quickly as possible with the Transaction Motions to maximize the value of the Debtor's assets.

14. Because the Estate is administratively insolvent and the Debtor has been unable to confirm a plan of reorganization, the only way that the chapter 11 estate will receive any money is through a sale of substantially all of the Debtor's assets in accordance with the Sale Process Order and the $1.15 million Carve Out which is set forth in the Sale Process Order.

15. As set forth in the Sale Process Order, the Trustee confirms that it is in the best interests of the Debtor's estate to comply with the Sale Process Order and to seek to consummate the transactions described therein.

16. Huntington's obligations under the Sales Process Order are conditioned upon the entry of an Order, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("FRBP"), approving certain terms of the Sales Process Order.

17. More specifically, the terms of the Sales Process Order that are relevant to this Motion are as follows[2]:

    a. At the discretion of Huntington, after analyzing the Debtor's financial condition, Huntington may provide the Debtor with financing (the "Chapter 11 Loan"), secured by all of the Debtor's assets (except for the Fairways Condominiums and any chapter 5 causes of action with the Debtor may decide to commence), including all cash collateral of the Debtor.

    b. Huntington shall be paid its Allowed Claim[3] at the closing of any sale of the Debtor's Assets.

    c. Huntington shall provide a carve-out (the "Carve-Out") as set forth below from the Net Purchase Price, as defined in the Sales Process Order, paid to Huntington, provided that the remainder of the Net Purchase Price is paid directly to Huntington until the Allowed Claim is satisfied:

---

[2] The Trustee respectfully refers the Court to the Sales Process Order for a detailed description of all applicable terms.
[3] All capitalized terms in this Motion are as defined in the Stipulation, unless otherwise noted.

5

| Net Purchase Price | Carve-Out for Prepetition, Non-Priority Unsecured Creditors | Carve-Out for Chapter 11 Administrative Expenses |
|---|---|---|
| $0-$9.9 million | $0 | $1,150,000 |
| $10-$11.99 million | $0 | $1,175,000 |
| $12-$13.99 million | $125,000 | $1,175,000 |
| $14-$17 million | $275,000 | $1,175,000 |

    d.    The Trustee shall immediately dismiss, with prejudice, the Adversary Complaint filed against Huntington.

    e.    The Trustee, on behalf of the Debtor, and the Committee (the "Releasors") shall deliver a full and complete release to Huntington of all direct, indirect or derivative claims which the Releasors have or may have against Huntington, using the form of release attached to the Order approving this Motion.

    f.    Upon the entry of an Order approving this Motion, and the Releasors' compliance with the terms of the Sales Process Order, Huntington shall be obligated to pay the Carve-Out as set forth in subparagraph "c" above. Huntington's obligation to provide the Chapter 11 Loan, if any, and the Carve-Out are expressly conditioned on, and does not arise until after the entry of the Order approving this Motion.

## LAW GOVERNING APPROVAL OF SETTLEMENTS AND COMPROMISES

18.    Compromises and settlements are a normal part of the bankruptcy process. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968), reh'g denied, 391 U.S. 909 (1968), citing Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 140 (1939). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with the policy of the law generally which is to encourage settlements. In re Jackson Brewing Co., 624 F.2d 599 (5th Cir. 1980); In re Carson, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987). Resolution of claims through settlement furthers the goal of bankruptcy administration to liquidate estate assets as

6

rapidly as possible "consistent with obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation." In re Carla Leather, Inc., 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984), aff'd, 50 B.R. 764 (S.D.N.Y. 1985). While in this case the Trustee is free to pursue litigation on behalf of the estate, he must "exercise prudence and at the same time be in a position so as to act on a settlement opportunity when that opportunity arises." Id. at 472.

19. Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements "if they are in the best interests of the estate." Monus v. Lambros, 286 B.R. 629, 637 (N.D. Ohio 2002), citing In re American Reserve Corp., 841 F.2d 159, 161 (7th Cir. 1987); Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Rule 9019(a) provides:

> (a) Compromise. On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtors, and indenture trustees as provided in Rule 1002 and to any other entity as the court may direct.

20. Neither Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. The standards for approval of settlement in bankruptcy cases are well established in precedent, however, focusing upon whether the proposed settlement is reasonable and in the best interests of creditors. In TMT Trailer Ferry, the Supreme Court concluded that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, stating:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which

> might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

TMT Trailer Ferry, 309 U.S. at 424 (citations omitted); see also Bauer v. Commerce Union Bank, 859 F.2d 438, 441 (6th Cir. 1988).

21. Whether to approve a particular compromise or settlement is within the sound discretion of the bankruptcy court. In re Bell & Beckwith, 87 B.R. 472, 474 (N.D. Ohio 1987); see also Nellis v. Shugrue, 165 B.R. 115, 122 (S.D.N.Y. 1994) (courts may consider opinions of the trustee or debtor-in-possession that a settlement is fair and reasonable). The court exercises its discretion "in light of the general public policy favoring settlements." In re Hibbard Brown & Co., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); see also Nellis, 165 B.R. at 123 ("the general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above"). The United States Court of Appeals for the Second Circuit has stated that the responsibility of the judge "is not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness'." In re Deaconess Hospital, LLC, 2005 Bankr. LEXIS 3040, *14 (Bankr. N.D. Ohio July 25, 2005); quoting In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 9183), cert. denied sub nom Cosoff v. Rodman, 464 U.S. 822 (1983). See also In re Carla Leather, Inc., 44 B.R. at 470. The assessment of a settlement only requires identification of the issues in controversy "so that the bounds of reasonableness can be seen with some clarity." Carla Leather, 44 B.R. at 470.

> The very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of power to compromise … this could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty.

Id.

8

22. This concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion." Newman v. Stein, 464 F. 2d 689, 693 (2d. Cir. 1972). Thus, a court need not insist upon the best possible settlement, but may approve a settlement as within the range of reasonableness under the circumstances. In determining whether a proposed settlement falls within the range of "reasonableness" courts have applied the following factors: (i) the probability of success in litigation; (ii) the difficulty of collection; (iii) the complexity of the litigation, including any attendant expense, inconvenience and delay; and (iv) the paramount interests of creditors. Nicole Energy Services, Inc., 385 B.R. 201, 210 (Bankr. S.D. Ohio 2008) citing Fishell v. Soltow (In re Fishell), 47 F.3d 1168 (6th Cir. 1995).

## DISCUSSION

23. The Trustee has reviewed the notes, mortgages, assignments of rents and leases, and security agreements executed by the Debtor and delivered to Huntington (the "Loan Documents"). The Loan Documents were properly filed in the County Clerk's Office in Chautauqua County, New York and the New York Secretary of State's Office, respectively.

24. The Trustee is cognizant of the uncertainties and expense of proceeding to litigation and has agreed, after extensive arm's-length negotiations and assessment of the benefits and burdens of settlement, to enter into the settlement resolving the disputes among the Debtor, Huntington and the Committee, and to obviate the need to further deplete the Debtor's assets in prosecuting a proceeding with an uncertain outcome. The obligations set forth in the Sale Process Order are conditional and inter-dependent.

25. The Trustee respectfully submits that there are adequate and substantial reasons for the Court to approve the settlement within the legal parameters discussed above.

9

26. The Trustee may need certain funds from the Chapter 11 Loan to continue the Debtor's operations until the closing of the Asset sale on or before September 1, 2011. In addition, the Debtor's estate will benefit from the payment of the Carve-Out by Huntington, which payment will satisfy a portion of the administrative claims to be filed in this case, and possibly, a portion of the general unsecured claims. The settlement also establishes and allows the secured claim on behalf of Huntington.

27. Further, the Debtor's estate will benefit from the withdrawal of the Adversary Complaint because it will cease to incur attorneys' fees and other expenses in connection with that litigation. A litigated resolution of the claims asserted by the Debtor in the adversary proceeding involves a risk that a decision issued by the Court could be unfavorable to the Debtor's estate and its creditors. The estate would also be required to bear the significant litigation expense associated with the discovery and trial phases of the adversary proceeding, as well as potential additional expenses associated with subsequent appeals. The continued litigation of this matter could also significantly delay the distribution to creditors in this case.

28. The settlement was achieved through arm's-length negotiations by the Trustee, the Debtor, Huntington and the Committee. In light of the events that have occurred in this case, the best possible outcome to be achieved by all parties is through a negotiated sale of the Assets. If the settlement is not approved, the Trustee respectfully submits that he will not be able to continue operating the Debtor for any significant length of time absent the infusion of funds under the Chapter 11 Loan. The cessation of the Debtor's operations would result in significant harm to the going concern value of the Assets and the Debtor's estate.

29. Based upon the foregoing, therefore, the Trustee respectfully submits that the settlement, as proposed above and in the Sale Process Order, is in the best interests of the

Debtor's estate and its creditors, and requests that the Court issue an Order approving the settlement in its entirety.

**WHEREFORE**, the Trustee respectfully submits that the terms of the settlement, including the Releases by and among the Debtor, Huntington and the Committee, meet the parameters for approval as set forth above, and respectfully requests the Court issue an Order approving the terms of the settlement, and granting such other and further relief as the Court deems just and proper.

Dated: July 8, 2011

Respectfully submitted,

 */s/ David S. Blocker*
Mary K. Whitmer  (0018213)
James W. Ehrman  (0011006)
David S. Blocker  (0075523)
KOHRMAN JACKSON & KRANTZ PLL
1375 E. 9th Street, 20th Floor
One Cleveland Center
Cleveland, Ohio  44114-1793
Telephone: (216) 696-8700
Telecopier: (216) 621-6536
Email:    mkw@kjk.com
              jwe@kjk.com; dsb@kjk.com

*Counsel for David O. Simon, Chapter 11 Trustee*

11