**IT IS SO ORDERED.**

RANDOLPH BAXTER
UNITED STATES BANKRUPTCY JUDGE

Dated: 27 July, 2011 02:44 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Kiebler Recreation, LLC | ) | Case No. 10-15099 |
| | ) | |
| Debtor. | ) | Judge Baxter |
| | ) | |

**ORDER APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

**NOTICE OF
(i) TERMS OF BID PROCESS AND
(ii) HEARING TO CONSIDER APPROVAL OF SALE**

This matter having come before the Court on the Motion of David Simon, Esq., as trustee (the "**Trustee**") pursuant to section 1104 of title 11 of the United States Code (the "**Bankruptcy Code**") for debtor Kiebler Recreation, LLC (the "**Debtor**") for Order Approving (i) Bidding Procedures in Connection with Sale of Substantially All of the Debtor's Assets (ii) Form and Manner of Notice and Terms of the Bid Process, and (iii) Scheduling Hearing to Consider

{K0271217.2}                                                                                                    1863325.4 6/29/2011

Approval of Sale (the "**Motion**"); and the Court having reviewed the Motion and considered the Objection of Vincent Cross, Executor of the Estate of Norbert Cross and Raquel Cross, Executrix of the estate of Eugene Cross (the "**Cross Estates' Objection**") [Docket No 690], the Limited Objection of Bottling Group LLC DBA Pepsi Beverages Co, (the "**Pepsi Objection**") [Docket No. 691] and the Objection of Textron Financial Corp. (the "**Textron Objection**") [Docket No. 692], and the Reply of The Huntington National Bank to the Cross Estates' Objection (the "**Huntington Reply**") [Docket No. 700], and further the Court having considered the statements and arguments of counsel which were offered at a hearing on the Motion held on July 19, 2011; the Court now makes the following findings: that it has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334; that this is a core proceeding pursuant to 28 U.S.C. § 157(b); that venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; that establishing procedures for a sale of the Property, as defined in the Motion, in accordance with the provisions contained in this Order, is in the best interest of the estate; that capitalized terms used herein, unless otherwise defined in this Order, have the meanings given them in the Motion; and that proper notice of the Motion and the opportunity for hearing thereon was given in this case; and no other or further notice is required; it is therefore hereby adjudged, decreed, and

**ORDERED** that the Motion is granted and the Cross Estates' Objection is overruled; and it is further

**ORDERED**, that the Pepsi Objection is sustained consistent with the terms of this Order; and it is further

**ORDERED**, that the Textron Objection is sustained consistent with the terms of this Order; and it is further

**ORDERED**, that the Huntington Reply is sustained, at it is further

**ORDERED** that the bid procedures that follow (the "**Bidding Procedures**") are hereby approved:

- <u>Marketing Process</u>.  The Trustee shall continue marketing efforts after the entry of this Order and shall solicit offers from potential bidders who would then participate in a competitive bid process on similar terms and conditions.

- <u>Allocation of Net Purchase Price</u>.  All of the Debtor's assets, except for the Fairways Condominiums, shall be sold and each offer shall allocate the purchase price to the Resort and the Ridgeview Condominiums.  The sale proceeds will ultimately be allocated based on the Huntington Allowed Claim (defined below), under which Huntington holds a first priority lien on the Resort in the amount of $12,144,000, inclusive of collection costs, and a first priority lien on the Ridgeview Condominiums in the amount of $3,636,000 (the "Huntington Allowed Claim").  Huntington shall be paid at the Closing $12,144,000 from the Net Purchase Price (as defined below in foot note 3).  Any amounts received on the Resort in excess of $12,144,000 of the Net Purchase Price shall be split with 50 percent of such proceeds paid to Huntington and 50 percent of such proceeds allocated to the Cross Estates.  The Cross Estates shall receive any and all proceeds of the sale of the Resort in excess of $13,144,000 and any and all proceeds of the sale of the Ridgeview Condominiums in excess of $3,636,000 up to the full amount of the Cross Estates' allowed secured claim and the right to receive such funds shall be the Cross Estates' only recovery and right as a secured

10-15099-pmc    Doc 733    FILED 07/27/11    ENTERED 07/28/11 10:32:26    Page 3 of 16

creditor in this chapter 11 case[1]. No portion of the purchase price shall be allocated to the one-acre vacant real property located in Pennsylvania, the titled motor vehicles, or the shares in Kiebler Sewage Services, Inc. and Kiebler Water Services, Inc.

- <u>Huntington Bank does not hold a security interest in the Fairways Condominiums</u>. The Trustee will obtain a separate order approving procedures for the sale of the Fairways Condominiums.

- <u>HNB Equipment Lease Assumption</u>. Any purchaser of the Property will also be required to assume the equipment leases or purchase the equipment located on or used in conjunction with the Property in which Huntington has a secured interest and/or is the lessor of a lease (the "**HNB Equipment Leases**");

- <u>Non-HNB Equipment Lease Assumption</u>. Any purchaser of the Property may offer purchase or lease equipment located on the Property which is not subject to a Huntington lien or a Huntington lease (the "**Non-HNB Equipment**"), excluding equipment owned, financed and/or leased by Bottling Group LLC DBA Pepsi Beverages Co. ("**Pepsi**") and by Textron Financial Corp. ("**Textron**") which is addressed below, upon such terms and conditions acceptable to the purchaser, the Trustee and the owner, lienholder or lessor of the equipment, and if the purchaser elects not to purchase or lease any item of Non-HNB Equipment, the Trustee shall, after obtaining proper Court approvals, tender said Non-HNB Equipment to the owner or lessor.

---

[1] The Cross Estates, however, are not precluded from asserting a deficiency unsecured claim in this case.

4

- Textron Equipment. Any purchaser of the Property may purchase the certain equipment located on the Property that is subject to the first lien and security interest of Textron (the "**Textron Equipment**") upon such terms and conditions acceptable to the purchaser and Textron, with the proceeds of sale being paid to Textron to the full extent of its allowed secured claim, and excess proceeds, if any, being paid to Huntington pursuant to its junior lien and security interest. If the purchaser and Textron cannot agree upon the terms of sale of the Textron Equipment, the Trustee shall, after obtaining proper Court approvals, surrender said Textron Equipment to Textron.

- Pepsi Equipment. The equipment owned by Pepsi and located at the Resort (the "**Pepsi Equipment**"), is not among the assets offered for sale. Any agreement to purchase or lease the Pepsi Equipment must be negotiated directly with Pepsi.

- Selection of Qualified Bidders. To be qualified, a bidder (a "**Qualified Bidder**") must be able to demonstrate to the satisfaction of the Trustee and Huntington that it has access to, or possession of, available cash sufficient to close the purchase. Notwithstanding the foregoing, Huntington is deemed to be a Qualified Bidder and nothing herein shall preclude Huntington from submitting a credit bid in excess of the highest bid obtained herein, which credit bid shall be deemed the highest and best bid for purposes of the Bidding Procedures.

- Purchase Agreement and Refundable Deposit. Additionally, each Qualified Bidder must execute a purchase agreement for the Property (the "**Purchase Agreement**") acceptable to the Trustee and Huntington in substantially the form as will be posted on the Property's due diligence web page (the "**Due Diligence**

5

**Web Page**"), which interested parties may access after registering with the Trustee's real estate brokers and executing an appropriate confidentiality agreement. In order to bid on the Property, each Qualified Bidder must deliver the executed Purchase Agreement, together with a refundable deposit of $100,000.00 and do such other things including providing further information, as are required below.

- <u>Submission of Competing Bids</u>. Each Qualified Bidder must deliver a competing bid or bids (a "Competing Bid") for the Property to the Trustee, David O. Simon, Esq., 1370 Ontario Street, Suite 450, Cleveland, Ohio, 44113, or via email at dsimon@epiqtrustee.com, **so that it is received by no later than 5:00 p.m. prevailing Eastern Time on August 12, 2011** (the "**Initial Bid Deadline**") together with delivery of a deposit of $100,000.00 (the "Deposit") by certified or bank check delivered to the Trustee before the Initial Bid Deadline or delivering (including via email) confirmation of a wire transfer[2] of the Deposit showing that the Deposit was wire transferred prior to the Initial Bid Deadline. The Competing Bid also shall be delivered to the following parties so that it is received by them prior to the Initial Bid Deadline: (i) Jones Lang LaSalle Hotels, a division of Jones Lang LaSalle Americas, Inc., 100 First Stamford Place, Suite 201, Stamford, Connecticut (Attn: Mark von Dwingelo) or via email, mark.vondwingelo@am.jll.com; and (ii) Mary K. Whitmer, Esq., Kohrman, Jackson & Krantz, PLL, One Cleveland Center, 20th Floor, Cleveland, Ohio 44114 or via email: mkw@kjk.com). Each Qualified Bidder shall also deliver a

---

[2] Wire transfer instructions will be provided by the Trustee and posted on the Due Diligence Web Site.

copy of the Competing Bid to counsel for the secured lender, Huntington, at the following address: Attn: Joseph Zagraniczny, Esq. and Stephen A. Donato, Esq., Bond, Schoeneck & King PLLC, One Lincoln Center, Syracuse, New York 13202 or via e-mail or fax– jzagraniczny@bsk.com and sdonato@bsk.com; fax – 315-218-8100) ; (collectively, the "**Notice Parties**").

- <u>Contents of Competing Bids</u>. Each Competing Bid must contain the following:

  (I) A copy of the Purchase Agreement executed by such Qualified Bidder, subject to acceptance by the Trustee and necessary Court approval.

  (II) Each Qualified Bidder shall demonstrate to the satisfaction of the Trustee and Huntington that it has access to, or possession of, available cash sufficient to close the purchase.

  (III) The Competing Bid must identify the allocation of purchase price to both the Resort and the Ridgeview Condominiums.

  (IV) A statement that each such Qualified Bidder's offer is irrevocable until the earlier to occur of: (i) 30 days after the Sale Hearing and (ii) two business days after the closing of a purchase of the Property, unless such bid is cancelled upon the agreement of the Qualified Bidder and the Trustee.

  (V) A statement that specifically sets forth the total value of the Competing Bid to the Debtor's estate, and confirmation that the Qualified Bidder shall accept and abide by the terms, conditions and procedures set forth in the Bidding Procedures Order.

  (VI) Relevant background and financial information reasonably satisfactory to the Trustee, after consultation with counsel to Huntington, demonstrating the Qualified Bidder's financial ability to close and to consummate an acquisition of the Property.

  (VII) A description of the nature of any relationship between any Qualified Bidder and the Trustee, the Debtor, Paul Kiebler, or any member of the Committee.

  (VIII) The Deposit, delivered as instructed above. Each such Deposit shall be deposited into a trust account maintained by the Trustee. Subject to the provisions contained under the heading "Back-Up Bid" below, within 15 days following the entry of an order approving the sale of the Property, each Deposit (exclusive of any interest) shall be returned to any Qualified Bidder that is not selected as the highest and best offer at the Sale Hearing.

7

(IX) If any Competing Bid does not materially conform to all of the requirements set forth above, such Competing Bid will not be considered by the Court or be admissible at the Sale Hearing, unless otherwise agreed by the Trustee and Huntington.

- <u>Top Qualified Bidders Selected</u>. The Trustee and Huntington will review and negotiate with those Qualified Bidders submitting the three top offers and all bidders within 10% of the highest purchase price (the "**Top Offers**") on the Resort and the Ridgeview Condominiums. The Trustee and Huntington will select the Top Offers and will meet with such Qualified Bidders (the "**Top Qualified Bidders**") to negotiate the final price for the purchase of the Resort and the Ridgeview Condominiums. Each of the Top Qualified Bidders will submit its final, highest, and best offer (the "**Final Bids**") on the Purchase Agreement form no later than August 22, 2011 (the "**Final Bid Deadline**"), which offer shall contain no contingencies other than Court approval.

- The Trustee and Huntington will select the Successful Bidder on August 23, 2011 from those Top Qualified Bidders which submitted sealed bids.

- At the sole discretion of the Trustee and Huntington, the Trustee may notify the Top Qualified Bidders that in lieu of accepting Final Bids from the Top Qualified Bidders, he will conduct an auction among the Top Qualified Bidders, which auction will occur on August 24, 2011 at 10:00 a.m. at a location to be specified. The highest bidder at the auction will be the Successful Bidder.

- <u>Successful Bidder Deposit</u>. Once the highest and best bid has been selected, the Successful Bidder shall increase the Bid Deposit to that amount that is 10% of the purchase price, which will be non-refundable to the Successful Bidder in the event such Successful Bidder's bid is approved by the Court at the Sale Hearing

8

as the highest and/or best offer and the Successful Bidder fails to close on the purchase of the Property.

- Closing. The Successful Bidder will close on the date set forth in the purchase agreement but in no event later than September 27, 2011, time being of the essence. The Successful Bidder will pay the purchase price in cash (the "Purchase Price") at the closing.

- Huntington Allowed Claim. Huntington shall be paid the Huntington Allowed Claim at the closing of any sale of the Property.

- Carve Out. Pursuant to the terms of the Sale Process Order, Huntington agrees to provide a carve out (the "**Carve Out**") as set forth below from the Net Purchase Price[3] paid to Huntington provided that the remainder of the Net Purchase Price is paid directly to Huntington at Closing until the Allowed Claim is satisfied.

| Net Purchase Price | Carve out for Prepetition, Non-priority Unsecured Creditors | Carve out for Chapter 11 Administrative Expenses |
|---|---|---|
| $0 - $9.99 million | $ 0 | $ 1,150,000 |
| $10-11.99 million | $ 0 | $ 1,175,000 |
| $12-13.99 million | $ 125,000 | $ 1,175,000 |
| $14-17 million | $ 275,000 | $ 1,175,000 |

- Conditions for Carve Out. The Carve Out will not be provided unless Huntington has received a full and complete release from the Committee and the Trustee as representative of the Debtor's chapter 11 estate, and such release has been

---

[3] The "Net Purchase Price" is defined as the net sale proceeds payable to Huntington as the first secured creditor after deducting the following expenses from the amount received from the sale of the Debtor's assets (other than the Fairways Condominiums): (i) the outstanding real estate taxes, (ii) the success fee paid or other compensation or expenses to the broker or marketing company, (iii) the unpaid amount of the DIP Loan, if any, (iv) any credit given to purchaser such as deposits which have not been escrowed (the "Deposits"), (v) New York State transfer taxes, and (vi) other customary expenses incurred by a seller. For the avoidance of doubt, if Huntington credits bids at the Sale and purchases the assets, the Carve Out in the amount set forth in the chart set forth in this paragraph (depending on the credit bid amount) will be paid on the date set forth in this paragraph.

9

approved by a final, nonappealable order of the Court and the 363 sale is concluded. Huntington has no obligation to grant the Carve Out from sale proceeds until the Dismissal and Release Order has been entered and has become a final nonappealable order and the Debtor's assets have been sold pursuant to Section 363 of the Bankruptcy Code.

- <u>Conveyance Free and Clear</u>. The Property shall be conveyed to the Successful Bidder free and clear of all liens, claims, liabilities, encumbrances or other interests, which shall attach to the net proceeds of sale, after Huntington has been paid its Allowed Claim.

- <u>Failure to Close by September 27, 2011 Ends Sale Process</u>. Closing of the sale shall occur on the date set forth in the purchase agreement but in no event after September 27, 2011, unless extended by agreement of the Trustee and Huntington, and if closing does not occur by September 27, 2011, Huntington is entitled to present to the Court a stipulated order for modification of the automatic stay which will provide that Huntington is allowed to continue its foreclosure action without further order of the Court.

- <u>Credit Bid</u>. Huntington shall be permitted the right to credit bid on the Property up to an amount which represents (a) the Allowed Claim plus (b) the unpaid amount of the DIP Loan, if any. Notwithstanding anything to the contrary contained in this Order, if Huntington is the successful bidder through a credit bid, any applicable Carve Out payments will not be due and owing until the earlier of (i) the date on which the Debtor's property is ultimately sold by Huntington or (ii) 12 months from the bankruptcy sale to Huntington.

- No Trustee Representations or Warranties.  The Property will be sold on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Trustee, its agents or its estate, except to the extent set forth in the Purchase Agreement. Huntington shall take "as is, where is" should it purchase pursuant to its credit bid as approved by the Court. Except as otherwise provided in the applicable agreement, all of the Debtor's right, title and interest in and to the Property subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, equitable servitudes, and interests thereon and there against (collectively, the "Interests") in accordance with sections 363 and 365 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Property after the proceeds are paid to Huntington.

- Due Diligence.  The Trustee shall afford each Qualified Bidder due diligence access to the Property.  Due diligence access may include management presentations as may be scheduled by the Trustee and Jones Lang, as well as on site inspections and such other matters which a Qualified Bidder may request and which the Trustee, in its sole discretion, may agree to.  Neither the Trustee, the Debtor nor any of its affiliates (nor any of their respective representatives) are obligated to furnish any information relating to the Property to any person other than a Qualified Bidder. Bidders are advised to exercise their own discretion before relying on any information regarding the Property provided by anyone other than the Trustee or its representatives.

10-15099-pmc    Doc 733    FILED 07/27/11    ENTERED 07/28/11 10:32:26    Page 11 of 16

- <u>Back Up Bid</u>. Notwithstanding anything else to the contrary contained in the Bidding Procedures Order, the Court shall register the second highest Competing Bid and Bidder (the "Back-Up Bid"), which Back-Up Bid shall be approved by the Court in the event the Successful Bidder fails to consummate the acquisition of the Property in accordance with the provisions described above in which event the Deposit of the party making the Back-Up Bid shall be retained by the Trustee until two days after the Successful Bidder purchases the property.

And it is further

**ORDERED** that the Court shall conduct a final hearing to consider approval of the Successful Bidder's bid with respect to the Property free and clear of liens (with all such liens to attach to the net proceeds from the sale of the Property, unless a credit bid is the successful bid) (the "Sale Hearing") on **August 25, 2011 at 10:30 a.m**. prevailing Eastern Time at the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, Howard M. Metzenbaum U.S. Courthouse, 201 Superior Avenue, Cleveland, Ohio 44114. At the Sale Hearing, the Successful Bidder shall be presented for approval to the Court pursuant to 11 U.S.C. §§ 363(b), (m) and (f). The Back-Up Bidder shall become the Successful Bidder if the initial Successful Bidder does not close in the time required; and it is further

**ORDERED** that ALL OBJECTIONS TO THE TRANSACTION SHALL BE FILED WITH THE COURT AND SERVED ON THE NOTICE PARTIES ON OR BEFORE 5:00 P.M. PREVAILING EASTERN TIME ON AUGUST 24, 2011; and it is further

**ORDERED** that, pursuant to Bankruptcy Rules 2002, 6004, and 6006, within three business days after the entry of this Order, copies of this Order which contain and shall constitute the Notice of Bid Procedures and Sale Hearing (the "**Sale Notice**"), shall be served on

all creditors listed on the Service List attached to the Motion, including all creditors and parties in interest, all parties that have requested notice in this chapter 11 case, the Internal Revenue Service, all entities of which the Trustee or its real estate broker are aware that assert or have asserted an interest in the Property, and all parties which the Trustee or its real estate broker believe in their reasonable discretion may have an interest in the Property (collectively, the "**Service Parties**"); and it is further

    **ORDERED** that service of this Order to the Service Parties shall be sufficient and appropriate notice of the bid procedures set forth herein and the Sale Hearing and the opportunity to participate and/or to respond with respect thereto and no other or further notice is necessary; and it is further

    **ORDERED** that the Court retains jurisdiction to enforce, modify and interpret this Order as appropriate.

**IT IS SO ORDERED**.

###

Approved by:

*/s/ Mary K. Whitmer*
Mary K. Whitmer (0018213)
Kohrman, Jackson & Krantz, PLL
One Cleveland Center, 20th Floor
1375 East 9th Street
Cleveland, Ohio 44114-1793
Telephone  (216) 736-7255, 7208
Facsimile  (216) 621-6536
E-mail  mkw@kjk.com

*Attorneys for Chapter 11 Trustee*

*/s/ Joseph Zagraniczny*
Stephen A. Donato
Joseph Zagraniczny
Bond Schoeneck & King
One Lincoln Center
Syracuse, NY 13202-1355
(315) 218-8000 (phone)
(315) 218-8100 (fax)
sdonato@bsk.com
jzagraniczny@bsk.com
*Attorneys for The Huntington National Bank*


*/s/ Joseph D. Frank*
Joseph D. Frank (Illinois Bar No. 6216085)
Jeremy C. Kleinman (Illinois Bar No. 6270080)
Frank/Gecker LLP
325 North LaSalle Street, Suite 625
Chicago, IL 60654
(312) 276-1400 (phone)
(312) 276-0035 (fax)
*Attorneys for Bottling Group, LLC d/b/a Pepsi Beverages Co.*


*/s/ Kenneth C. Johnson. Esq.*
Kenneth C. Johnson. Esq. (0022021)
Bricker & Eckler LLP
100 South Third Street
Columbus, OH 43215
(614) 227-2300 (phone)
(614) 227-2390 (fax)
*Attorneys for Textron Financial Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that on _____, 2011, a copy of the foregoing Order was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties on the Electronic Mail Notice List as set forth below. Parties may access this filing through the Court's system. I further certify that I caused a copy of the foregoing Order to be served on the persons below by placing a copy thereof in the regular United States mail, first class postage prepaid, addressed as indicated, on _____, 2011:

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive e-mail notice/service for this case.

- Jeffrey Baddeley    jbaddeley@ulmer.com
- Kathleen M. Bennett    kbennett@bsk.com, khourihan@bsk.com;kdoner@bsk.com
- Lawrence C Bolla    lbolla@quinnfirm.com, tsapper@quinnfirm.com;dcornelius@quinnfirm.com;mmiller@quinnfirm.com;npagliari@quinnfirm.com;mkruszewski@quinnfirm.com
- Carrie M Brosius    cmbrosius@vorys.com, mborr@vorys.com
- Brian J. Butler    bbutler@bsk.com, jheisler@bsk.com;kdoner@bsk.com
- Daniel A DeMarco    dademarco@hahnlaw.com, hlpcr@hahnlaw.com
- Stephen A. Donato    sdonato@bsk.com, kdoner@bsk.com;tayers@bsk.com;tvanetti@bsk.com
- Robert C Folland    rob.folland@thompsonhine.com
- Joseph D. Frank    jfrank@fgllp.com, ccarpenter@fgllp.com
- Bridget Aileen Franklin    bfranklin@brouse.com
- Garry M Graber    ggraber@hodgsonruss.com, rleek@hodgsonruss.com;mmuskopf@hodgsonruss.com
- Joseph F. Gula    jgula@kmgslaw.com, jgula@roadrunner.com;mwernicki@kmgslaw.com
- Mark L. Hankin    mhankin@hankinmazel.com
- Kenneth C Johnson    kjohnson@bricker.com, rdelsignore@bricker.com;jearley@bricker.com
- Alan M Koschik    akoschik@brouse.com, tpalcic@brouse.com
- Philip E Langer    planger@porterwright.com, nrepka@porterwright.com
- John P. Lennon    jplennon@trialadvocates.com
- Marc Merklin    mmerklin@brouse.com, tpalcic@brouse.com
- Ingrid S. Palermo    ipalermo@bsk.com, kdoner@bsk.com;sheffner@bsk.com;tvanetti@bsk.com
- Matthew E. Parkins    mparkins@smdklaw.com, bmccullough@smdklaw.com
- Drew T Parobek    dtparobek@vorys.com
- United States Trustee    (Registered address)@usdoj.gov
- Curtis L. Tuggle    curtis.tuggle@thompsonhine.com
- Andrew L. Turscak    andrew.turscak@thompsonhine.com
- Susan C. Von Reusner    susan.vonreusner@ag.ny.gov, lisa.burianek@ag.ny.gov
- Mark A. Weintraub    Mark.Weintraub@ThompsonHine.com

- Linda E White	linda.white@ag.ny.gov
- Christopher B. Wick	cwick@hahnlaw.com, hlpcr@hahnlaw.com
- Joseph Zagraniczny	jzagraniczny@bsk.com, kdoner@bsk.com;amasica@bsk.com;stemes@bsk.com;tvanetti@bsk.com
- Ronna Jackson ust34	Ronna.G.Jackson@usdoj.gov

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive e-mail notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Assessment Evaluation, Inc.
800 State Street, Suite 400
Erie, PA 16501-1322

Brouse McDowell
388 South Main Street, Suite 500
Akron, OH 44311-4407

Ciuni&Panichi Inc
25201 Chagrin Blvd, #200
Beachwood, OH 44122

Guy C Fustine
120 W 10th St
Erie, PA 16501

Hahn Loeser & Parks LLP
200 Public Square, #2800
Cleveland, OH 44114

Inglewood Associates, LLC.
John K. Lane, Managing Director
22239 Parnell Rd.
Shaker Heights, OH 44122

Internal Revenue Service Insolvency Grp 6
1240 E. 9th St. Rm 493
Cleveland, OH 44199

Precision Golf Construction, Inc.
Attn: Michael O'Donnell
PO Box 751
Chardon, OH 44024

RSM McGladrey, Inc.
One S. Wacker Drive, Suite 800
Chicago, IL 60606

David O. Simon, Chapter 11 Trustee
1370 Ontario Street, Suite 450
Cleveland, OH 44113-1744

Deborah D. Strojny
8273 Canterbury Drive
Clymer, NY 14724-9656